# EXHIBIT A

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

### FOREIGN CLAIMS SETTLEMENT COMMISSION
### OF THE UNITED STATES
#### WASHINGTON, D.C. 20579

IN THE MATTER OF THE CLAIM OF

HAVANA DOCKS CORPORATION

**Claim No CU** -2492

**Decision No. CU** -6165

Under the International Claims Settlement
Act of 1949, as amended

Counsel for claimant:

Davis Polk & Wardwell
by Douglas M. Galin, Esquire

Appeal and objections from a Proposed Decision entered April 12, 1971.
Oral hearing requested.

Oral argument September 15, 1971 by Douglas M. Galin, Esquire

### FINAL DECISION

The Commission issued its Proposed Decision on this claim on
April 21, 1971, certifying that claimant suffered a loss of $7,669,420.88
within the scope of Title V of the International Claims Settlement Act
of 1949, as amended, resulting from actions of the Government of Cuba.

Claimant, through counsel, objected to the Proposed Decision,
and requested an oral hearing which was held on September 15, 1971.
In support of the objections claimant submitted an affidavit of John C.
Hover, a member of counsel's firm.

In the objections, claimant stated that the concessions and dock
facilities had a higher value than the amount determined by the Com-
mission, and that an item of $10,280.00 for handling charges was
improperly denied.

Full consideration having been given to claimant's objections,
the supporting affidavit, counsel's argument at the hearing, and the
entire record, the Commission now finds that in view of the considerable

- 2 -

increase of land values along the Havana waterfront between 1934 and 1960, the value of claimant's concession and tangible assets should be increased from $7,184,360.18 to $8,684,360.18.

Regarding the appraisal of Luis Parajon who valued the above properties at $16,180,000.00, the Commission holds that this appraisal cannot be relied upon to the exclusion of other evidence of record because, *inter alia*, it does not specify the size and value of the land and improvements thereon separately and individually; and because its findings are based on generalities, not appropriate in this type of evaluation of valuable improved real property.

The Commission further considered claimant's objections with respect to the item of $10,280.00 for handling charges, and finds that these are, in fact, storage charges for unclaimed merchandise, due and payable by the Government of Cuba, and that they should be included in the loss, which is restated as follows:

|  |  | Date of Loss |
|---|---|---|
| Concession and tangible assets | $8,684,360.18 | October 24, 1960 |
| Securities | 184,005.70 | August 6, 1960 |
| Accounts receivable | 301,055.00 | October 24, 1960 |
| Debt of Cuban Government | 10,280.00 | October 24, 1960 |
| Total loss | $9,179,700.88 | |

The interest at the rate of 6% per annum will be included in the instant case as follows:

| FROM | ON |
|---|---|
| August 6, 1960 | $ 184,005.70 |
| October 24, 1960 | 8,995,695.18 |

Accordingly, the Certification of Loss in the Proposed Decision is set aside; the following Certification of Loss will be entered; and the remainder of the Proposed Decision, as amended herein, is affirmed.

CU-2492

- 3 -

<u>CERTIFICATION OF LOSS</u>

The Commission certifies that HAVANA DOCKS CORPORATION suffered a loss, as a result of actions of the Government of Cuba, within the scope of Title V of the International Claims Settlement Act of 1949, as amended, in the amount of Nine Million One Hundred Seventy-nine Thousand Seven Hundred Dollars and Eighty-eight Cents($9,179,700.88) with interest thereon at 6% per annum from the respective dates of loss to the date of settlement.

Dated at Washington, D. C.,
and entered as the Final
Decision of the Commission

SEP 28 1971

Lyle S. Garlock, Chairman

Theodore Jaffe, Commissioner

CU-2492

FOREIGN CLAIMS SETTLEMENT COMMISSION
OF THE UNITED STATES
WASHINGTON, D.C. 20579

IN THE MATTER OF THE CLAIM OF

HAVANA DOCKS CORPORATION

Claim No. CU-2492

Decision No. CU- 6165

Under the International Claims Settlement
Act of 1949, as amended

Counsel for claimant:

Davis, Polk & Wardwell
By Peter H. Madden, Esq.

## PROPOSED DECISION

This claim against the Government of Cuba, under Title V of the Inter-
national Claims Settlement Act of 1949, as amended, was presented by HAVANA
DOCKS CORPORATION for $9,915,879.00, based upon the asserted ownership and
loss of its assets nationalized by the Government of Cuba.

Under Title V of the International Claims Settlement Act of 1949
[78 Stat. 1110 (1964), 22 U.S.C. §§1643-1643k (1964), as amended, 79 Stat.
988 (1965)], the Commission is given jurisdiction over claims of nationals
of the United States against the Government of Cuba. Section 503(a) of the
Act provides that the Commission shall receive and determine in accordance
with applicable substantive law, including international law, the amount
and validity of claims by nationals of the United States against the Govern-
ment of Cuba arising since January 1, 1959 for

> losses resulting from the nationalization, expropriation,
> intervention or other taking of, or special measures di-
> rected against, property including any rights or interests
> therein owned wholly or partially, directly or indirectly
> at the time by nationals of the United States.

Section 502(3) of the Act provides:

> The term 'property' means any property, right, or inter-
> est including any leasehold interest, and debts owed by
> the Government of Cuba or by enterprises which have been

- 2 -

nationalized, expropriated, intervened, or taken by
the Government of Cuba and debts which are a charge
on property which has been nationalized, expropriated,
intervened, or taken by the Government of Cuba.

Section 502(1)(B) of the Act defines the term "national of the United
States" as a corporation or other legal entity which is organized under the
laws of the United States, or of any State, the District of Columbia, or
the Commonwealth of Puerto Rico, if natural persons who are citizens of
the United States own, directly or indirectly, 50 per centum or more of the
outstanding capital stock or other beneficial interest of such corporation
or entity.

The record shows that in 1917 claimant corporation was organized under
the laws of the State of Delaware. Claimant's Vice-President and Assistant
Comptroller stated that at all times between August 14, 1917 and the pre-
sentation of the claim, more than 50 percent of the outstanding capital
stock of all classes has been owned by persons who were United States
nationals, and that at the time of filing the claim, of 35,505 outstanding
shares of stock of HAVANA DOCKS CORPORATION only 1,003 or approximately 3%
of the total outstanding shares were held by persons who were not nationals
of the United States. The Commission therefore holds that claimant is a
national of the United States within the meaning of Section 502(1)(B) of
the Act.

Claimant states that on the basis of a concession granted by the
Government of Cuba, it owned and operated, at the entrance of the harbor
of Havana three piers: the "San Francisco", "Machina" and "Santa Clara"
linked with a large marginal building. The piers and buildings were used
for warehousing purposes, cargo deposits, and for merchandise provisionally
stored pending Customs clearance. Each pier consisted of a two-story
concrete building with an apron equipped with platforms, and a double rail-
road track to permit direct unloading of cargo from ships to railroad cars
and vice versa. All official port authorities were located within the

- 3 -

marginal building, such as the Customs House of Havana, the Inspector General of the Port, the Immigration Department and other governmental agencies. Elevators, escalators, portable cranes, tractors, trailers, fork lift trucks, and other port and dock equipment were part of claimant's installations on the piers and in the warehouses, which were located in the center of harbor activities of the port of Havana.

Based upon the record, the Commission finds that on September 7, 1934, claimant HAVANA DOCKS CORPORATION obtained from the Government of Cuba the renewal of a concession for the construction and operation of wharves and warehouses in the harbor of Havana, formerly granted to its predecessor concessionaire, the Port of Havana Docks Company; that claimant acquired at the same time the real property with all improvements and appurtenances located on the Avenida del Puerto between Calle Amargura and Calle Santa Clara in Havana, facing the Bay of Havana; that in June, 1946, the property was encumbered with a mortgage in favor of certain bondholders for the amount of $1,600,000.00 in accordance with Public Instrument of June 1, 1946, recorded in Havana on July 25, 1946; and that claimant corporation also owned the mechanical installations, loading and unloading equipment, vehicles and machinery, as well as furniture and fixtures located in the offices of the corporation.

The record further shows that the Cuban assets of claimant corporation were nationalized by Resolution No. 3, published in the Official Gazette of October 24, 1960, pursuant to Law No. 851 of July 6, 1960, and that the facilities of the company were physically occupied by agents of the Cuban Government on November 21, 1960. Accordingly, the Commission finds that the Cuban assets of HAVANA DOCKS CORPORATION were nationalized by the Government of Cuba on October 24, 1960.

CU-2492

- 4 -

Claimant states that the corporation suffered the following losses:

| | |
|---|---:|
| Land and Concession . . . . . . . . . . . | $ 2,000,000.00 |
| Buildings . . . . . . . . . . . . . . . . | 6,892,557.00 |
| Personal property, equipment, etc. . . . . | 595,315.00 |
| Securities (1000 common stock shares of Cuban Telephone Company) . . . . | 100,000.00 |
| Debts owed by nationalized enterprises and by the Government of Cuba. . . . . . . . | 328,007.00 |
| | $ 9,915,879.00 |

In support of this valuation of losses claimant submitted, among other things, the following evidence:

(1) Trial balance as of December 31, 1958;

(2) Balance sheets for the years 1956, 1957, 1958 and 1959;

(3) Auditor's report as of December 31, 1958;

(4) An evaluation of the properties by Mr. Louis Parajon, a civil engineer and former professional appraiser in Cuba; and

(5) An inventory of the equipment, furniture and fixtures as of December 31, 1959.

The Act provides in Section 503(a) that in making determinations with respect to the validity and amount of claims and value of properties, rights, or interests taken, the Commission shall take into account the basis of valuation most appropriate to the property and equitable to the claimant, including but not limited to fair market value, book value, going concern value or cost of replacement.

The question, in all cases, will be to determine the basis of valuation which, under the particular circumstances, is "most appropriate to the property and equitable to the claimant". This phraseology does not differ from the international legal standard that would normally prevail in the evaluation of nationalized property. It is designed to strengthen that standard by giving specific bases of valuation that the Commission shall consider.

- 5 -

The record contains a report of the Office of the Property Register of Havana which shows that in 1928, the concession, then owned by the Port of Havana Docks Company, had an assessed market value of $600,000.00, and that a subsequent assessment established the value of the concession at $5,000,000.

Upon consideration of the entire record, the Commission finds that the valuation most appropriate to the property and equitable to the claimant is that shown in the Balance Sheet for the year ended 1959, supported by the Trial Balance for December 31, 1958.  These financial statements reflect the following book values adopted by claimant corporation:

| | |
|---|---:|
| Land and Concession . . . . . . . . . . . . | $ 2,000,000.00 |
| San Francisco and Machina Piers . . . . . . | 4,758,829.00 |
| Santa Clara Pier . . . . . . . . . . . . | 2,110,845.00 |
| Equipment . . . . . . . . . . . . . . . . | 419,056.00 |
| Office Furniture and Fixtures . . . . . . . | 90,616.00 |
| Railroad Tracks . . . . . . . . . . . . . | 22,883.00 |
| Total | $ 9,402,229.00 |

The record indicates that the pier properties are stated at values appraised as of December 31, 1920, plus subsequent additions at cost.  The terms of the concession granted by the Cuban Government were to expire in the year 2004, at which time the corporation had to deliver the piers to the government in good state of preservation.  The equipment, office furniture were acquired more recently and are stated at cost.  The appraiser, Louis Parajon states in his report that in 1960 the concession, real property, office and general equipment had a value of $16,180,000.00 after depreciation, which is considerably more than what the claimant describes as the loss.

The Commission is aware that from 1920 to 1960 real property prices in Havana had increased, and that the values expressed in prices of the year 1920 may not have been realistic in 1960.  The Commission, however, notes

- 6 -

that during the prior years claimant corporation allowed for depreciation of the real property and amortization of the concession approximately 1-1/2 per cent per year; and that nothing was added to show any appreciation of the property.

The Commission, therefore, concludes that it would be equitable and appropriate to consider as basic the year 1934 when HAVANA DOCKS CORPORATION obtained the concession for the operation of the docks; to deduct from that year up to the year 1960 one per cent (1%) yearly for amortization of the concession and for the depreciation of the buildings; and further deduct 25% from the stated value of the equipment, furniture and fixtures for wear and tear, assuming that most equipment was in operation during an average time of five years, when it was taken by the Government of Cuba.

The Commission finds that the amount of $2,000,000 includes not only the value of the concession but also the value of the land and of the piers alongside the property which, in the opinion of the Commission, had a value of $1,000,000 in the year 1960.

Amortization and depreciation is therefore applicable as follows:

(a)  1% per year from 1934 to 1960, or 26% on the following values:

| | | |
|---|---|---|
| Concession | $ 1,000,000 | |
| San Francisco and Machina Piers | 4,758,829 | (structures only) |
| Santa Clara Pier | 2,110,845 | (structures only) |
| Railroad Tracks | 22,883 | |
| Total | $ 7,892,557 | |

26% thereof . . . . . . . . . . . . . . . . . . . $ 2,052,064.82

(b)  25% from the value of the equipment, office
furniture and fixtures of $509,672 . . . . . . . .     127,418.00

Total depreciation     $ 2,179,482.82

As stated above, the real property was encumbered with a mortgage of $1,600,000 in favor of certain bondholders, but the balance sheet for the year ended December 31, 1959 shows that this funded debt has been reduced to a balance of $38,386.00 as of that date. Consequently, from the value

- 7 -

| | |
|---|---|
| of the property of | $ 9,402,229.00 |
| must be deducted for depreciation | $ 2,179,482.82 |
| and the balance of the funded debt | 38,386.00 |
| | 2,217,868.82 |
| resulting in the net value of the tangible property, including concession, of | $ 7,184,360.18 |

The Commission further finds that claimant corporation was the owner of 1,000 shares of common stock of the Cuban Telephone Company.  The Commission has held that the Cuban Telephone Company was nationalized on August 6, 1960 by Resolution No. 1 published by the Government of Cuba pursuant to Law 851, and that the loss sustained by the holders of common stock shares amounted to $184.0057 per share.  (See Claim of International Telephone & Telegraph Corporation, Claim No. CU-2615.)  Accordingly, claimant suffered a loss as the owner of 1,000 common stock shares in the aggregate amount of $184,005.70.

The Commission further finds that the amount claimed of $328,007 for debts owed by nationalized enterprises and by the Cuban Government, included a debt of $99,097 due from the Government of Cuba, and accounts receivable of $218,630 due to claimant corporation from trade enterprises nationalized, expropriated or intervened by the Government of Cuba.  The Commission, therefore, concludes that claimant is entitled to an additional certification of losses for accounts receivable in the amount of $317,727.00.

The Commission does not deduct liabilities of United States corporations and other entities, except for taxes due to the Cuban Government.  (See Claim of Simmons Company, Claim No. CU-2303, 1968 FCSC Ann. Rep. 77.)  In the present claim the record shows that taxes accrued at the end of 1959 due to the Cuban Government amounted to $16,672.00.

| | |
|---|---|
| Therefore, from the sum of accounts receivable of | $317,727.00 |
| the tax indebtedness of | 16,672.00 |
| is deducted, leaving a net amount of receivables of | $301,055.00 |

Included in the debt claim is also an amount of $10,280.00 for handling charges, but the evidence does not disclose that this amount was due from

CU-2492

- 8 -

enterprises nationalized, expropriated, intervened or taken by the Government of Cuba, or that the amount was a charge on property which was nationalized, expropriated, intervened or taken by the Cuban Government, as required by Section 502(3) of the Act.  Accordingly, the claim for $10,280.00 for handling charges is denied.

Summarizing, claimant corporation suffered the following losses within the meaning of Title V of the International Claims Settlement Act of 1949, as amended:

|  |  | Date of loss |
|---|---|---|
| Loss of concession and tangible assets | $7,184,360.18 | October 24, 1960 |
| Loss of securities | 184,005.70 | August 6, 1960 |
| Loss of accounts receivable | 301,055.00 | October 24, 1960 |
| Total loss | $7,669,420.88 | |

The Commission has decided that in certifications of loss on claims determined pursuant to Title V of the International Claims Settlement Act of 1949, as amended, interest should be included at the rate of 6% per annum from the date of loss to the date of settlement (see Claim of Lisle Corporation, Claim No. CU-0644) and in the instant case it is so ordered as follows:

| FROM | ON |
|---|---|
| October 24, 1960 | $7,485,415.18 |
| August 6, 1960 | 184,005.70 |

CU-2492

- 9 -

<u>CERTIFICATION OF LOSS</u>

The Commission certifies that HAVANA DOCKS CORPORATION suffered
a loss, as a result of actions of the Government of Cuba, within the
scope of Title V of the International Claims Settlement Act of 1949,
as amended, in the amount of Seven Million Six Hundred Sixty-Nine
Thousand Four Hundred Twenty Dollars and Eighty-Eight Cents
($7,669,420.88) with interest thereon at 6% per annum from the re-
spective dates of loss to the date of settlement.

Dated at Washington, D. C.,
and entered as the Proposed
Decision of the Commission

APR 21 19/1

Lyle S. Garlock, Chairman

Theodore Jaffe, Commissioner

The statute <u>does not provide for the payment of claims</u> against the
government of Cuba.  Provision is only made for the determination by the
Commission of the validity and amounts of such claims.  Section 501 of the
statute specifically precludes any authorization for appropriations for
payment of these claims.  The Commission is required to certify its
findings to the Secretary of State for possible use in future negotiations
with the Government of Cuba.

NOTICE:  Pursuant to the Regulations of the Commission, if no objections
are filed within 15 days after service or receipt of notice of this
proposed Decision, the decision will be entered as the Final Decision of
the Commission upon the expiration of 30 days after such service or receipt
of notice, unless the Commission otherwise orders.  (FCSC Reg., 45 C.F.R.
531.5(e) and (g), as amended (1970).)

CU-2492