## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

HAVANA DOCKS CORPORATION,

        *Plaintiff*,

v.

CARNIVAL CORPORATION d/b/a CARNIVAL
CRUISE LINE, a foreign corporation,

        *Defendant*.

_____/

Civil Action No.
19-cv-21724

## CARNIVAL CORPORATION'S MOTION TO DISMISS THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

**AKERMAN LLP**
Pedro A. Freyre
(Florida Bar No. 192140)
98 SE 7th St., Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Pedro.freyre@akerman.com

**JONES WALKER LLP**
George J. Fowler, III
(*Pro Hac Vice Application forthcoming*)
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8752
gfolwer@joneswalker.com

**BOIES SCHILLER FLEXNER LLP**
Stuart H. Singer
(Florida Bar No. 377325)
Evan Ezray
(Florida Bar No. 1008228)
401 East Las Olas Boulevard
Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
eezray@bsfllp.com

## **TABLE OF CONTENTS**

<u>Page</u>

ARGUMENT .................................................................................................2

I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT
HAS NOT AND CANNOT PLEAD THAT CARNIVAL TRAFFICKED
IN CUBAN-CONFISCATED PROPERTY....................................................3

     A.    Plaintiff failed to plead trafficking because it has not pled Carnival
used property not incident to lawful travel ...........................................3

     B.    Plaintiff cannot plead trafficking because Carnival's use of the
Havana Docks is necessary to lawful travel to Cuba. ...........................5

II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT
FAILS TO PLEAD THAT CARNIVAL TRAFFICKED IN PROPERTY
TO WHICH IT OWNS A CLAIM ...............................................................11

CONCLUSION ............................................................................................16

STATEMENT REGARDING ORAL ARGUMENT ............................................17

CERTIFICATE OF SERVICE ........................................................................18

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Alamo Land & Cattle Co. v. Arizona*,
 424 U.S. 295 (1976) ........................................................................................13

*Arko Plumbing Corp. v. Rudd*,
 13-CV-22434-UU, 2013 WL 12059615 (S.D. Fla. Sept. 26, 2013) .....................4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...........................................................................................2

*Ayestas v. Davis*,
 138 S. Ct. 1080 (2018) ........................................................................................8

*Basson v. Mortg. Elec. Registration Sys., Inc.*,
 741 F. App'x 770 (11th Cir. 2018)......................................................................14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................2, 5

*Brown v. Regions Mortgage Corp.*,
 1:11-CV-3716-SCJ-ECS, 2012 WL 13013583 (N.D. Ga. Dec. 3, 2012) ..............4

*Bryant v. Avado Brands, Inc.*,
 187 F.3d 1271 (11th Cir. 1999) ...........................................................................6

*C. I. R. v. Tellier*,
 383 U.S. 687 (1966) ............................................................................................8

*Carter v. Am. Tel. & Tel. Co.*,
 365 F.2d 486 (5th Cir. 1966) ...............................................................................6

*Comnet Wireless, LLC v. Benning Power Elecs., Inc.*,
 14-CV-3424-JLK, 2016 WL 8578007 (D. Colo. Feb. 8, 2016)............................7

*Consol. Bank, N.A., Hialeah v. U.S. Dept. of Treasury, Office of
  Comptroller of Currency*,
 118 F.3d 1461 (11th Cir. 1997).............................................................................7

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
 447 U.S. 102 (1980) ...........................................................................................7

*Crenshaw v. Lister*,
 556 F.3d 1283 (11th Cir. 2009) ........................................................................15

*CSX Corp. v. United States*,
 909 F.3d 366 (11th Cir. 2018) ............................................................................8

*DeMeo v. State Farm Mut. Auto. Ins. Co.*,
 639 F.3d 413 (8th Cir. 2011) ............................................................................14

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept.
 of Treasury*,
 606 F. Supp. 2d 59 (D.D.C. 2009).......................................................................7

*F.T.C. v. Rockefeller*,
 591 F.2d 182 (2d Cir. 1979) ................................................................................8

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
 500 F.3d 1276 (11th Cir. 2007) ..........................................................................4

*Fish v. Kobach*,
 840 F.3d 710 (10th Cir. 2016) ............................................................................8

*Griffin Indus., Inc. v. Irvin*,
 496 F.3d 1189 (11th Cir. 2007) ........................................................................14

*Hoefling v. City of Miami*,
 811 F.3d 1271 (11th Cir. 2016) ........................................................................14

*Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*,
 394 F.2d 36 (6th Cir. 1968) ................................................................................6

*Jeffrey Hart Grp., Inc. v. Int'l Motion Control, Inc.*,
 *00-CV-1052E (F)*, 2002 WL 34350532 (W.D.N.Y. Dec. 16, 2002)....................14

*Martinez v. Republic of Cuba*,
 10-22095-CIV, 2011 WL 13115432 (S.D. Fla. June 27, 2011).........................5, 6

*Mudge v. Stop & Shop, Inc.*,
 162 N.E.2d 670 (Mass. 1959)..............................................................................9

*M'Culloch v. Maryland*,
   17 U.S. 316 (1819) .................................................................................8

*Nat. Res. Def. Council, Inc. v. Thomas*,
   838 F.2d 1224 (D.C. Cir. 1988)..............................................................8

*Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land*
   *& Bldg. located at 900 2nd St. NE, Washington, DC* 20002-3557,
   266 F. Supp. 3d 63 (D.D.C. 2017)..........................................................8

*Nat'l R.R. Passenger Corp. v. Faber Enters., Inc.*,
   931 F.2d 438 (7th Cir. 1991) .................................................................13

*PVM Redwood Co., Inc. v. United States*,
   686 F.2d 1327 (9th Cir. 1982) ...............................................................12

*Regan v. Wald*,
   468 U.S. 222 (1984) ...............................................................................9

*RJR Nabisco, Inc. v. United States*,
   955 F.2d 1457 (11th Cir. 1992) .............................................................10

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
   253 F.3d 678 (11th Cir. 2001) ...............................................................4

*Sw. Ga. Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*,
   2009 WL 1410272 (M.D. Ga. May 19, 2009).......................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...............................................................................6

*Thompson v. Ill. Dept. of Prof'l Reg.*,
   300 F.3d 750 (7th Cir. 2002) .................................................................15

*Truck Drivers Local 807, Intern. Broth. of Teamsters, Chauffeurs,*
   *Warehousemen & Helpers of Am. v. Carey Transp. Inc.*,
   816 F.2d 82 (2d Cir. 1987) ....................................................................9

*United States v. Gen. Motors Corp.*,
   323 U.S 373 (1945) ...............................................................................13

*United States v. Petty Motor Co.*,
   327 U.S. 372 (1946) ...............................................................................13

*United States v. Shotts,*
145 F.3d 1289 (11th Cir. 1998) ...............................................................................12

*United States v. Tropiano,*
418 F.2d 1069 (2d Cir. 1969) ..................................................................................9

*Util. Air Regulatory Group v. E.P.A.,*
573 U.S. 302 (2014) ...................................................................................................9

*Villas of Lake Jackson, Ltd. v. Leon County,*
121 F.3d 610 (11th Cir. 1997) .................................................................................12

## <u>Statutes</u>

22 U.S.C. § 6021 .............................................................................................................1

22 U.S.C. § 6023(12)(A) ...............................................................................................12

22 U.S.C. § 6023(13)(A) .......................................................................................... 4, 14

22 U.S.C. § 6023(13)(B)(iii) ................................................................................ 4, 5, 10

22 U.S.C. § 6081(5) .........................................................................................................2

22 U.S.C. § 6082 ..............................................................................................................3

22 U.S.C. § 6082(a)(1)(A) .............................................................................................14

22 U.S.C. § 6083(a)(1) ...................................................................................................15

44 U.S.C. § 1507 ..............................................................................................................6

50 U.S.C. § 1702(b)(4) ....................................................................................................7

## <u>Rules</u>

Fed. R. Civ. P. 10(c)......................................................................................................14

Fed. R. Evid. 201(d).........................................................................................................6

Fed. R. Civ. P. 8(a)(2)......................................................................................................2

## **Regulations**

31 C.F.R. § 515.560(a) ..................................................................................1

31 C.F.R. § 515.560(c) ..................................................................................1

31 C.F.R. § 515.572(a)(1)-(4) ........................................................................1

31 C.F.R. § 515.572(a)(1) ..............................................................................6

31 C.F.R. § 515.572(a)(2)(i) ..........................................................................6

31 C.F.R. § 515.572(a)(4) ..........................................................................6, 11

*Cuban Assets Control Regulations*,
    80 FR 56915-01 ......................................................................................1

## **Other Authorities**

141 Cong. Rec. D1225-02 ............................................................................10

141 Cong. Rec. S15320-01 ............................................................................9

142 Cong. Rec. H1645-02 ............................................................................10

H.R. Rep. 104-202(I) ....................................................................................9

U.S. citizens may lawfully travel to Cuba under certain circumstances. 31 C.F.R. § 515.560(a). When U.S. citizens choose to pursue this lawful travel to Cuba they must be transported there, and accordingly, transporting people to Cuba is also lawful. 31 C.F.R. § 515.560(c); *see also* 31 C.F.R. § 515.572(a)(1)-(4). Indeed, in September 2015, with the goal of "engag[ing] and empower[ing] the Cuban people," the Treasury Department approved a general license, which allowed the provision of "carrier services by vessel" to Cuba. *See* Cuban Assets Control Regulations, 80 FR 56915-01. Under this license, Carnival Corporation ("Carnival") has lawfully offered cruises to Cuba since 2016.

Despite Carnival's Cuba cruises being authorized by the Federal Government, Plaintiff contends that, in providing cruises to Cuba, Carnival has unlawfully trafficked in the docks in Havana, which were expropriated by the Cuban Government in the 1960s. Plaintiff has brought suit under Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act. *See* 22 U.S.C. § 6021, *et seq.* (either the "Act" or "Helms-Burton"). That Act, which until May 2019 had been suspended since its enactment in 1996, provides a cause of action to Americans who own claims to confiscated Cuban property against persons who "traffic" in that property.

Helms-Burton has no application here. *First*, by its own terms, trafficking under Helms-Burton does not include uses of property "incident to lawful travel to Cuba." But that is exactly how Carnival uses the docks in Havana, they are a means for Carnival's guests to lawfully travel to Cuba. (See Argument I, below.) *Second*, the property Plaintiff claims was expropriated—a concession to run three piers in Havana, and the piers themselves—is not the property Plaintiff claims Carnival is trafficking in because Plaintiff's concession expired in 2004, and at that point the piers reverted back to the Cuban government. (See Argument II below.)

1

Carnival has no doubt that millions of Cuban-Americans have suffered severe harm at the hands of their former Government. But Helms-Burton was designed with the narrow intent to deter companies and individuals from investing in or exploiting confiscated property. The findings in the text of the Act make clear its focus by reciting that "[t]he Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals." *See* 22 U.S.C. § 6081(5). The Act does not by its terms reach companies, such as Carnival, who are engaged in lawful travel. Because Plaintiff's claims against Carnival fail as a matter of law, the Complaint should be dismissed with prejudice.

## ARGUMENT

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Although this standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The

plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT HAS NOT AND CANNOT PLEAD THAT CARNIVAL TRAFFICKED IN CUBAN-CONFISCATED PROPERTY

Helms-Burton provides, among other things, a cause of action against people who traffic in the property of United States nationals that was confiscated by the Cuban government.  22 U.S.C. § 6082.  Plaintiff alleges that it is a United States national and the "rightful owner" of a "commercial waterfront real property in the Port of Havana."  (Compl. ¶ 6.)  Plaintiff alleges that Carnival is now "trafficking" in the confiscated property.  (Compl. ¶¶ 12-14.)  Specifically, Plaintiff alleges that in May 2016, Carnival "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property." (Compl. ¶ 12.)  Plaintiff makes no allegations regarding whether the travel is lawful. Plaintiff does not plead that the use of the dock is not incident to lawful travel or not necessary to the conduct of such travel.

### A. *Plaintiff failed to plead trafficking because it has not pled Carnival used property not incident to lawful travel.*

Helms-Burton provides a specific definition of trafficking:

> [A] person "traffics" in confiscated property if that person knowingly and intentionally—
>
> (i)  sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or

> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13)(A).  The Act carves out from the definition of trafficking, "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii).  To plead trafficking under the Act, it is not enough to plead that a defendant was using confiscated Cuban property, a plaintiff must go a step further and plead facts stating a plausible allegation that the use of the property was not incident to lawful travel.  22 U.S.C. § 6023(13)(B)(iii).

The requirement to plead facts necessary to meet the Act's definition of trafficking is an elementary matter of pleading a statutory cause of action.  To plausibly plead a claim, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'"  *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)).  Courts in this Circuit have routinely required a plaintiff pursuing a statutory claim to plead facts that plausibly meet the statutory definition.  *See, e.g.*, *Arko Plumbing Corp. v. Rudd*, 13-CV-22434-UU, 2013 WL 12059615, at *3 (S.D. Fla. Sept. 26, 2013) (under Computer Fraud and Abuse Act, which has a statutory definition of "damage," "pleading a type of damage within the statutory definitions is an essential element" of the claim); *Brown v. Regions Mortg. Corp.*, 1:11-CV-3716-SCJ-ECS, 2012 WL 13013583, at *3 (N.D. Ga. Dec. 3, 2012) (to state a claim under Fair Debt Collection Practices Act, a plaintiff must "allege facts showing how [the] defendant meets the statutory definition of a 'debt

4

collector'"), *report and recommendation adopted*, 2012 WL 13013984 (N.D. Ga. Dec. 31, 2012).

Plaintiff has not pled that Carnival's use of the docks was not "incident to lawful travel to Cuba," or not "necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). (*See* Compl. ¶ 12.) Indeed, Plaintiff's allegations suffer the same flaw as the ones that were rejected by the Supreme Court in *Twombly*. Plaintiff has alleged facts that could be consistent with trafficking—he alleges that Carnival used the docks. That is not enough. He has done nothing to allege that trafficking actually occurred—he has said nothing about whether that use was "incident to lawful travel." *See Twombly*, 550 U.S. at 557 (plaintiff does not state a claim for illegal antitrust agreement by alleging facts showing parallel conduct, plaintiff must allege facts suggesting an actual agreement). Accordingly, because Plaintiff has failed to plead any facts suggesting that Carnival "trafficked" within the meaning of the Act, the Complaint should be dismissed.

B.    *Plaintiff cannot plead trafficking because Carnival's use of the Havana Docks is necessary to lawful travel to Cuba.*

Even if Plaintiff had attempted to plead "trafficking"—which it has not—the attempt would fail because Carnival's use of the Havana Docks was, as a matter of law, "incident to lawful travel to Cuba," and "necessary to the conduct of such travel," and accordingly, cannot be "trafficking" as defined by Helms-Burton. 22 U.S.C. § 6023(13)(B)(iii).

*First*, all of Carnival's cruises to Cuba were "lawful travel." Plaintiff alleges that Carnival "commenced, conducted, and promoted its commercial cruise line business to Cuba" beginning in May 2016. (Compl. ¶ 12.) At that time (and today) commercial cruise travel to Cuba was lawful.

The Office of Foreign Assets Control ("OFAC"), in the Department of the Treasury, is charged with regulating travel to Cuba. *See Martinez v. Republic of*

*Cuba*, 10-22095-CIV, 2011 WL 13115432, at *3 (S.D. Fla. June 27, 2011), *report and recommendation adopted in part, rejected in part on other grounds*, 10-22095-CIV, 2011 WL 13115471 (S.D. Fla. Aug. 26, 2011) ("Cuba-related travel transactions by persons subject to U.S. jurisdiction are prohibited unless authorized by OFAC."). Since 2015, OFAC has granted travel providers a general license, which allowed "[p]ersons subject to U.S. jurisdiction . . . to provide travel services in connection with travel-related transactions involving Cuba authorized pursuant to this part." 31 C.F.R. § 515.572(a)(1).[1]  In doing so, American companies like Carnival were "authorized to provide carrier services to, from, or within Cuba in connection with travel or transportation," 31 C.F.R. § 515.572(a)(2)(i), and when those travel or carrier services were provided by a vessel, those companies were "authorized to provide lodging services onboard such vessels to persons authorized to travel to or from Cuba pursuant to this part during the period of time the vessel is traveling to, from, or within Cuba, including when docked at a port in Cuba." 31 C.F.R. § 515.572(a)(4).  Because Carnival operated under an OFAC license, the travel-related services it provided were lawful. *Martinez*, 2011 WL 13115432, at *7 ("It is undisputed that the OFAC licensed Garnishees to provide travel services to Cuba and make payments associated therewith. The assets that Plaintiff seeks to

---

[1] "A Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority." *Sw. Ga. Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*, 2009 WL 1410272, at *1 (M.D. Ga. May 19, 2009) (quoting *Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968); *see Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 491 (5th Cir. 1966); *see also* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number.").  The Court may consider judicially noticed federal regulations on a motion to dismiss.  *See* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-80 (11th Cir. 1999).

garnish have thus been authorized for transfer to Cuba and are not subject to an across-the-board prohibition on transfer."); *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 64 (D.D.C. 2009) (explaining that an OFAC general licenses, like the one Carnival operated under, "broadly authorizes entire classes of transactions").

*Second*, Carnival's use of the docks was "incident" to that "lawful travel." "Incident" means "[d]ependent on, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)." INCIDENT, Black's Law Dictionary (10th ed. 2014). Thus, a use of property is "incident to lawful travel" when the use of the property "arises out of" or is "otherwise connected with" the travel. *Comnet Wireless, LLC v. Benning Power Elecs., Inc.*, 14-CV-3424-JLK, 2016 WL 8578007, at *2 (D. Colo. Feb. 8, 2016) (describing costs of airfare to Denver as "expenses incident to travel"); *see also* 50 U.S.C. § 1702(b)(4) (defining "transactions ordinarily incident to travel to or from any country" to include "arrangement or facilitation of such travel including nonscheduled air, sea, or land voyages"). That is precisely what Carnival's cruises use of the docks was: Carnival used the docks in connection with its Guests' travel—the docks were a means of getting the Guests to their lawful travel in Cuba. (Compl. ¶ 12 (alleging that Carnival "regularly embark[ed] and disembark[ed] its passengers on the Subject Property").)

*Third*, Carnival's use of the docks was "necessary to the conduct of such travel." This interpretation flows from the normal meaning of the word "necessary." "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "As a basic rule of statutory interpretation," courts "read the statute using the normal meanings of its words." *Consol. Bank, N.A., Hialeah v. U.S. Dept. of Treasury, Office of Comptroller of Currency*, 118 F.3d 1461, 1463 (11th Cir. 1997).

Black's Law Dictionary notes that "necessary" "may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought." *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018) (quoting Black's Law Dictionary 928 (5th ed. 1979)). That makes sense because this ordinary usage of "necessary" is frequently used in the law.  *Fish v. Kobach*, 840 F.3d 710, 734 (10th Cir. 2016) ("[C]ourts also have frequently interpreted "necessary" to mean something less than absolute necessity."); *Nat. Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988) ("[C]ourts have frequently interpreted the word 'necessary' to mean less than absolutely essential, and have explicitly found that a measure may be 'necessary' even though acceptable alternatives have not been exhausted." (internal citations omitted)); *Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land & Bldg. located at 900 2nd St. NE, Washington, DC 20002-3557*, 266 F. Supp. 3d 63, 68 (D.D.C. 2017) ("[F]or centuries the law has also recognized a broader understanding of necessity that does not imply indispensability.").  For example:

- Justice Marshall famously held that "necessary" in the Necessary and Proper Clause does not require strict essentiality, but rather, requires means that are "convenient, or useful, or essential" to the end, *M'Culloch v. Maryland*, 17 U.S. 316, 413 (1819);

- A business expense is "necessary" within the meaning of the Tax Code if it is "appropriate and helpful," *C. I. R. v. Tellier*, 383 U.S. 687, 689 (1966); *accord CSX Corp. v. United States*, 909 F.3d 366, 370 (11th Cir. 2018) (Jordan, J., concurring); and

- The FTC can gather information "necessary" to its investigations in an ancillary investigation, if the need for the information "arise[s] reasonably and logically out of the main investigation."  *F.T.C. v. Rockefeller*, 591 F.2d 182, 188 (2d Cir. 1979).

8

Thus, as a matter of ordinary usage, when Helms-Burton says that the use of property must be "necessary" to lawful travel, it means that the use must be important, helpful, or appropriate to the conduct of lawful travel to Cuba.

Context bolsters this interpretation. *Util. Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 321 (2014) (noting that statutory interpretation must take context into account). Helms-Burton does not require that the use of property at issue be "necessary" to "such lawful travel," rather it links necessity to "the conduct of" the travel. In this construction, necessary usually does not mean strictly essential. *See United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) (the right to solicit customers in a given area is "necessary to the conduct" of a business even though the court did not consider whether the customers were essential to the business); *Mudge v. Stop & Shop, Inc.*, 162 N.E.2d 670, 672 (Mass. 1959) (stating that grocery carts are "necessary to the conduct" of grocery stores even though the court did not consider whether customers could move goods through the store by other means).

Finally, legislative history confirms that Congress used "necessary" in its ordinary sense. *See Truck Drivers Local 807, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Carey Transp. Inc.*, 816 F.2d 82, 89 (2d Cir. 1987) (considering legislative history to construe term "necessary"). The 1995 version of the Helms-Burton Act did not have a lawful travel carve out. H.R. REP. NO. 104-202(I), at 5, (1995), *reprinted in* 1996 U.S.C.C.A.N. 527, 0. In response, a number of Senators expressed concern that the Act would needlessly restrict Americans' ability to lawfully travel to Cuba. These concerns made sense because before Helms-Burton, a number of Presidents had allowed Americans to travel to Cuba. *See Regan v. Wald*, 468 U.S. 222, 224 (1984) (explaining that for five years OFAC allowed transactions incident to travel in Cuba). Thus, Senator Simon offered an amendment to the Bill that aimed to protect lawful travel. 141 CONG. REC. S15320-01, S15320, 1995 WL 614999. As he explained, Congress

"should not restrict travel to any country unless security is threatened . . . ." *Id.* Senator Dodd echoed Senator Simon, explaining, "I think most of us believe that access and contact between peoples, particularly free people with the people who are living under a dictatorship, has a tremendous impact, or can have a tremendous impact, to say that no one in this country to the one place throughout the entire globe could travel makes no sense at all." *Id.*  Although Senator Simon's initial travel-related amendment failed, 141 CONG. REC. D1225-02, D1225, 1995 WL 615160, when Helms-Burton passed the House and the Senate in 1996, Congress had added the lawful travel carve out to the definition of trafficking.  142 CONG. REC. H1645-02, H1647, 1996 WL 90487.  The Committee Report, which "next to the statute itself it is the most persuasive evidence of congressional intent," *RJR Nabisco, Inc. v. United States*, 955 F.2d 1457, 1462 (11th Cir. 1992), explains that the reason for adding the lawful travel carve-out was to "remove[] any liability for . . . any activities related to lawful travel."  142 CONG. REC. H1645-02 at H1656.  The Committee Report thus makes clear that, consistent with the text of the carve-out, Helms-Burton is not meant to reach uses of property involved in lawful travel to Cuba.

This is consistent with Helms-Burton having adopted with the intent of deterring foreign investors from purchasing or otherwise exploiting property that was wrongfully confiscated by the Cuban government with the hopes that cutting off this lucrative source of foreign investment would put pressure on the government to reform.  However, the Act was never intended to punish or deter lawful travel to Cuba, and thus Congress specifically exempted lawful travel from the reach of the Act.  22 U.S.C. § 6023(13)(B)(iii).

This Court can determine that as a matter of law Carnival's use of the docks was necessary to the conduct of lawful travel.  Quite simply, the use of a dock is important, helpful, and appropriate, for sea travel to Cuba.  Indeed, the OFAC regulations specifically contemplate that a dock will be used when a vessel travels

10

to Cuba, allowing a vessel operator to provide lodging services, "including *when docked at a port in Cuba*." 31 C.F.R. § 515.572(a)(4).  As Plaintiff itself alleges, docks are important to cruise travel because that is where passengers "embark[] and disembark[]."  (Compl. ¶ 12.)

Accordingly, because Carnival's use of the docks was necessary for, and incident to, lawful travel to Cuba, Plaintiff cannot plead that Carnival "trafficked," and the case should be dismissed with prejudice.

## II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD THAT CARNIVAL TRAFFICKED IN PROPERTY TO WHICH IT OWNS A CLAIM

Plaintiff's Complaint fails for a second fundamental reason.  Plaintiff has failed to plead that Carnival has ever trafficked in property to which Plaintiff has a claim.  Indeed, the allegations of Plaintiff's Complaint show that Carnival could not have trafficked in Plaintiff's property.  That is because the "property" that was confiscated from Plaintiff was not a fee simple interest in real property.  Instead, Plaintiff owned a time-limited concession, which required Plaintiff to return the piers it operated to the Cuban Government in 2004.  Accordingly, in 2016, when Plaintiff alleges that Carnival "trafficked" in those piers, Carnival could not have been making use of Plaintiff's property.

Plaintiff claims that Carnival began trafficking in its property "on or about May 1, 2016." (Compl. ¶¶ 12-14.)  With respect to the property, Plaintiff asserts generally that it is the "rightful owner" of the Havana Cruise Port Terminal.  (Compl. ¶ 6.) Plaintiff then goes on to plead that its "ownership interest . . . has been certified by the Foreign Claims Settlement Commission," and attaches a copy of that certification as Exhibit A to its Complaint.  (Compl. ¶ 11 & Ex. A.)

The attached claim certification elaborates on Plaintiff's ownership interest. In evaluating and certifying the claim of Plaintiff Havana Docks Corporation, the

Foreign Claims Settlement Commission found that Plaintiff had been granted a concession in 1934 to operate three piers in the Port of Havana, that *the concession expired in 2004*, and that upon expiration of the concession, Plaintiff was required "to deliver the piers to the government in good state of preservation."  (Compl. Ex. A (ECF No. 1-1 at 7, 9).)  The certification makes abundantly clear that Plaintiff's property interest in the Havana port was a temporary one that expired twelve years before Carnival began utilizing the port for cruises.  In other words, at the time of the alleged "trafficking" in 2016, the property belonged to the Cuban government as a result of the concession's expiration.  Thus, even without wrongful confiscation by the Cuban government, the property would not have belonged to Plaintiff at the time Carnival used the property incident to lawful travel to Cuba.

Helms-Burton defines "property" as "any property . . . whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest."  22 U.S.C. § 6023(12)(A).  This definition of "property" recognizes the common understanding that "property" encompasses "specific, finite, property rights in the entire bundle of rights associated with a piece of property."  *Villas of Lake Jackson, Ltd. v. Leon Cty.*, 121 F.3d 610, 612 (11th Cir. 1997).  For this reason, the Act recognizes that a given piece of land can have a "leasehold[er]," a current interest holder, and a future interest holder, as well as other "right" and "interest" holders, each of whom holds a "property" interest in the land. 22 U.S.C. § 6023(12)(A).  The definition of property shows that Helms-Burton recognizes an interest-specific view of property.  *See generally United States v. Shotts*, 145 F.3d 1289, 1296 (11th Cir. 1998) (noting that "modern theory" of property views property as "bundle of rights"); *PVM Redwood Co., Inc. v. United States*, 686 F.2d 1327, 1332 (9th Cir. 1982) (Alarcon, J., dissenting) ("Current notions of property adopt a 'bundle of rights' analysis—that is, an analysis based on

12

the notion of a set of legal relations or relationships among persons with respect to things.").

It is fundamental that one's interest in property extends only so far as the bundle of property rights one has acquired.  Thus, in the context of compensating takings of temporary property interests, such as leaseholds, courts have recognized that leaseholders are only entitled to compensation for the duration and scope of their lease interests.  *See Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303 (1976) ("It has long been established that the holder of an *unexpired leasehold interest* in land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation by the United States." (emphasis added)); *id.* at 304 ("Ordinarily, a leasehold interest has a compensable value whenever the capitalized then fair rental value for the *remaining term of the lease*, plus the value of any renewal right, exceeds the capitalized value of the rental the lease specifies." (emphasis added)); *United States v. Petty Motor Co.*, 327 U.S. 372, 380-81 (1946) ("[E]ach tenant . . . should be permitted to prove damages for the condemnation of its rights *for any remainder of its term which existed after its ouster* by the order of possession but not costs of moving or relocation." (emphasis added)); *United States v. Gen. Motors Corp.*, 323 U.S 373, 382 (1945) ("When [the government] takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more . . . ."); *Nat'l R.R. Passenger Corp. v. Faber Enters., Inc.*, 931 F.2d 438, 440 (7th Cir. 1991) ("Determining which interests have been taken necessitates an inquiry into the relative rights of the lessor and lessee at the time of the taking, as defined in the lease.").

As a matter of statutory text and logic, therefore, to be liable for trafficking under Title III of the Act, a defendant must have trafficked in a property interest to which a plaintiff actually owns a claim.  The Helms-Burton cause of action provides:

"any person that . . . traffics *in property* which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim *to such property* for money damages." 22 U.S.C. § 6082(a)(1)(A). "Such property" in this context refers to the "trafficked property" referenced in the first clause. *See generally DeMeo v. State Farm Mut. Auto. Ins. Co.*, 639 F.3d 413, 416 (8th Cir. 2011) ("The plain meaning of the modifier 'such' is, 'of the type previously mentioned.'" (quoting New Oxford American Dictionary 1738 (3d ed. 2010))); *see also Jeffrey Hart Grp., Inc. v. Int'l Motion Control, Inc.*, 00-CV-1052E (F), 2002 WL 34350532, at *2 n.13 (W.D.N.Y. Dec. 16, 2002) ("such" refers to the last antecedent). Thus, under the plain terms of the Act, if a plaintiff owns no claim to trafficked property, no liability exists.

This reading also makes sense structurally. Helms-Burton authorizes "any United States national who holds a claim to the property" to authorize the use of the property. 22 U.S.C. § 6023(13)(A). If a past owner still "holds a claim to the property" then that past owner could authorize trafficking even against the person who, but for the Cuban government's confiscation, would currently have the rights to use the land. That makes no sense.

On a motion to dismiss, this Court must consider not only the allegations of Plaintiff's Complaint, but also the exhibits attached to it, as those exhibits are considered to be part of Plaintiff's pleadings. *See* Fed. R. Civ. P. 10(c); *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 770-71 (11th Cir. 2018) ("[T]he district court may always consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings."). Indeed, when exhibits attached to a complaint "contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); s*ee also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[I]f the allegations of the complaint about a particular exhibit conflict with

14

the contents of the exhibit itself, the exhibit controls."). When a plaintiff attaches an exhibit to its pleading and relies upon the exhibit as a basis for part of its claim, "dismissal is appropriate if the document negates the claim." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Thompson v. Ill. Dept. of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002)). The claim certification establishes that Plaintiff's temporary property interest in the Havana docks expired in 2004 and that Plaintiff was required at that time to return the docks to the government of Cuba. To the extent these facts conflict with or contradict Plaintiff's allegations that it "owned" the docks at the time Carnival began using them for cruises in May 2016, the certification controls.[2] The certification "negates" Plaintiff's claim and therefore dismissal is appropriate.

The fact that Plaintiff's interest in the docks expired before Carnival allegedly made use of them is dispositive. Plaintiff's interest in the docks expired in 2004. As the Claims Commission made clear, in 2004, Plaintiff would have had to turn the piers over the Cuban Government. After that, Plaintiff had no more interest in the docks than anyone else. Because Plaintiff's property interest in the docks ceased then, Plaintiff cannot plausibly show that Carnival "trafficked" in the property that Plaintiff has a claim to in 2016. Thus Plaintiff has no claim against Carnival cognizable under the Act and its lawsuit should be dismissed.[3]

---

[2] Additionally, the Act requires this Court to "accept as conclusive proof of ownership of an interest in property a certification of a claim to ownership of that interest that has been made by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949." 22 U.S.C. § 6083(a)(1). Necessarily then, the nature of the interest certified by the Commission would control regardless of the allegations pleaded in Plaintiff's Complaint.

[3] This, of course, is not to say that Plaintiff is not entitled to compensation for loss of its property between 1960 and 2004, or that it has no cause of action against anyone who used the port between 1996 and 2004.

## <u>CONCLUSION</u>

For the foregoing reasons, Carnival respectfully requests that the Court dismiss Plaintiff's claim with prejudice.


Dated: May 30, 2019                                        Respectfully submitted,

                                                         By: *s/ Stuart H. Singer* _____

    Pedro A. Freyre                              Stuart H. Singer
    AKERMAN LLP                                  (Florida Bar No. 377325)
    (Florida Bar No. 192140)                     Evan Ezray
    98 SE 7th St., Suite 1100                    (Florida Bar No. 1008228)
    Miami, Florida 33131                         BOIES SCHILLER FLEXNER LLP
    Telephone: (305) 374-5600                    401 East Las Olas Boulevard
    Pedro.freyre@akerman.com                     Suite 1200
                                                 Fort Lauderdale, Florida 33301
    George J. Fowler, III                        Telephone: (954) 356-0011
    JONES WALKER LLP                             ssinger@bsfllp.com
    (*Pro Hac Vice Application*                  eezray@bsfllp.com
    *forthcoming*)
    201 St. Charles Ave.
    New Orleans, LA 70170
    Telephone: (504) 582-8752
    gfolwer@joneswalker.com

                                                         *Attorneys for Carnival Corporation*

16

## STATEMENT REGARDING ORAL ARGUMENT

This is the first case brought under Helms Burton.  Carnival believes oral argument may be helpful to the Court in resolving the issues raised in this motion to dismiss.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

on all counsel of record via the court's CM/ECF System on May 30, 2019.

By:<u>*/s/ Stuart H.Singer*</u>
     Stuart H. Singer, Esq.