UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-21724-BLOOM/McAliley

HAVANA DOCKS CORPORATION,

    Plaintiffs,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Plaintiff's, Havana Docks Corporation, Motion for Leave to File First Amended Complaint, ECF No. [74] ("Motion"). Defendant, Carnival Corporation, filed its Response in Opposition, ECF No. [75] ("Response"), to which Plaintiff filed its Reply, ECF No. [78] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law and is otherwise fully advised. For the reasons set forth below, the Motion is granted, and Defendant's Revised Motion for Reconsideration, ECF No. [65] ("Motion for Reconsideration"), is denied as moot.

    **I.**    **BACKGROUND**

On May 2, 2019, Plaintiff filed this action against Defendant pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "LIBERTAD Act" or "Act"). ECF No. [1]. One of the purposes of the Act is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6). The basis for the lawsuit is that Plaintiff is the rightful owner of certain commercial waterfront real property in the Port of Havana, the Havana Cruise Port Terminal ("Subject Property"), which

property was confiscated by the Cuban Government on October 24, 1960, and that Defendant has trafficked in that property in violation of the Act. *See id.* In 1971, the Foreign Claims Settlement Commission ("FCSC") certified Plaintiff's ownership interest in and claim to the Subject Property under the International Claim Settlement Act of 1949. *Id.* (the "Certified Claim").

On May 30, 2019, Defendant filed its motion to dismiss and argued that the Complaint failed to plead that Defendant's use of the Subject Property was not "incident to lawful travel," and that it failed to plead that Defendant trafficked in property to which it owns a claim. ECF No. [17]. Regarding the latter argument, Defendant contended that Plaintiff's interest in the Subject Property expired in 2004, and therefore, Defendant could not have trafficked in the Subject Property after that date. *Id.*[1] On August 27, 2019, the Court denied the motion to dismiss, ECF No. [47]. In particular, the Court agreed with Plaintiff that Defendant's argument "incorrectly conflate[d] a claim to a property and a property interest," *id.* at 8, found that the Complaint sufficiently alleged that Plaintiff owned a claim to the Subject Property, *id.* and rejected Defendant's argument that the Certified Claim's concession "negated" a valid claim to the Subject Property. *Id.* at 9. Defendant subsequently answered the Complaint. ECF No. [50].

On August 27, 2019—the day that the Court denied Defendant's motion to dismiss—Plaintiff sued MSC Cruises, *Havana Docks Corp. v. MSC Cruises SA Co et al.*, 19-cv-23588 (S.D. Fla. Aug. 27, 2019) ("MSC Case"), and Norwegian Cruise Line, *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 19-cv-23591 (S.D. Fla. Aug. 27, 2019) ("NCL Case") (collectively, "Related Cases"). As in the present case, Plaintiff argued that the defendants in the

---

[1] Defendant further argued that while Plaintiff had no claim cognizable under the Act, that "of course, is not to say that Plaintiff is not entitled to compensation for loss of its property between 1960 and 2004, or that it has no cause of action against anyone who used the port between 1996 and 2004." *Id.* at 15 n.3.

2

Related Cases trafficked in the Subject Property after 2004 in violation of the Act. On October 11, 2019, the defendants in those cases moved to dismiss the complaints and argued, like Defendant, that Plaintiff could not state an actionable claim because it did not have a property interest in the Subject Property at the time of the alleged trafficking event. *See* MSC Case, ECF No. [24]; NCL Case, ECF No. [31]. Significantly, the Court reconsidered and reevaluated its prior interpretation of the Act and granted the motions in substantially similar orders on January 3 and 7, 2020, and dismissed the complaints with prejudice. *See* MSC Case, ECF No. [40]; NCL Case, ECF No. [42] (collectively, "Dismissal Orders").[2]

In the Dismissal Orders, the Court found that the Plaintiff's property interest in the Subject Property is a leasehold interest that expired in 2004. Therefore, although acknowledging that the Court had initially agreed with Plaintiff's interpretation of the Act in the present case, the Court "upon further review and analysis" reconsidered its "previous interpretation of the statute given the time-limited nature of Plaintiff's claim, a fact not in dispute." *See* MSC Case, ECF No. [40] at 4; NCL Case, ECF No. [42] at 4. The Dismissal Orders noted that Plaintiff "does not dispute that the property interest at stake is a concession that expired in 2004." *See* MSC Case, ECF No. [40] at 5; NCL Case, ECF No. [42] at 5. The Court further rejected Plaintiff's argument that the plain language of the Act provides a cause of action to the owner of any claim to confiscated property regardless of when the trafficking took place or the nature of the interest in the property because accepting that argument "would ignore the fact that the claim in this case is limited by its own terms as the claim relates to nothing more than the time-limited concession Plaintiff had at the

---

[2] Plaintiff also sued Royal Caribbean on August 27, 2019, *see Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, No. 19-cv-23590 (S.D. Fla. Aug. 27, 2019) ("Royal Caribbean Case), but Royal Caribbean answered the complaint and moved for a judgment on the pleadings. *See id.* at ECF Nos. [16] and [26].

3

time the property was confiscated by the Cuban Government." *See* MSC Case, ECF No. [40] at 7; NCL Case, ECF No. [42] at 7.

The Court similarly explained that Plaintiff's claim involving a time-limited concession "does not give Plaintiff the right to sue for activities that took place years after it no longer has an interest in the property" because this "broader interpretation would in effect give Plaintiff additional rights from the bundle to which it is not otherwise entitled." *See* MSC Case, ECF No. [40] at 8; NCL Case, ECF No. [42] at 8. Thus, the Court ruled that defendants could only "traffic" in Plaintiff's confiscated property if they undertook one of the prohibited activities before Plaintiff's interest in the property expired. *See* MSC Case, ECF No. [40] at 8; NCL Case, ECF No. [42] at 9. The Court concluded in the Dismissal Orders that its reinterpretation of the Act "does not deprive Plaintiff of a remedy for trafficking" because it "ensures that persons like Plaintiff may recover for any trafficking of their confiscated property" that had taken place between 1960 and 2004. *See* MSC Case, ECF No. [40] at 9; NCL Case, ECF No. [42] at 9. Because neither defendant in the Related cases was alleged to have trafficked in the Subject Property during that time period, the Court held that the complaints failed to state a claim for trafficking under Title III as a matter of law.

Following the Dismissal Orders, Defendant moved for reconsideration of the Court's Order denying its motion to dismiss in the present case, ECF Nos. [63] and [65], based on the Court's interpretation of the Act in the Dismissal Orders. Plaintiff then filed its Response, ECF No. [71], to which Defendant filed its Reply, ECF No. [72]. Plaintiff now moves this Court for leave to amend the Complaint so that it can state a claim against Defendant "under Title III and the Court's interpretation of that statute in the Dismissal Orders." ECF No. [74] at 1.

Plaintiff asserts that leave to amend is warranted for six reasons: (1) Title III recognizes the Certified Claim as the statutorily created property interest that is actionable under the Act, and Plaintiff's Certified Claim is not time-limited; (2) Plaintiff's concession did not expire in 2004 because a reversionary interest of 44 years remains on the 99 year lease; (3) the concession agreement's indemnity right is expressly triggered by the Subject Property's expropriation, and the indemnity right is not time-limited; (4) the FCSC certified a valuation for losses of property interests beyond the confiscated concession; (5) Defendant trafficked in the Subject Property between 1996 and 2004; and (6) good cause exists under Fed. R. Civ. P. 16 to amend the Complaint even though the Amended Scheduling Order's deadline of August 13, 2019, ECF No. [29], had passed, and amendment is proper under Fed. R. Civ. P. 15 given that none of the factors in *Foman*, 371 U.S. 178, 182 (1962), which preclude amendment, are present. *See generally* ECF No. [74].

Defendant responds that amendment is inappropriate because Plaintiff fails to meet the good cause standard under Rule 16. ECF No. [75]. In particular, Defendant maintains that Plaintiff was not diligent in moving to amend because it knew or should have known about the proposed arguments and allegations before filing suit, *id.* at 12, and the Dismissal Orders do not justify the belated amendment, *id.* at 15. Further, Defendant argues that amendment is futile to the extent that Plaintiff continues to allege that Defendant trafficked in the Subject Property post-2004, *id.* at 17, and that leave to amend should be denied for pre-2004 trafficking allegations because it is untimely and would prejudice Defendant by substantially expanding the scope of the lawsuit, *id.* at 23.

In the Reply, ECF No. [78], Plaintiff asserts that good cause exists for seeking leave to amend after the amendment deadline expired, *id.* at 2-7, Plaintiff can state a Title III claim and thus amendment is not futile, *id.* at 7-10, and Defendant is not unduly prejudiced by alleging trafficking during the 1996-2004 period, *id.* at 11.

Since the time that the parties briefed the two pending motions, after an extensive review of the issues raised in Plaintiff's cases under Title III, the scope of the Certified Claim, and the nature of Plaintiff's property interest in the Subject Property, the Court has reconsidered its interpretation of the Act in the Dismissal Orders and has concluded that the orders were premised on errors of fact and law. *See* NCL Case, ECF No. [53]; MSC Case, ECF No. [55]. Specifically, in the Related Cases, the Court has since concluded that its "ruling in the *Carnival* Order was consistent with the language and purpose of the Act," the Court's reasoning in the Dismissal Orders "incorrectly conflate[d] the Certified Claim with Havana Docks' former interests in the Subject Property," and that the Dismissal Orders' holdings were "at odds with the Eleventh Circuit's reasoning in *Glen II* and the district court's reasoning in *Glen I*, which the Eleventh Circuit affirmed." *See* NCL Case, ECF No. [53] at 17, 19; MSC Case, ECF No. [55] at 17, 19. Therefore, the Court has subsequently vacated the Dismissal Orders, reopened the Related Cases, and granted Plaintiff leave to amend its complaints. *See* NCL Case, ECF No. [53]; MSC Case, ECF No. [55]. Notably, the Court has rejected arguments that amendment is futile under Title III. *See* NCL Case, ECF No. [53] at 28; MSC Case, ECF No. [55] at 28. The Motion and the Motion for Reconsideration, accordingly, are ripe for consideration.

## II.  LEGAL STANDARD

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* A plaintiff should be afforded the opportunity to test their claim on the merits as long as the underlying facts or circumstances may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However,

"[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman*, 371 U.S. at 182. *See also Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) ("This policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, '[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.' ") (citation omitted).

Under the Federal Rules of Civil Procedure, district courts are required to enter a scheduling order that limits the time to amend the pleadings. *See* Fed. R. Civ. P. 16(b)(3). Scheduling orders may be modified only "for good cause and with the judge's consent." *See id.* at R. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note) (quotations omitted). Accordingly, when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused. *Id.* at 1418 n.2; *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [we] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). If the party seeking relief "was not diligent, the [good cause]

inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Therefore, when a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Id.* at 1419. First, the movant must demonstrate good cause under Rule 16(b) of the Federal Rules of Civil Procedure. Good cause exists when the deadline could not "be met despite the diligence of the party seeking the extension." *Id.* at 1418 (quoting Fed. R. Civ. P. 16 advisory committee note). Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period, (2) whether the information supporting the proposed amendment was available to the movant, and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See id.* at 1419. If the movant demonstrates good cause, the court proceeds to determine whether an amendment to the pleadings is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id.*

Through this lens, the Court addresses the instant motions.

### III.  DISCUSSION

Determining whether Plaintiff is entitled to amend its Complaint raises two overarching issues. The first is whether "good cause" exists pursuant to Rule 16(b) for amending the Complaint months after the deadlines set forth in the Amended Scheduling Order, ECF No. [29], to amend the pleadings had expired. The second is whether there is a "substantial reason" to deny leave to amend under Rule 15(a), such as if amendment would be futile, unduly prejudicial to Defendant, or where there has been undue delay or dilatory motive. The Court will address each of these issues in turn.

### A. Good cause for seeking leave after the Amended Scheduling Order deadline

The Amended Scheduling Order set August 13, 2019 as the deadline to file all motions to amend pleadings. ECF No. [29]. The lawsuit was initiated on May 2, 2019, ECF No. [1], Defendant's motion to dismiss was filed on May 30, 2019, the Court denied Defendant's motion on August 27, 2019, ECF No. [47], and the instant Motion was filed on February 3, 2020, ECF No. [74]—nearly six months after the deadline to amend had passed.

In the Motion, Plaintiff asks this Court to excuse its untimely filing because before the Dismissal Orders were entered, "the Court's orders denying Carnival's motions to dismiss and to certify an interlocutory appeal were the only direct judicial treatment of the legal question at issue here" and that Plaintiff "reasonably believed it had plead a claim for relief under Title III and relied on the Court's prior orders in this case in not seeking amendment at an earlier stage of litigation." *Id.* at 16-17. Plaintiff adds that it filed the motion within four weeks of the Dismissal Orders and "diligently pursued amendment, which required the development of legal strategy to ensure consistency among [Plaintiff's] four cases before this Court, factual research into the scope and extent of Carnival's pre-2004 trafficking in the Subject Property" and intermittent absences by Plaintiff's counsel because of medical needs. *Id.* at 17.

Defendant responds that Plaintiff has not satisfied the good cause standard under Rule 16. ECF No. [75]. It stresses that Plaintiff's new arguments and proposed new facts could have been raised earlier in the proceedings, and that Plaintiff, therefore, was not diligent in seeking amendment. Specifically, Defendant asserts that Plaintiff knew or should have known about facts regarding the Certified Claim, the concession, and pre-2004 trafficking at the outset of the case. *Id.* at 13-14. Defendant further maintains that Plaintiff should have sought leave to amend after Defendant had filed its motion to dismiss or after Defendant sought certification of an interlocutory

9

appeal or even after the defendants in the Related Cases moved to dismiss. *See id.* at 8-9. Additionally, Defendant contends that the Dismissal Orders do not provide good cause for belated amendment because those orders were entered after the deadline had passed in this case. *Id.* at 15-16. According to Defendant, Plaintiff made a "strategic decision to stand on its Complaint" even though it "knew there was a risk that it could not base its suit on post-2004 conduct . . . despite knowing that it could allege pre-2004 conduct[.]" *Id.* at 8. In Defendant's view, by seeking leave at this stage, Plaintiff is engaging in "gamesmanship" under a "wait and see" strategy. *Id.* at 16.

In the Reply, Plaintiff counters that a court has broad discretion in determining what constitutes good cause, and that an intervening change to a pleading standard—the Court's initial reinterpretation of the Act and narrowing the period under which Plaintiff can maintain an actionable claim—constitutes good cause to allow an untimely amendment. ECF No. [78] at 3-7. Plaintiff adds that it had no reason to seek amendment at an earlier stage of the case because it "justifiably relied" on the Court's Orders, ECF Nos. [47] and [56], and it diligently pursued amendment after the Dismissal Orders were entered by spending weeks "scouring 23 years of SEC filings, various archived newspapers (from Italy and elsewhere) and other sources to comply with its Rule 11 obligations and assess whether Carnival's interests in Costa and Airtours amounted to trafficking under Title III." *Id.* at 6-7.

Upon review and consideration, the Court agrees with Plaintiff that good causes exists pursuant to Rule 16(b)(4) to excuse its belated filing of the Motion. Although Defendant characterizes Plaintiff's actions as gamesmanship, Defendant glosses over the significance of the Dismissal Orders. Even though the Dismissal Orders have been vacated and the Court has since reexamined the Act, good cause is present under the current circumstances because the governing standard to state a claim had been altered after the Amended Scheduling Order's deadline to amend

had expired and after the case had progressed beyond the dismissal stage. *See, e.g.*, *Bryant*, 252 F.3d at 1163-65 (holding that district court abused its discretion in dismissing case without leave to amend after the court had denied motion to dismiss, which was later vacated on appeal, and until that time plaintiffs believed they had an actionable complaint); *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 815-16 (11th Cir. 2014) (Martin, J., concurring in part and dissenting in part) (determining that district court abused its discretion in dismissing claims without granting leave to amend where plaintiff "had no reason to believe that his . . . claims were in jeopardy of being dismissed" because the court had already denied defendant's challenge to the claims when it moved to dismiss the original complaint, and recognizing that "barring an intervening change in controlling law or a warning that the District Court was inclined to reverse itself, a plaintiff should not be expected to come forward with a formal request for a leave to amend" because "as a practical matter, it is unclear . . . how [the court] can expect a plaintiff to draft any amendment when the District Court has already affirmatively ruled that the very same pleadings were sufficient"); *see also Ellingsworth v. Vermeet Mfg. Co.*, 949 F.3d 1097 (8th Cir. 2020) (good cause under Rule 16 "may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading"); *Coton v. Televised Visual X-Ography, Inc.*, No. 8:07-CV-1332-T-TGW, 2008 WL 11336586, at *1 (M.D. Fla. Nov. 24, 2008) (granting leave to amend complaint to alter causes of actions alleged because a "recent change in Florida law provides good cause for the amendment at this stage of the litigation" under Rule 16 and plaintiff promptly moved to amend after the law had changed).

District courts have "broad discretion" in managing their cases. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). This discretion, although "not wholly unfettered," "is and must be broad." *Id. See also Tatum v. SFN Grp., Inc.*, 698 F. App'x 1000, 1005 (11th Cir.

2017) ("We review for an abuse of discretion of the district court's decision to grant or deny leave to amend the pleadings."). The Court finds *Bryant* particularly instructive. In that case, the district court denied a motion to dismiss filed by defendants. Following interlocutory appeal, the defendants renewed their motion to dismiss and plaintiffs filed a response, which included a request for leave to amend. 252 F.3d at 1163. The district court, in a reversal from its earlier position, dismissed the complaint with prejudice and denied plaintiffs leave to amend. *Id.* One of the reasons the court denied leave was because plaintiffs "already had been given notice of the possible deficiencies in their complaint." *Id.* at 1164.

On appeal, the Eleventh Circuit found that the district court abused its discretion in denying plaintiffs an opportunity to amend. Importantly, the panel explained that "[r]ather than indicating infirmities in the complaint, the district court's prior opinion created the exact opposite impression" and that "it cannot be said that the plaintiffs failed to correct defects of which they had notice." *Id.* Further, the court explained that the district court's determination that allowing amendment would be futile "ignores the fact that the district court earlier had found the complaint sufficient, thus justifying, until this court's opinion, the plaintiffs' belief that they did not need to include any further allegations in the Amended Complaint." *Id.*; *see also Perlman*, 561 F. App'x at 815-16 (11th Cir. 2014) (Martin, J., concurring in part and dissenting in part) (determining *Bryant* to be instructive, finding an "extraordinary circumstance" where the court had initially upheld claims and then five months later found those claims to be insufficient, and explaining that the lower court abused its discretion in dismissing without leave to amend because "there was no danger that [plaintiff] was trying to get two bites at the apple because his first bite had already made its mark" and as far has plaintiff was concerned, the district court "had already told him his . . . claims passed muster once, and so there was no need for him to think about how to shore up

the insufficiencies in his complaint" as he "reasonably assumed that the District Court would reject [defendant's] second motion to dismiss in the same way it dismissed the first one").

Here, Plaintiff reasonably believed that it had stated a viable claim under the Act on a matter of first impression prior to the Dismissal Orders. Indeed, the Court had denied Defendant's motion to dismiss and motion for certification for interlocutory appeal, *see* ECF Nos. [47] and [56], and did not represent that it was reconsidering its earlier ruling. Thus, like the plaintiffs in *Bryant* and *Perlman*, Plaintiff was "likely shocked to learn" that the Court found the same allegations that had earlier passed muster now found them to be insufficient as a matter of law. *See Perlman*, 561 F. App'x at 816. Further, Defendant does not persuade the Court that Plaintiff was dilatory or otherwise not diligent by seeking leave to amend until after the Dismissal Orders were entered. Before that time, the Court had determined that Plaintiff stated an actionable claim, and importantly, the Motion was brought within four weeks of the Dismissal Orders. *See Emess Capital, LLC v. Rothstein*, No. 10-60882-CIV, 2012 WL 13001838, at *6 (S.D. Fla. May 2, 2012) (finding good cause where motion for leave was brought within six weeks of court's dismissal order, which was entered months after the amendment deadline had passed, and noting that "waiting for this Court's ruling on [defendant's] Motion to Dismiss constitutes good cause for failing to comply with the Court's deadline for amendment of pleadings"); *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 639400, at *4 (S.D. Fla. Feb. 11, 2020) (finding good cause to amend pleadings under Rule 16 where the motion for leave to amend "was brought within weeks of Defendant discovering the documents and records at hand"); *N. Am. Specialty Ins. Co. v. Ames Corp./Dawson Bldg. Contractors, Inc.*, No. 08-80966-CIV, 2009 WL 10668504, at *2 (S.D. Fla. Dec. 23, 2009) (finding good cause where incident underlying the need

to amend occurred months after the deadline to amend had passed, and the motion was brought within weeks of the event).

Although Defendant maintains that Plaintiff knew or should have known about the proposed new allegations before seeking leave, Defendant fails to convince the Court that Plaintiff had any reason to seek amendment until after the Dismissal Orders. *See Bryant*, 252 F.3d at 1164; *Perlman*, 561 F. App'x at 815-16. Indeed, Plaintiff's original arguments have since carried sway as the Dismissal Orders have been vacated. *See* NCL Case, ECF No. [53] at 19; MSC Case, ECF No. [55] at 19. The record, moreover, does not demonstrate that prior to seeking leave, Plaintiff failed to actively pursue discovery regarding pre-2016 trafficking. In fact, Plaintiff sought discovery, but Defendant objected to producing materials from before January 1, 2014. *See* ECF No. [62]. *See Southpoint Condo Ass'n, Inc.*, 2020 WL 639400, at *4 (finding good cause and diligence where plaintiff did not disclose facts despite its discovery obligations and defendant sought discovery from non-parties and plaintiff before seeking leave to amend). And as Plaintiff represents in the Reply, since the Dismissal Orders, Plaintiff has undertaken steps to ensure that it can make the proposed allegations in good faith to comply with Rule 11. *See* ECF No. [78] at 7.

Having found good cause under Rule 16, the Court will proceed to determine whether amendment is appropriate pursuant to Rule 15(a)(2), Fed. R. Civ. P.

### B. No substantial reason to deny leave to amend pre-2004 allegations

The Dismissal Orders explained that the Court's interpretation of the Act did not deprive Plaintiff of a remedy for trafficking because it ensured that persons like Plaintiff could recover for trafficking that had taken place between 1960 and 2004. *See* MSC Case, ECF No. [40] at 9; NCL Case, ECF No. [42] at 9. True to form, Plaintiff now argues that Defendant trafficked in the Subject Property before 2004 through Airtours Plc ("Airtours") and Costa Cruises ("Costa"). ECF No. [74]

at 14-16. Specifically, Plaintiff alleges that between April 1996 and June 2001, Carnival owned a 26% to 30% interest in Airtours. *Id.* at 15. Mickey Arison ("Arison"), Defendant's present chairman and former CEO, and Howard Frank ("Frank"), Costa's present chairman and Defendant's former COO and vice chairman, sat on Airtours' board of directors during this period. *Id.* According to Plaintiff, Airtours trafficked in the Subject Property between 1998 and at least through 2001, when Defendant sold its investment in Airtours. *Id.* The Motion further maintains that Defendant "knowingly and intentionally caused, directed, participated in, and/or profited from Airtours' trafficking in the Subject Property, and otherwise engaged in trafficking in the Subject Property through Airtours from approximately 1998 through 2001." *Id.*

Plaintiff also alleges that in June 1997, Defendant directly acquired a 50% interest in Costa and indirectly acquired further interest in it given Airtours' acquisition of the other 50% interest. *Id.* In September 2000, Defendant acquired Airtours' 50% interest, thus giving Defendant full ownership over Costa. *Id.* The Motion represents that upon acquiring Costa in 1997, Arison and Costa were appointed to Costa's board of directors. *Id.* at 16. Further, Plaintiff alleges that after November 1, 1996, Costa trafficked in the Subject Property by renovating, expanding and managing the Subject Property under a joint venture and concession agreement with the Cuban Government and by operating its commercial cruise business to Havana using the Subject Property. *Id.* According to Plaintiff, Defendant "knowingly and intentionally caused, directed, participated in, and/or profited from Costa's trafficking in the Subject Property, and otherwise engaged in trafficking in the Subject Property through Costa." *Id*.

Although aware of the Dismissal Orders' construction of the Act as permitting a claim for pre-2004 trafficking, Defendant argues that the Motion should be denied because these new allegations "substantially expand" the case, prejudice Defendant, and are untimely. ECF No. [75]

at 22-26. The Court will address the first two arguments given that it has already determined that the Motion is not rejected due to untimeliness.

Plaintiff asserts that the Motion should be denied because when amendment "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Id.* at 24 (citation omitted). But that argument has no bearing here. The pre-2004 allegations do not "radically alter" the scope of this case nor are they tangentially related to the allegations in the initial Complaint. The crux of the proposed complaint remains the same as before: Defendant violated the Act by trafficking in the Subject Property, and the allegations relate directly to the period that the Court had determined to be actionable in the Dismissal Orders. Indeed, the proposed allegations involve the same Certified Claim, the same Subject Property, the same litigants, the same statutory violation, and the same alleged harm. Moreover, while Defendant asserts that the new allegations "substantially expand both the time period and the entities that [Plaintiff] is concerned with" and will increase the costs and scope of discovery, *id.* at 24-25, the Court does not find that these considerations outweigh Rule 15's direction that the Court should freely give leave when justice so requires.

First, as to Airtours and Costa, Defendant provides no support for the proposition that leave to amend is unwarranted because Plaintiff's theory of pre-2004 trafficking liability necessarily involves these entities. Rule 15's "justice so requires" provision would be toothless if leave to amend was disallowed because allegations involving these entities entail potential new witnesses, new documents, and new facts to analyze. Moreover, Defendant appears to imply that the decision to grant or deny leave is somehow contingent on the size of Defendant's ownership stake in Airtours or Costa and these entities' active status. *See id.* at 25 (noting that Airtours is apparently defunct and that Defendant owned a minority interest). But these are not proper factors in

16

evaluating Defendant's alleged prejudice/scope of claim challenge. And, in any event, whether Defendant ultimately may be liable for Title III violations based on these entities' alleged activities is not before the Court and is inappropriate for determination at this stage. *Southpoint Condo Ass'n, Inc.*, 2020 WL 639400, at *6.[3]

Second, the Court is unconvinced that Defendant will be so unduly prejudiced in discovery by adding the new allegations that leave should be denied. As a preliminary matter, on January 8, 2020, the parties jointly moved to stay discovery in this case pending the Court's ruling on the Motion for Reconsideration, ECF No. [68], which motion the Court granted the next day. In that motion, the parties represented that if the Motion for Reconsideration is denied, they would jointly seek to amend the scheduling order "to ensure that there is ample time for the Parties to complete discovery and develop their case." *Id.* at 2. Accordingly, Defendant's professed concerns about the prospect of additional discovery arising is unavailing. Further, the Court notes that discovery is still in an early phase. As represented in the Reply, no depositions have been taken, the parties have not agreed to custodians and search terms used to conduct discovery, and few documents have been produced to Plaintiff thus far.[4] *See* ECF No. [78] at 7, 11. Finally, as to Defendant's

---

[3] The Court notes that Defendant "believes" that amendment as it relates to pre-2004 conduct involving Costa and Airtours is futile, *see* ECF No. [75] at 17 n.7, but it has not actually developed this argument. Although Defendant could have challenged the Motion on this ground, it has chosen not to do so because "those allegations have yet to receive substantial treatment from the Court" and the "futility of those claims is better suited to full briefing on a motion to dismiss" if amendment is granted. ECF No. [75] at 17 n.7. Given the perfunctory treatment of the futility argument, the Court finds that Defendant has waived its challenge to amending the Complaint as to pre-2004 conduct on the basis that amendment is futile. *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("Generally, a 'litigant who fails to press a point . . . forfeits the point. The Court will not do his research for him.' 'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (internal citations omitted).

[4] Plaintiff states that Defendant provided its first and only production of documents to Plaintiff on December 27, 2019, approximately eight months after the case was filed. ECF No. [78] at 11 n.5.

claim that it would be prejudiced by amendment due to increased discovery costs, ECF No. [75] at 25, Defendant provides no basis for the Court to conclude that discovery would be unreasonably expensive if amendment is permitted. But most importantly, the rules governing proportionality and scope of discovery under Rule 26 and Title V, Fed. R. Civ. P., operate to prevent litigation costs from burgeoning.

Accordingly, because (1) this circuit embraces a policy of liberally granting amendments, (2) the Federal Rules of Civil Procedure dictate that leave should be granted freely when justice so requires, (3) and Defendant has not demonstrated that "substantial reason" exists to deny the Motion as it relates to alleging pre-2004 trafficking, the Court finds that Plaintiff has carried its burden under Rule 15(a)(2) and Rule 16(b)(4), Fed. R. Civ. P., to permit the pre-2004 allegations.

### C. No substantial reason to deny leave to amend post-2004 allegations

Defendant argues that amendment for post-2004 allegations of trafficking is futile under the Dismissal Orders' holdings that interpreted the Act differently than in the instant case. *See* ECF No. [75] at 17-22. Specifically, Defendant maintains that the Court "got it right" in the Dismissal Orders, *see id.* at 18, and that because the underlying claim expired in 2004, alleging post-2004 conduct is futile. However, the Court concludes that in light of its vacatur of the Dismissal Orders—based on errors of fact and law, especially incorrectly finding that Plaintiff's leasehold interest expired in 2004—and its reexamination of the Act in the Related Cases, Defendant's argument has no traction. Additionally, the Court finds the post-2004 allegations in the proposed amended complaint sufficient to assert a claim under Title III, and the reasoning set forth in the Orders on Reconsideration in the Related Cases and the Royal Caribbean Case applies with equal force in the instant action. Plaintiff adequately alleges that it owned a Certified Claim to an interest in the Subject Property that was wrongfully confiscated and that Defendant knowingly trafficked

18

in the confiscated Subject Property without Plaintiff's authorization. *See* ECF No. [74-1] at ¶¶ 12-20, 40-44.[5] Thus, the Court concludes that allowing Plaintiff to amend the complaint to assert post-2004 trafficking allegations would not be futile in this case.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [74]**, is **GRANTED**.

2. Plaintiff must separately refile its Amended Complaint, **ECF No. [74-1]**, by no later than **April 27, 2020**.

3. Defendant's Motion for Reconsideration, **ECF No. [65]**, is **DENIED AS MOOT**.

4. The stay of discovery is **LIFTED**.

5. The Court will enter a separate order resetting all trial and pre-trial deadlines.

---

[5] *See Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) ("The Helms-Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a 'claim to such property.' When (or if) the portion of Title III that allows private litigants to bring lawsuits becomes effective, actions brought pursuant to the new statutory scheme would be actions brought 'on a claim to the confiscated property' against traffickers in the property." (citations omitted)); *Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1269-70 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 ("Title III permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property." (citation omitted)); *Garcia-Bengochea*, 407 F. Supp. 3d at 1288 ("The Helms-Burton Act also requires the plaintiff to show that he 'owns the claim' to the confiscated property." (quoting § 6082(a)(1)(A))); *Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (discussing the insufficiency of allegations regarding an actionable ownership interest); *see also Havana Club Holding*, 203 F.3d at 125 ("Finding that the Castro government was 'offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures' involving confiscated property in order to obtain 'badly needed financial benefit, including hard currency, oil, and productive investment and expertise,' Congress established a civil remedy for any United States national owning a claim to 'property' confiscated by the Cuban government after January 1, 1959, against 'any person' who 'traffics' in such property, and broadly defined 'property' . . . ." (citations omitted)); *Lamb v. ITT Corp.*, No. 8:09CV95, 2010 WL 376858, at *4 (D. Neb. Jan. 26, 2010) (Title III "creates a civil cause of action for damages in the amount that was certified by the Foreign Claims Settlement Commission." (footnote omitted)).

**DONE AND ORDERED** in Chambers at Miami, Florida on April 17, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record