## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

HAVANA DOCKS CORPORATION,

                    Plaintiff,

                                     Case No.: 19cv21724-BLOOM

vs.

CARNIVAL CORPORATION,

                    Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff Havana Docks Corporation ("Plaintiff") hereby sues Carnival Corporation ("Defendant"), pursuant to the Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act"), for trafficking in Plaintiff's confiscated property located in Cuba.

### INTRODUCTION

The LIBERTAD Act was enacted to assist the Cuban people in regaining their freedom and prosperity, strengthen international sanctions against the communist Cuban Government, and to deter the exploitation of wrongfully confiscated property in Cuba belonging to United States nationals. Although every U.S. President has suspended the right to bring an action under the LIBERTAD Act since its enactment in 1996, the Defendant has been on notice since 1996 that trafficking in property confiscated by the communist Cuban Government without the authorization of the owner of a certified claim to such property would subject it to liability under the

LIBERTAD Act. As of the date of filing this Complaint, the United States Government has ceased suspending the right to bring an action under the LIBERTAD Act, which therefore permits Plaintiff to seek damages for the Defendant's conduct in exploiting Plaintiff's wrongly confiscated property.

<u>PARTIES</u>

1. Plaintiff, Havana Docks Corporation, 215 Southland Drive, Lexington, Kentucky, 40503, is a Delaware corporation and a U.S. National under 22 U.S.C. § 6023(15)(B).

2. Defendant, Carnival Corporation, 3655 N.W. 87th Avenue, Doral, Florida 33178, is a foreign corporation and maintains its principal place of business in Doral, Miami-Dade County, Florida. Carnival operates through Carnival Cruise Lines, Fathom Cruises and Costa Cruises ("Costa").

<u>JURISDICTION AND VENUE</u>

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), because Plaintiff's claim arises under 22 U.S.C. § 6021, *et seq.*, and the amount in controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees.

4. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(1), because Carnival resides in the Southern District of Florida, and under 28 U.S.C. §§ 1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida.

2

### THE CUBAN LIBERTY AND DEMOCRATIC SOLIDARITY ACT

5.     The LIBERTAD Act was enacted on March 12, 1996.   One of the LIBERTAD Act's purposes is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime." 22 U.S.C. § 6022(6).  Title III of the LIBERTAD Act ("Title III") establishes a private right of action for money damages against any person who "traffics" in such property as defined by 22 U.S.C. § 6023(13).  *See* 22 U.S.C. § 6082. Title III's effective date, August 1, 1996, was never suspended. Liability for trafficking under Title III therefore attached irreversibly beginning November 1, 1996.

### FACTUAL ALLEGATIONS

6.     Plaintiff, a U.S. national as defined by 22 U.S.C. § 6023(15), is the rightful owner of an interest in and certified claim to certain commercial waterfront real property in the Port of Havana, Cuba identified specifically by the Republic of Cuba ("Cuba") as the Havana Cruise Port Terminal (the "Subject Property").

7.     Plaintiff and its predecessor in interest constructed and managed the Subject Property. The Subject Property was continuously, owned, possessed, used and managed in Cuba by Plaintiff from 1917 until the communist Cuban Government confiscated it in 1960.

8.     From 1960 to present, Plaintiff has remained active for the purpose of preserving its claim to the Subject Property. Plaintiff has diligently pursued its rights, filing this lawsuit on the first possible day after the United States Government ceased suspending Title III's right to bring an action. Plaintiff could not have filed

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

this lawsuit earlier than it did due to the suspension of Title III's right to bring an action.

## Cuba's Confiscation of the Subject Property

9.    The communist Cuban Government confiscated the Subject Property on October 24, 1960.  The communist Cuban Government maintains possession and control of the Subject Property and has not paid any compensation to Plaintiff for its seizure.

10.    More specifically, the communist Cuban Government nationalized, expropriated, and seized ownership and control of the Subject Property.  The Subject Property has not been returned and adequate and effective compensation has not been provided.  Further, the claim to the Subject Property has not been settled pursuant to an international claims settlement agreement or other settlement procedure.

11.    Plaintiff never abandoned its legitimate interest in and claim to the Subject Property.

## Certification of the Confiscated Subject Property

12.    Plaintiff's ownership interest in and claim to the Subject Property has been certified by The Foreign Claims Settlement Commission of the United States ("FCSC"). A copy of the FCSC's Certified Claim ("Claim No.CU-2492") is attached hereto as **Exhibit A**. Claim No. CU-2492, which has no time limit and has not expired, provides an itemized listing of the property interests certified by the FCSC, as follows:

4

Upon consideration of the entire record, the Commission finds that the valuation most appropriate to the property and equitable to the claimant is that shown in the Balance Sheet for the year ended 1959, supported by the Trial Balance for December 31, 1958. These financial statements reflect the following book values adopted by claimant corporation:

| | |
|---|---:|
| Land and Concession . . . . . . . . . . . . | $ 2,000,000.00 |
| San Francisco and Machina Piers . . . . . . | 4,758,829.00 |
| Santa Clara Pier . . . . . . . . . . . . . | 2,110,845.00 |
| Equipment . . . . . . . . . . . . . . . . | 419,056.00 |
| Office Furniture and Fixtures . . . . . . . | 90,616.00 |
| Railroad Tracks . . . . . . . . . . . . . | 22,883.00 |
| Total | $ 9,402,229.00 |

13.   After taking into account amortization, depreciation, accrued interest, and other adjustments, the FCSC's final decision certified the loss at "Nine Million One Hundred Seventy-nine Thousand Seven Hundred Dollars and Eighty-eight Cents ($9,179,700.88) with interest thereon at 6% per annum from the respective dates of loss to the date of settlement." (Exhibit A at 3.)

14.   The largest portion of the loss certified in Claim No. CU-2492 consisted of the structures on the San Francisco, Machina, and Santa Clara Piers. (**Exhibit A at 9.**)

15.   A concession was one of the several property interests certified. The concession granted the Plaintiff a term of 99 years for the use of, improvement, construction upon, operation and management of the Subject Property. The Plaintiff used, operated, managed and made significant improvements on the Subject Property

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

from 1905 until 1960, when it was confiscated by the communist Cuban Government in 1960. The concession never expired by its term. It was confiscated by the Cuban Government. Thus, when the Subject Property was confiscated in 1960, Havana Docks still had a balance of 44 years of concessionary rights remaining; those 44 years of concessionary rights still remain in balance, and Havana Docks has never been indemnified by the Cuban Government or anyone for the loss of that property interest. As a result, under the terms of the concession and Cuban law in force at the time, Havana Docks still retains, to this day, a reversionary interest of 44 years remaining in the Subject Property (i.e., a future or contingent possessory right).

16.     Further, the concession granted to the Plaintiff the contractual right to be indemnified for the value of the work constructed by it on the Subject Property in the event of expropriation, as follows:

> *Seventh:* If during the continuance of the concession the works may be expropriated by virtue of Article 50 of the Law of Ports, the government or its departments will indemnify the concessionary to the value of the work constructed by it, including the Custom House Inspectors Department and the wharf on the north side of the pier, but not the value of the machinery, rolling stock, equipment and apparatus referred to in the preceding clause, in case the concessionary may decide to remove them.

(*See* **Exhibit B**.)

17.     This indemnity right gave the Plaintiff an interest in the Subject Property that was not time-limited. As an express term of the concession, the indemnity right—which by the terms of the concession was not time limited—was certified by the FCSC. The "value of the work constructed by" Havana Docks and its predecessor-in-interest include the value of the San Francisco, Machina and Santa

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Clara Piers, as reflected in the certified claim.

18.     This claim to indemnity remains unpaid. The LIBERTAD Act expressly contemplates this type of property interest and recognizes such an unpaid debt as an obligation that attaches to the confiscated property, as would a mechanic's lien: the LIBERTAD Act defines the term "confiscated" to include "the failure of the Cuban Government to pay, on or after January 1, 1959-- . . . a debt <u>which is a charge on property</u> nationalized, expropriated, or otherwise taken by the Cuban Government." 22 U.S.C. § 6023(4)(B)(ii) (emphasis added); *see also* 22 U.S.C. § 6023(12)(A) (defining "property" to include "any property. . . whether real, personal, or mixed, and <u>any</u> present, <u>future, or contingent right, security, or other interest therein</u>, including any leasehold interest" (emphases added)). So too does Cuban law in effect at the time of confiscation. *See e.g.,* Codigo Civil, Title II, Art. 349 ("No one shall be deprived of his property, except by competent authority and with sufficient cause of public utility, always after the proper indemnity. If this requisite has not been fulfilled <u>the judges shall protect, and in a proper case, replace the condemned party in possession</u>.") (emphasis added).

19.     Plaintiff has never received any compensation nor been indemnified for the expropriation of the Subject Property, including for the concession or any other property interests.

20.     Under the LIBERTAD Act, Plaintiff's ownership of Claim No. CU-2492 is a property interest in the Subject Property entitling the Plaintiff to sue under Title III against whomever traffics in the Subject Property. 22 U.S.C. § 6082(a)(1)(A).

7

21.     Carnival has had constructive knowledge of Plaintiff's publicly available, certified claim to the Subject Property since the FCSC completed the Cuban claims program on July 6, 1972.

22.     Carnival has had actual knowledge of Plaintiff's certified claim to the Subject Property since at least February 11, 2019, due to a notice letter sent via certified mail by Plaintiff pursuant to 22 U.S.C. § 6082(a)(3)(D).

23.     The terms of Claim No. CU-2492 expressly state that the claim does not expire until "the date of settlement." (ECF No. 24-1, at 4, 13.)  That date has not yet come. The certified claim is still actionable. Claim No. CU-2492 has no time limit.

Carnival's Trafficking in the Confiscated Subject Property:  1996 – 2001 (Airtours)

24.     From April 1996 until June 2001, Carnival owned a 26% to 30% interest in Airtours Plc ("Airtours").

25.     Micky Arison ("Arison"), Carnival's present chairman and former chief executive officer, and Howard Frank ("Frank"), Costa's present chairman and Carnival's former chief operating officer and vice chairman, sat on Airtours' board of directors during this time.

26.     "On June 1, 2001 [Carnival] sold [its] investment in Airtours plc which resulted in a nonoperating net gain of approximately $100 million and net cash proceeds of approximately $492 million." (Carnival Corporation, Second Quarter 2001 Form 10-Q (July 13, 2001).)

27.     On information and belief, from approximately 1998 and through at least 2001, Airtours knowingly and intentionally operated cruises to Havana, Cuba,

8

using the Subject Property to embark and disembark its passengers.

28.     Airtours' knowing and intentional conduct with regard to the confiscated Subject Property is trafficking as defined in 22 U.S.C. § 6023(13)(A).

29.     On information and belief, Carnival knowingly and intentionally caused, directed, participated in, and/or profited from Airtours' trafficking in the Subject Property, and otherwise engaged in trafficking in the Subject Property through Airtours from approximately 1998 through 2001.

30.     Neither Airtours nor Carnival sought or obtained the authorization of Plaintiff to traffic in the Subject Property at any time.

Carnival's Trafficking in the Confiscated Subject Property:  1997 (Costa)

31.     Costa is a wholly-owned subsidiary of Carnival. In June 1997, Carnival acquired a 50% interest in Costa, with Airtours acquiring the other 50% interest in Costa. Due to Carnival's ownership of 26 – 30% interest in Airtours, Carnival directly and indirectly acquired a 63 – 65% interest in Costa at that time, making it part of Carnival's affiliated cruise operations. (Carnival Corporation Year 2000 Form 10-K (Feb. 28, 2001).) On September 29, 2000, Carnival acquired the remaining 50% interest in Costa from Airtours. (*Id*.)

32.     Upon acquiring Costa in 1997, two Carnival executives were appointed to Costa's Board of Directors:  Arison, Carnival's present chairman and former chief executive officer; and Frank, Costa's present chairman and Carnival's former chief operating officer and vice chairman.

9

33.     In the months after its acquisition of Costa, Carnival recorded income of $9 million related to its interests in Costa.

34.     On information and belief, after November 1, 1996, Costa knowingly and intentionally renovated, expanded and managed the Subject Property under a joint venture and concession agreement with the communist Cuban Government.

35.     On information and belief, after November 1, 1996, Costa knowingly and intentionally operated its commercial cruise business to Havana, Cuba, using the Subject Property to embark and disembark its passengers.

36.     Costa's knowing and intentional conduct with regard to the confiscated Subject Property is trafficking as defined in 22 U.S.C. § 6023(13)(A).

37.     Neither Costa nor Carnival sought or obtained Plaintiff's authorization to traffic in the Subject Property at any time.

38.     On information and belief, Carnival assumed Costa's liabilities upon acquisition. (*See* Carnival Corporation Year 2000 Form 10-K (Feb. 28, 2001).)

39.     On information and belief, Carnival knowingly and intentionally caused, directed, participated in, and/or profited from Costa's trafficking in the Subject Property, and otherwise engaged in trafficking in the Subject Property through Costa, its subsidiary.

<u>Carnival's Trafficking in the Confiscated Subject Property:  2016 – 2019</u>

40.     On information and belief, beginning on or about May 1, 2016, Carnival knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

disembarking its passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property.

41.     On information and belief, beginning on or about May 1, 2016, the Defendant also knowingly and intentionally participated in and profited from the communist Cuban Government's possession of the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property.

42.     On information and belief, Carnival trafficked in the Subject Property until May 28, 2019.

43.     Carnival's knowing and intentional conduct with regard to the confiscated Subject Property is trafficking as defined in 22 U.S.C. § 6023(13)(A).

44.     As a result of the Carnival's trafficking in the Subject Property, Carnival is liable to Plaintiff for all money damages allowable under 22 U.S.C. § 6082(a).

<u>CLAIM FOR DAMAGES</u>

<u>TITLE III OF THE LIBERTAD ACT</u>

45.     Plaintiff incorporates by reference paragraphs 1 through 44 as if fully stated herein.

46.     This claim is brought pursuant to Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

47.     As set forth in Title III and alleged above, at various times from November 1, 1996 through at least May 28, 2019, Carnival did traffic, as that term is defined in 22 U.S.C. § 6023(13)(A), in the Subject Property which was confiscated by

11

the communist Cuban Government on or after January 1, 1959 and is therefore liable to Plaintiff, who owns the claim to the Subject Property, for money damages.

48.   Plaintiff is entitled to all money damages allowable under 22 U.S.C. § 6082(a), including, but not limited to, those equal to the sum of:

a.   The amount greater of: (i) the amount certified by the Foreign Claims Settlement Commission, plus interest; (ii) the amount determined by a special master pursuant to 22 U.S.C. § 6083(a)(2); or (iii) the "fair market value" of the Subject Property, plus interest;

b.   Three times the amount determined above (treble damages); and

c.   Court costs and reasonable attorneys' fees.

49.   As of the date of filing this Complaint, the United States Government has ceased suspending the right to bring an action under Title III, 22 U.S.C. § 6085, which therefore permits Plaintiff to seek the relief requested herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Carnival as follows:

A.   Ordering Carnival to pay damages (including treble damages);

B.   Ordering Carnival to pay pre- and post-judgment interest on any amounts awarded;

C.   Order Carnival to pay attorneys' fees, costs, and expenses; and

D.   Ordering such other relief as may be just and proper.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all issues so triable, and a trial pursuant to Rule 39(c), Federal Rules of Civil Procedure, as to all matters not triable as of right by a jury.

Dated:  April 20, 2020.

Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: <u>s/ Roberto Martínez</u>
Roberto Martínez, Esquire
Florida Bar No. 305596
bob@colson.com
Stephanie A. Casey, Esquire
Florida Bar No. 97483
scasey@colson.com
Aziza F. Elayan-Martínez, Esquire
Florida Bar No. 92736
aziza@colson.com
Zachary Lipshultz
Florida Bar No. 123594
zach@colson.com

- and -

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

Rodney S. Margol, Esquire
Florida Bar No. 225428
Rodney@margolandmargol.com

13

*Attorneys for Plaintiff Havana Docks Corporation*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court. I also certify that the foregoing document is being served this 20th day of April, 2020, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Roberto Martínez
Roberto Martínez

14