# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO.: 19-cv-21724-BLOOM/McAiley

HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a CARNIVAL
CRUISE LINE, a foreign corporation,

      Defendant.

_____/

## CARNIVAL CORPORATION'S MOTION FOR
## <u>CERTIFICATION OF INTERLOCUTORY APPEAL</u>

**AKERMAN LLP**
    Pedro A. Freyre
    (Florida Bar No. 192140)
    98 SE 7th St., Suite 1100
    Miami, Florida 33131
    Telephone: (305) 374-5600
    Pedro.freyre@akerman.com

**JONES WALKER LLP**
    George J. Fowler, III
    (*Pro Hac Vice*)
    Luis Llamas
    (Florida Bar No. 89822)
    201 St. Charles Ave.
    New Orleans, LA 70170
    Telephone: (504) 582-8752
    gfolwer@joneswalker.com
    llamas@joneswaler.com

**BOIES SCHILLER FLEXNER LLP**
    Stuart H. Singer
    (Florida Bar No. 377325)
    Evan Ezray
    (Florida Bar No. 1008228)
    Johnathan Lott
    (Florida Bar No. 0116423)
    401 East Las Olas Boulevard, Suite 1200
    Fort Lauderdale, Florida 33301
    Telephone: (954) 356-0011
    ssinger@bsfllp.com
    eezray@bsfllp.com
    jlott@bsfllp.com

## INTRODUCTION

This Court recently granted Plaintiff Havana Docks Corporation permission to file an amended complaint and lifted the stay in this matter.  D.E. 79.  In so doing, this Court incorporated its broad legal holdings concerning the Helms-Burton Act that it set forth in recently-issued orders reversing, on reconsideration, orders entered in the other cases brought by Havana Docks against cruise line defendants.  This Court's interpretation of the Helms-Burton Act presents a pure question of controlling law over which reasonable minds could clearly differ, the resolution of which would dispose of many of Havana Docks' claims and materially advance this litigation. Accordingly, Defendant Carnival Corporation respectfully requests that the Court allow immediate appeal of its Omnibus Order, D.E. 79, and certify the following question for immediate appeal pursuant to 28 U.S.C. § 1292(b):

> Whether "Title III's plain language creates liability for trafficking in the broadly defined 'confiscated property'—i.e., in any property that was nationalized, expropriated, or otherwise seized by the Cuban Government . . . without the property having been returned or adequate and effective compensation [paid]—not in a particular interest in confiscated property," and "regardless of … when the trafficking took place."[1]

## BACKGROUND

This Court is well familiar with the substance and procedural history of this case.  *E.g., Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-cv-23591, D.E. 53 (S.D. Fla. April 15, 2020) ("*Norwegian II*").  Carnival sets forth a brief history of the relevant proceedings leading to the instant order for which it seeks immediate appeal.

Carnival moved to dismiss Havana Docks' Complaint, in part, on the grounds that it failed to allege that Carnival "trafficked" in any property owned by Havana Docks, since Havana Docks'

---

[1] *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-cv-23591, D.E. 53 at 24-25 (S.D. Fla. April 15, 2020); *id.,* 2020 WL 70988, at *4 (Jan. 7, 2020).

1

confiscated concession expired on its own terms in 2004, and the alleged trafficking did not occur until 2016. This Court denied that motion, finding that "the Libertad Act does not expressly make any distinction whether such trafficking needs to occur while a party holds a property interest in the property at issue[,]" and that "the Defendant incorrectly conflates a claim to a property and a property interest." D.E. 47 ("*Carnival I*") at 8. Carnival then sought a certification of interlocutory appeal of the order pursuant to 28 U.S.C. § 1292(b). This Court denied the motion. D.E. 56 at 4–5.

Following this Court's ruling on Carnival's motion to dismiss, Havana Docks brought substantially similar suits against three other cruise lines, alleging that they similarly trafficked in the property by embarking and disembarking passengers from their cruise ships after 2016. *See generally Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 1:19-cv-23591 (S.D. Fla. 2019)*; Havana Docks Corp. v. MSC Cruises SA Co.*, No. 19-cv-23588 (S.D. Fla. Aug. 27, 2019), *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, No. 19-cv-23590 (S.D. Fla. Aug. 27, 2019). Two of those cruise lines, Norwegian and MSC, moved to dismiss, making similar arguments to the arguments raised by Carnival in its motion. This Court granted those motions, issuing substantively similar orders dismissing those complaints. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 70988, at *2 (S.D. Fla. Jan. 7, 2020) ("*Norwegian I*"); *Havana Docks Corp. v. MSC Cruises SA Co.*, 2020 WL 59637, at *2 (S.D. Fla. Jan. 6, 2020) ("*MSC I*"). In doing so, the Court recognized that "[t]he Court in [*Carnival I*] agreed with Plaintiff that the interpretation suggested by Carnival (and Defendants here) conflates a claim to a property and a property interest. However, upon further review and analysis, the Court ***reconsiders its previous interpretation of the statute*** given the time-limited nature of Plaintiff's claim, a fact not in dispute." *MSC I*, 2020 WL 59637, at *2 (citation omitted) (emphasis added).

Following *Norwegian I,* Carnival moved for reconsideration of this Court's order denying its motion to dismiss based on the reasoning set forth in *Norwegian I.* D.E. 65. Meanwhile, Havana Docks sought to amend its complaint to add allegations that it argued would cure the defects identified by this Court in *Norwegian I*, and also to add additional allegations related to alleged trafficking in the subject property by Carnival that occurred between 1996 and 2001. D.E. 74. Havana Docks also sought reconsideration of *Norwegian I* and *MSC I* and requested permission to file amended complaints in those cases.

This Court then granted Havana Docks' request for reconsideration of *Norwegian I* and issued an order substantively analyzing the Helms-Burton Act and finding errors of law and errors fact in *Norwegian I. See Norwegian II.* Days later, in its Omnibus Order, D.E. 79 ("*Carnival II*"), the Court granted Havana Docks leave to file an amended complaint and accordingly denied Carnival's motion for reconsideration of a motion to dismiss the original complaint as moot. The Court found that "the Court finds the post-2004 allegations in the proposed amended complaint sufficient to assert a claim under Title III, and the reasoning set forth in [*Norwegian II*] applies with equal force in the instant action." *Carnival II* at 18.[2]

## ARGUMENT

Section 1292(b) is designed to facilitate interlocutory appeals when immediate "appeal may avoid protracted and expensive litigation . . . [and] where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided[.]" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (quoting 1958 U.S.C.C.A.N. 5255, 5260-61). Accordingly, Section 1292(b) allows a district court to certify an issue for interlocutory appeal when: (1) the challenged ruling involves controlling questions of

---

[2] *Carnival II* likewise granted Havana Docks' request for leave to amend to add allegations related to pre-2004 conduct.

law, (2) there is substantial ground for difference of opinion on the ruling, and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Although certification of an order under § 1292(b) is discretionary, it is "the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria [in § 1292(b)] are met." *Ahrenholz v. Bd. of Tr. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).

Each of these three factors strongly support certification of an interlocutory appeal in this case, especially given the practical considerations in providing certainty in interpretation of a statute.  Carnival respectfully requests 1292(b) certification of the following question:

> Whether "Title III's plain language creates liability for trafficking in the broadly defined 'confiscated property'—i.e., in any property that was nationalized, expropriated, or otherwise seized by the Cuban Government . . . without the property having been returned or adequate and effective compensation [paid]—not in a particular interest in confiscated property," and "regardless of … when the trafficking took place."[3]

## I.    THE CHALLENGED RULING INVOLVES A CONTROLLING QUESTION OF LAW

"A 'controlling question of law' arises where the court of appeals can rule on a controlling question of pure law without having to search deep into the record in order to discern the facts." D.E. 56 at p. 3 (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252-53 (11th Cir. 2003)); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, 13-CIV-80371, 2015 WL 11251735, at *2 (S.D. Fla. July 8, 2015) (Bloom J.).  For example, a "controlling question of law" often involves determining "the meaning of a statutory or constitutional provision, regulation, or common law doctrine[.]"  *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz*, 219 F.3d at 676).

Consistent with this straightforward interpretation, both the Eleventh Circuit and Courts in this district have not hesitated to use Section 1292 to answer threshold statutory questions.  For

---

[3] *Norwegian II* at 24-25; *Norwegian I,* 2020 WL 70988, at *4.

example, in *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269 (11th Cir. 2020), the plaintiffs brought a class action suit against a private contractor who ran a detention facility. *Id.* at 1271. The plaintiffs alleged that the detention center violated the Trafficking Victims Protection Act ("TVPA") by coercing them to perform labor. *Id.* The defendant moved to dismiss, arguing that it was not covered by the TVPA as a private governmental contractor. *Id.* Although the district court disagreed, it certified that issue for immediate appeal, as it raised a key, pure law question of statutory interpretation. *Id.* The Circuit Court accepted the appeal. *Id.*

Likewise, in *Grabein v. 1-800-Flowers.com, Inc.*, 2008 WL 11417701 (S.D. Fla. Mar. 12, 2008), the plaintiff filed a class action complaint under the Fair Credit Reporting Act ("FACTA"). *Id.* at *1. The defendants moved to dismiss, arguing that FACTA did not apply to e-commerce transactions because the seller did not "print" a receipt, as required by the statute. *Id.* The court denied the motion. *Id.* Nonetheless, recognizing that the question turned "entirely on a court's interpretation of this statutory term" the Court found the issue "controlling" and certified an appeal. *Id.* at * 2; *see also S.R. v. United States*, 555 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008) (whether equitable tolling is available under the FTCA is a pure law question and is thus controlling).

The same is true here, Carnival's proffered question asks a pure question of law about the scope of the Helms-Burton Act. This Court has now held that "Title III's plain language creates liability for trafficking in the broadly defined 'confiscated property' . . . . not in a particular interest in confiscated property." *Norwegian II* at 24-25. Thus the Court has squarely held that a Helms-Burton claim is actionable when the Plaintiffs' property interest would have expired (but for the confiscation) prior to the time of Defendants' alleged tracking in such property. Based on that reading of Title III, the Court concluded that it previously, in *Norwegian I*, "construed the liability

provision of § 6082(a)(1)(A) too narrowly[.]" *Norwegian II* at 19. That question raises a pure question of law under the Helms-Burton Act: how to construe the Act.

For this reason, and unlike Carnival's first motion for a 1292 appeal, certification here does not raise the type of case-specific pleading question that is inappropriate for certification. *Cf. Mamani v. Berzain*, 825 F.3d 1304, 1312-13 (11th Cir. 2016). In that motion, Carnival asked this Court to certify the question:

> [W]hether Helms-Burton applies when the only alleged acts of trafficking occurred after the plaintiff's rights to the property would have expired on their own terms independent of any confiscation.

D.E. 56 at 2. That question sought immediate appeal of this Court's holding in *Carnival I*, which contained only two paragraphs of analysis and relied on only one sentence in the Act, holding only that "the Court finds that the Complaint sufficiently alleges that the Plaintiff owns a claim to the Subject Property." *Carnival I* at 8. Accordingly, this Court found that Carnival's proposed question was not a pure question of law, noting that "like the appellant in *Mamani*, [Carnival] is seeking review of whether the specific facts alleged by this particular Plaintiff states a claim under the Helms-Burton Act." D.E. 56 at 4.

Following this Court's analysis of the Act in *Norwegian I* and *Norwegian II*, Carnival now seeks to certify the question:

> Whether "Title III's plain language creates liability for trafficking in the broadly defined 'confiscated property'—i.e., in any property that was nationalized, expropriated, or otherwise seized by the Cuban Government . . . without the property having been returned or adequate and effective compensation [paid]—not in a particular interest in confiscated property," and "regardless of … when the trafficking took place."[4]

---

[4] *Norwegian II* at 24-25; *Norwegian I,* 2020 WL 70988, at *4.

This question is a pure question of law and statutory analysis, wholly untethered to any facts. The Court would not need to consider "whether the specific facts alleged by this particular Plaintiff states a claim under the Helms-Burton Act." D.E. 56 at 4. Carnival's question is a "pure or abstract question about the [Helms-Burton Act] itself," rather than whether "the specific facts alleged by these particular plaintiffs state … claims for relief under the [Helms-Burton Act]." *Mamani*, 825 F.3d at 1313. If certified, like in *Barrientos*, the Eleventh Circuit can answer this purely legal question without considering *any* facts —it would need only to parse the Helms-Burton Act and determine as an abstract matter what the relationship between a plaintiff's claim and pre-confiscation property rights must be under the Act. Once the Circuit Court answers that question, any remaining questions about whether Plaintiff can state a claim should be properly addressed on remand. *E.g., Barrientos*, 951 F.3d at 1271 (considering only "the legal question of the TVPA's applicability to private contractors operating federal immigration detention facilities," and thus reserving for remand "whether the factual allegations in the complaint are sufficient to state a TVPA claim").[5]

Moreover, the question of whether a defendant must traffic in the property interest that was confiscated from the plaintiff under Title III is already being debated in a number of fora beyond the four *Havana Docks* cases before this Court. *E.g.*, Mem. Of Law in Supp. of Defs.' Mot. to Dismiss, *John S. Shepard Family Tr. v. NH Hotels USA, Inc.*, No. 19-cv-9026, D.E. 32 (S.D.N.Y. Jan. 1, 2020) (arguing that dismissal was required because "Plaintiff's leasehold interest in the

---

[5] In addition, this Court may choose any formulation of the certified question of law, and the Court of Appeals is not limited to this Court's formulation of the certified question in ruling on the immediate appeal before it. *See Barrientos*, 951 F.3d at 1275 ("[W]hile we 'may not reach beyond the certified order,' we 'may address any issue fairly included within the certified order.' That said, we think it appropriate to limit our review to the discrete and abstract legal issue the district court identified.").

Hotel Capri expired thirty-seven years before Defendants were alleged to have trafficked in the property"); Def.'s Mot. to Dismiss, *Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, No. 19-cv-22842, D.E. 29 (S.D. Fla. Oct. 29, 2019) (arguing that dismissal is required because the plaintiff did "not plead that SG trafficked in the particular property that Plaintiff asserts was confiscated"); *Glen v. American Airlines Inc.*, No. 1:19-cv-23994, D.E. 63 (S.D. Fla. April 15, 2020) (notice of supplemental authority of *Norwegian II* noting that "These issues [in *Norwegian II*] were raised by American Airlines in its motion to dismiss and were addressed by Plaintiff in his responsive memorandum"). That matters because a question is more likely to be controlling when it has "general relevance to other cases in the same area of law." *McFarlin*, 381 F.3d at 1259 (11th Cir. 2004); *accord Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (certification should be granted on issues of first impression if their resolution would avoid a lengthy trial and "determination was likely to have precedential value for a large number of other suits . . . now pending").

It matters not that, in light of Plaintiff's amendment adding claims related to pre-2004 conduct, the certified question may not dispose of the entire case. After all, black-letter and binding law makes clear that "the issue need not . . . be dispositive to be a 'controlling question.'" *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702 n.10 (5th Cir. 1961).[6] That makes sense textually because "'[c]ontrolling' does not mean 'dispositive.'" *LNC Investments, Inc. v. First Fid. Bank*, 2000 WL 461612, at *3 (S.D.N.Y. Apr. 18, 2000). For that reason, courts both in this Circuit and across the country, have certified questions that would materially advance, but not terminate, the cases before them. *E.g.*, *Sea Pines of Virginia, Inc. v. PLD, Ltd.*, 399 F. Supp. 708, 712 (M.D. Fla.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

1975) ("While the order will not be dispositive of the entire action, it will dispose of the right of the plaintiff to proceed on the theory embodied in Count 1.  The issue on which the motion turns, therefore, presents a controlling question of law within the provisions of 28 U.S.C. § 1292(b)); *see also Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1068 (D. Ariz. 2015) ("It is well settled, however, that [t]he issue need not be 'dispositive of the lawsuit in order to be regarded as controlling[.]'") (citation omitted).

Indeed, the Eleventh Circuit has routinely accepted 1292 certifications that raised non-wholly-dispositive issues.  *E.g.*, *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 719 (11th Cir. 2008) (accepting 1292 certification to decide damages questions); *Tucker v. Fearn*, 333 F.3d 1216, 1218 (11th Cir. 2003) (accepting 1292 certification to decide whether the plaintiff could recover loss of society damages under maritime law even though the plaintiff also asserted other damages claims); *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252 (11th Cir. 2003) (accepting 1292 certification to determine whether district court had subject matter jurisdiction over absent class members whose claims fell below the jurisdictional threshold, even though some members claims exceeded the jurisdictional threshold); *Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1229 (11th Cir. 1998) (accepting 1292 certification to consider scope of § 1983 claims even though the plaintiff also asserted claims under Title VII); *Perez-Perez v. Hanberry*, 781 F.2d 1477, 1479 (11th Cir. 1986) (accepting 1292 certification to determine whether counsel could be appointed to represent excludable alien in habeas proceedings).

Instead, a "legal issue is controlling if it could materially affect the outcome of the case." *U.S. ex rel. Armfield v. Gills*, 2011 WL 2084072, at *1 (M.D. Fla. May 24, 2011) (citations omitted).  Indeed, certainty is not even required in this area: "A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not

certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).  As explained in Part III, below, immediate appeal would resolve Havana Docks' claims related to post-2004 conduct and would "materially advance" this litigation.

## II.   THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

The issues raised in this case have proven difficult and debatable.  This Court has reconsidered its views twice.  In these circumstances, Courts have repeatedly found reasonable grounds for disagreement for the purposes of § 1292 certification.  *Winter v. United Parcel Serv., Inc.*, 2016 WL 11214560, at *1 (E.D. Mich. Jan. 12, 2016); *Unger v. United States*, 1994 WL 90358, at *1 (S.D.N.Y. Mar. 16, 1994); *Flying Tiger Line, Inc. v. Cent. States, Sw. & Se. Areas Pension Fund*, 1986 WL 14904, at *2 (D. Del. Dec. 4, 1986).  In fact, the Third Circuit took it as a given that when a District Court requires multiple orders to settle a legal issue, the issue is debatable, explaining: "[c]ertainly the instant case involves an order over which a difference of opinion might exist since it took two district court opinions to arrive at a decision."  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754–55 (3d Cir. 1974).

Debatability here is compounded by novelty.  "Courts traditionally will find that a substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented[.]"  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (citations omitted).  It is therefore no surprise that courts have repeatedly granted Section 1292(b) motions to allow appellate courts to resolve difficult issues of first impression.  *Laperriere v. Vesta Insurance Group, Inc.*, 526 F.3d 715, 719 (11th Cir. 2008) (per curiam); *Adams v. Florida Power Corp.*, 255 F.3d 1322, 1322 (11th Cir. 2001); *Reese*, 643 F.3d at 688; *Mamani v. Berzain*, 2014 WL 12689038, at *3 (S.D. Fla. Aug. 18, 2014) (certifying question of first impression); *Solutia Inc. v. McWane, Inc.*, 2008 WL 11337774, at *1 (N.D. Ala. June 25, 2008) (finding substantial

grounds for difference of opinion when "[n]either the Supreme Court nor the Eleventh Circuit Court of Appeals has answered this question").  Those cases apply with great force here.

Simply put: on an issue of first impression, the Court has now reached three conclusions. The issue is debatable.

## III.    IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

Finally, the requirement "that the controlling question of law 'may materially advance the ultimate termination of the litigation,' is a straightforward one, simply requiring an examination of whether the 'resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation.'"  *Nat'l Union*, 2015 WL 11251735, at *5 (citing *McFarlin*, 381 F.3d at 1259).

### A.    Immediate Appeal Would Resolve Claims Related to Post-2004 Conduct

Here, resolution of Carnival's proposed certified question would serve to substantially shorten and narrow the scope of and costs of discovery.  If the Eleventh Circuit agrees with Carnival's position on the resolution of the certified question, then dismissal of the claims concerning Carnival's post-2004 conduct would be required.  This Court did precisely that when it adopted that position in *Norwegian I* and dismissed Havana Docks' claims with prejudice. Moreover, this Court previously held that immediate appeal of the *Carnival I* decision would materially advance the case.  D.E. 54 at 4 (noting that "the third element under § 1292(b)" was satisfied).

Although this Court in *Norwegian II* held that *Norwegian I* was grounded on two errors of fact, in addition to errors of law, the legal reasoning of *Norwegian I* would still dispose of Havana Docks' post-2004 claims even after correcting those factual errors.

A rejection of this Court's holding that "limiting the meaning of 'traffics in [confiscated] property' to trafficking only in the specific 'interest in property for which a United States national has a claim certified' is contrary" to Title III, *Norwegian II* at 24, would necessitate dismissal of Havana Docks' post-2004 claims.  Regardless of whether Havana Docks' concession expired in 2004 or after 99 years, *cf. id.* at 15, Carnival is not alleged to have trafficked in the "particular interest" that Havana Docks owned, it is alleged instead to have trafficked in the "broadly defined 'confiscated property,'" *id.* at 24-25.  As this Court noted, "the Cuban Government's expropriation of the Subject Property extinguished all rights Havana Docks had to the remaining concession term of 44 years."  *Id.* at 18.  Thus Havana Docks' ability to recover turns on whether this Court was correct in holding that "Limiting the allowable period of recovery to the term of the underlying property interest, in effect, nullifies Title III," *id.*, as the "underlying property interest" expired by its own terms 99 years from the date it was issued (that is, 2004).

And although this Court noted Havana Docks' Certified Claim certifies "additional property interests . . . such as the ownership interests in fixtures and equipment," *id.* at 16, that were not part of the time-limited concession, this has no impact on Havana Docks' claims because it does not allege that Carnival "trafficked" in any of the other property, fixtures, and equipment.  Rather, it alleges that Carnival trafficked by "embarking and disembarking its passengers on the Subject Property," and namely on the *piers* that were plainly within the scope of the time-limited concession.  *See* D.E. 81-1 at 9 ("The terms of the concession granted by the Cuban Government were to expire in the year 2004, at which time the corporation had to deliver the piers to the government in good state of preservation.").  There is no plausible allegation that Carnival embarked and disembarked its passengers onto the "Elevators, escalators, portable cranes, tractors, trailers, fork lift trucks, and other port and dock equipment" that were on the docks in 1960, 56

12

years before the alleged trafficking, nor onto the "furniture and fixtures located in the offices of the corporation," D.E. 81-1 at 7, especially given that the Commission assumed that "most equipment was in operation during an average time of five years," *id.* at 10.

**B.      Resolution of the Post-2004 Claims Would Materially Advance This Litigation**

Disposing of the post-2004 conduct would substantially shorten the litigation and narrow the scope of discovery.   As Carnival explained in Part I above, "the issue need not . . . be dispositive" to merit certification.  *Hadjipateras*, 290 F.2d at 702 n.10.

The allegations of post-2004 conduct, which concern Carnival's (and an affiliated cruise line's) travel to Cuba from Miami beginning in 2016, are entirely factually distinct from the pre-2004 allegations, which concern Carnival's business relationships with British and Italian cruise lines which travelled to Cuba from non-American countries during the 1996-2001 time period.  In short, removing the post-2004 allegations would substantially shorten this litigation, narrow the issues involved, and lighten the burdens and expenses of litigation and discovery on this court and the parties.[7]

---

[7] *See Classroomdirect.com, LLC v. Draphix, LLC*, 2008 WL 11377637, at *1 (N.D. Ala. Aug. 1, 2008) (finding that immediate appeal would materially advance the litigation where "discovery will be limited and a future trial will be significantly shortened" if the defendant prevailed on immediate appeal because the defendant would be entitled to summary judgment on the claim at issue, even other claims remained in the litigation); *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 741 F. Supp. 906, 913 (S.D. Ga. 1990) (granting immediate appeal of an issue concerning a RICO claim in a multi-count complaint where "[a] substantial amount of the time the parties spend on discovery will no doubt be directed towards the RICO claim," and "a substantial portion of any trial will also be devoted to the RICO claim"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1253 (S.D. Fla. 2013) (granting certification where appeal "has the potential to materially advance future cases and to conserve judicial and party resources involved with the continued litigation of these very issues going forward"); *Children First Found., Inc. v. Legreide*, 2005 WL 3088334, at *10 (D.N.J. Nov. 17, 2005) (noting that issue would materially advance litigation where immediate appeal would, among others, "reduce the extent or cost of discovery," *or* "simplify the trial by eliminating complex issues"); *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013) (similar) (quotation omitted).

Further, because the pre-2004 allegations are factually distinct, dismissal of the post-2004 claims following a successful appeal would not deprive Havana Docks of a potential remedy under the Act.  However, as this Court noted, D.E. 79 at 17 n.3, Carnival intends to move to dismiss the pre-2004 allegations for failure to state a claim; if Carnival is successful, then the certified question will entirely dispose of the remaining litigation.

## **CONCLUSION**

For the foregoing reasons, Carnival respectfully requests that the Court grant its Motion for Certification of Interlocutory Appeal.

**CERTIFICATE OF GOOD FAITH CONFERENCE;**
**CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for movant has conferred

with Plaintiff in a good faith effort to resolve the issues raised in the motion and can state that

Plaintiff opposes the relief sought herein.

By:*/s/ Stuart H. Singer*
        Stuart H. Singer

Dated:  April 27, 2020                                    Respectfully submitted,


                                                          By: */s/ Stuart H. Singer*
Pedro A. Freyre                                               Stuart H. Singer
AKERMAN LLP                                                   (Florida Bar No. 377325)
(Florida Bar No. 192140)                                     Evan Ezray
98 SE 7th St., Suite 1100                          (Florida Bar No. 1008228)
Miami, Florida 33131                                         Johnathan Lott
Telephone: (305) 374-5600                                    (Florida Bar No. 0116423)
Pedro.freyre@akerman.com                                     BOIES SCHILLER FLEXNER LLP
                                                             401 East Las Olas Boulevard, Suite 1200
George J. Fowler, III                                        Fort Lauderdale, Florida 33301
(*Pro Hac Vice*)                                             Telephone: (954) 356-0011
Luis Llamas                                                  ssinger@bsfllp.com
(Florida Bar No. 89822)                                      eezray@bsfllp.com
JONES WALKER LLP                                             jlott@bsfllp.com
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8752
gfolwer@joneswalker.com
llamas@joneswalker.com


                                                          *Attorneys for Carnival Corp.*


                                    **CERTIFICATE OF SERVICE**

        I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all

counsel of record via the court's CM/ECF System on April 27, 2020.



                                    By:*/s/ Stuart H. Singer*
                                        Stuart H. Singer