UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-21724-BLOOM/McAliley

HAVANA DOCKS CORPORATION,

Plaintiff,

v.

CARNIVAL CORPORATION,

Defendant.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and Motion to Dismiss Claims Based on Pre-2004 Conduct Pursuant to Rule 12(b)(6), ECF No. [93] ("Motion"). Plaintiff Havana Docks Corporation filed a Response in Opposition, ECF No. [101] ("Response"), to which Defendant filed a Reply, ECF No. [105] ("Reply"). Defendant also submitted two Notices of Supplemental Authority in Support of its Motion, ECF Nos. [110] and [116], and Plaintiff submitted a Notice of Filing Supplemental Authority, ECF No. [120].[1] The Court has carefully considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I.    BACKGROUND

### A.    The LIBERTAD Act

Since Fidel Castro seized power in Cuba in 1959, Cuba has been plagued by "communist tyranny and economic mismanagement," that has substantially deteriorated the welfare and health

---

[1] The parties have also filed motions for leave to file responses to the notices of supplemental authority. *See* ECF Nos. [117] and [121].

of the Cuban people. *See* 22 U.S.C. §§ 6021(1)(A), (2). The communist Cuban Government has systematically repressed the Cuban people through, among other things, "massive and systemic violations of human rights" and deprivations of fundamental freedoms, *see id.* §§ 6021(4), (24), and the United States has consistently sought to impose effective international sanctions for these violations against the Castro regime, *see id.* §§ 6021(8)-(10).

In 1996, Congress passed Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act," "Title III," or the "Act"), commonly referred to as the Helms-Burton Act, "to strengthen international sanctions against the Castro government" and, relevant to the instant case, "to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. §§ 6022(2), (6). Under Title III of the Act, Congress denounced the Cuban Government's history of confiscating property of Cuban citizens and U.S. nationals, explaining that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." 22 U.S.C. §§ 6081(2)-(3). The Act explains that foreign investors who traffic in confiscated properties through the purchase of equity interests in, management of, or entry into joint ventures with the Cuban Government to use such properties "complicate any attempt to return [these expropriated properties] to their original owners." *Id.* §§ 6081(5), (7). The LIBERTAD Act cautions that:

> [t]his "trafficking" in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus undermines the foreign policy of the United States—
> (A) to bring democratic institutions to Cuba through the pressure of a general economic embargo at a time when the Castro regime has proven to be vulnerable to international economic pressure; and

> (B) to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government.

*Id.* §§ 6081(6)(A)-(B).

Further, the lack of effective international remedies for the wrongful confiscation of property and for unjust enrichment from the use of that property by foreign governments at the expense of the rightful owners left U.S. citizens without protection against wrongful confiscations by foreign nations and their citizens. *Id.* § 6081(10). Congress therefore concluded that, "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures."

*Id.* § 6081(11); *see also* 22 U.S.C. § 6082(a)(1)(A). As a result, in passing Title III of the LIBERTAD Act, "Congress created a private right of action against any person who 'traffics' in confiscated Cuban property." *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1284 (S.D. Fla. 2019) (citing 22 U.S.C. § 6082(a)(1)(A); 22 U.S.C. § 6023(13)(A)).

> Shortly after Helms-Burton was passed, however, the President invoked Title III's [suspension] provision, and "Title III has since been waived every six months, . . . and has never effectively been applied." *Odebrecht Const., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1312 (S.D. Fla. 2012). That changed on April 17, 2019, when the U.S. Department of State announced that the federal government "will no longer suspend Title III." *See* U.S. Department of State, Secretary of State Michael R. Pompeo's Remarks to the Press (Apr. 17, 2019), https://www.state.gov/remarks-to-the-press-11/.

*Id.*; *see also* 22 U.S.C. § 6085(c) (presidential power to suspend the right to bring a cause of action under Title III). On May 2, 2019, the suspension of claimants' rights to bring actions under Title III was lifted, enabling them to file suit against alleged traffickers.

### B.     This Case

On May 2, 2019, Plaintiff filed this action against Defendant pursuant to Title III of the

LIBERTAD Act. ECF No. [1]. On May 30, 2019, Defendant filed a motion to dismiss the then-

pending complaint, ECF No. [17], which motion the Court denied on August 27, 2019. ECF No.

[47]. Defendant then filed its answer and affirmative defenses, ECF No. [50], and later its first

amended answer and affirmative defenses, ECF No. [59]. In light of the Court's subsequent rulings

in Plaintiffs' related cases involving MSC Cruises and Norwegian Cruise Line, Defendant moved

for reconsideration of the Court's order on the motion to dismiss, ECF Nos. [63] and [65], and

Plaintiff moved for leave to file a first amended complaint, ECF No. [74]. On April 17, 2020, the

Court entered an Omnibus Order granting Plaintiff's motion for leave and denying as moot

Defendant's motion for reconsideration. ECF No. [79]. The Court later denied Defendant's motion

for certification of interlocutory appeal and its motion to stay discovery. ECF No. [104].

On April 20, 2020, Plaintiff filed the operative Amended Complaint. ECF No. [81]. The

Amended Complaint alleges the following facts: Plaintiff is a U.S. national, as defined by 22

U.S.C. § 6023(15), and "is the rightful owner of an interest in and certified claim to certain

commercial waterfront real property in the Port of Havana, Cuba," identified as the Havana Cruise

Port Terminal (the "Subject Property"). ECF No. [81] ¶ 6. Plaintiff continuously owned,

possessed, managed, and used the Subject Property from 1917 until the Cuban Government

confiscated it in 1960, *id*. ¶ 7, and that, since the confiscation, the Subject Property has not been

returned, nor has Plaintiff received adequate or effective compensation for the confiscation of the

Subject Property, *id*. ¶¶ 9-10. Plaintiff's claim to the Subject Property has never been settled

pursuant to any international claim settlement agreement or other settlement procedure. *Id.* ¶ 10.

Plaintiff's ownership interest in and claim to the Subject Property has been certified by the Foreign Claims Settlement Commission (the "FCSC") pursuant to the International Claims Settlement Act of 1949, 22 U.S.C. § 1621, *et seq.* (the "Claims Settlement Act"). *Id.* ¶ 12.[2] In the Certified Claim, a copy of which is attached to Plaintiff's Amended Complaint, the FCSC found, based on the record before it, that:

> [Havana Docks] obtained from the Government of Cuba the renewal of a concession for the construction and operation of wharves and warehouses in the harbor of Havana, formerly granted to its predecessor concessionaire, the Port of Havana Docks Company; that claimant acquired at the same time the real property with all improvements and appurtenances located on the Avenida del Puerto between Calle Amargura and Calle Santa Clara in Havana, facing the Bay of Havana; . . . and that claimant corporation also owned the mechanical installations, loading and unloading equipment, vehicles and machinery, as well as furniture and fixtures located in the offices of the corporation.

ECF No. [81-1] at 7. "The concession granted the Plaintiff a term of 99 years for the use of, improvement, construction upon, operation and management of the Subject Property," from which Plaintiff benefitted until 1960, when the Subject Property was confiscated by the Cuban Government, along with all of its other property interests. ECF No. [81] ¶ 15. "The concession never expired by its term." *Id.* Rather, when the Subject Property was confiscated, "Havana Docks still had a balance of 44 years of concessionary rights remaining . . . [and] Plaintiff has never received any compensation nor been indemnified for the expropriation of the Subject Property, including for the concession or any other property interests." *Id.* ¶¶ 15, 19.

According to the Amended Complaint, Defendant trafficked in the Subject Property before 2004 through Airtours Plc ("Airtours") and Costa Cruises ("Costa"). *Id.* at 8-10. Specifically, between April 1996 and June 2001, Carnival owned a 26% to 30% interest in Airtours. *Id.* ¶ 24.

---

[2] The Court will refer to Plaintiff's claim to the Subject Property, ECF No. [81-1], as the "Certified Claim" for the remainder of this Order.

Mickey Arison ("Arison"), Defendant's present chairman and former CEO, and Howard Frank ("Frank"), Costa's present chairman and Defendant's former COO and vice chairman, sat on Airtours' board of directors during this period. *Id.* ¶ 26. According to Plaintiff, Airtours trafficked in the Subject Property between 1998 and at least through 2001, when Defendant sold its investment in Airtours. *Id.* ¶¶ 26-28. During this time, Airtours "knowingly and intentionally operated cruises to Havana, Cuba, using the Subject Property to embark and disembark its passengers," and on information and belief, Defendant "knowingly and intentionally caused, directed, participated in, and/or profited from Airtours' trafficking in the Subject Property, and otherwise engaged in trafficking in the Subject Property through Airtours from approximately 1998 through 2001." *Id.* ¶¶ 27, 29.

The Amended Complaint further alleges that in June 1997, Defendant directly acquired a 50% interest in Costa and indirectly acquired additional interest in it through Airtours' acquisition of the other 50% interest. *Id.* ¶ 31. In September 2000, Defendant acquired Airtours' 50% interest, thus giving Defendant full ownership over Costa. *Id.* Upon acquiring Costa in 1997, Arison and Costa were appointed to Costa's board of directors. *Id.* ¶ 32. Plaintiff alleges that after November 1, 1996, Costa trafficked in the Subject Property by "knowingly and intentionally" renovating, expanding and managing the Subject Property under a joint venture and concession agreement with the Cuban Government and by operating its commercial cruise business to Havana using the Subject Property. *Id.* ¶¶ 34-36. According to Plaintiff, on information and belief, Defendant "knowingly and intentionally caused, directed, participated in, and/or profited from Costa's trafficking in the Subject Property, and otherwise engaged in trafficking in the Subject Property through Costa, its subsidiary." *Id.* ¶ 39.

The Amended Complaint alleges that on or about May 1, 2016 and continuing until May 28, 2019, Defendant "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property." *Id.* ¶¶ 40, 42. Defendant has had constructive knowledge of Plaintiff's publicly available Certified Claim to the Subject Property since the FCSC completed the Cuban Claims Program on July 6, 1972. *Id.* ¶ 21. Further, Defendant "has had actual knowledge of Plaintiff's [C]ertified [C]laim . . . since at least February 11, 2019, due to a notice letter sent via certified mail by Plaintiff pursuant to 22 U.S.C. § 6082(a)(3)(D)." *Id.* ¶ 22. "On information and belief, Carnival trafficked in the Subject Property until May 28, 2019." *Id.* ¶ 42. Thus, Defendant is alleged to have knowingly and intentionally participated in, and profited from, the Cuban Government's confiscation and possession of the Subject Property without Plaintiff's authorization. *Id.* ¶ 41. Plaintiff therefore alleges that Defendant's knowing and intentional conduct relating to the Subject Property constitutes "trafficking," as set forth under 22 U.S.C. § 6023(13)(A), and that Defendant is liable to it for all money damages allowed by statute. ECF No. [81] ¶¶ 43-49.

Defendant now moves to dismiss the Amended Complaint on two primary grounds: (1) Plaintiff lacks Article III standing to sue because it cannot allege an invasion of a legally protected interest or any injury fairly traceable to Defendant; and (2) Plaintiff's allegations of pre-2004 trafficking are time-barred under 22 U.S.C. § 6084 because such claims were brought "more than two years" after the alleged trafficking "ceased to occur." ECF No. [93]. In its Response, Plaintiff makes four overarching arguments: (1) Plaintiff has Article III standing to sue; (2) Defendant's alleged pre-2004 trafficking is actionable under Title III; (3) equitable tolling should be applied to

toll any limitations period that may have expired; and (4) Defendant waived any Section 6084 defense. ECF No. [101]. In the Reply, Defendant responds to Plaintiff's arguments and reiterates that the Amended Complaint should be dismissed because Plaintiff failed to plead an injury in fact caused by Defendant, and claims premised on pre-2004 conduct are time-barred. ECF No. [105].

The Motion, accordingly, is ripe for consideration.

## II.     LEGAL STANDARD

### A.     Article III Standing

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). It is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989) (en banc). "'The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), *cert. denied*, 140 S. Ct. 900 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.'" *Id.* (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most

important jurisdictional' requirement, and without it, [federal courts] have no power to judge the merits." *Id.* (footnote omitted) (quoting *Bochese*, 405 F.3d at 974).

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)). In other words, to establish standing, a plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

"The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000)). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)). "In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). "When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and

'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

### B. Rule 12(b)(6) Motion

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) that requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the

unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

## III.    DISCUSSION

Determining whether Defendant is entitled to the relief it requests raises two overarching issues. The first is whether the Amended Complaint must be dismissed for lack of subject matter jurisdiction due to Plaintiff's lack of Article III standing. If Plaintiff has established Article III standing, the second issue is whether the pleading's claims based on pre-2004 conduct are time-barred and thus fail to state a claim. The Court addresses each argument in turn.

### A.    Article III Standing

Defendant first challenges Plaintiff's Article III standing, arguing Plaintiff cannot allege any invasion of a legally protected interest or any concrete injury in fact that is fairly traceable to Defendant's conduct. ECF No. [93] at 3-6. Plaintiff responds that it has sufficiently satisfied all of the Article III standing requirements and that any alternative construction would effectively require this Court to declare Title III unconstitutional. ECF No. [101] at 5-10. Defendant, in its Reply, contends that Plaintiff's "theory that there is standing because Congress created a cause of action for trafficking and endowed Plaintiff with a claim" is unavailing. ECF No. [105] at 1-3.

Defendant submitted two Notices of Supplemental Authority in support of its Motion, which appended two recent cases that address Article III standing: *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020), and *Glen v. American Airlines, Inc.*, No. 4:20-cv-482-A, 2020 WL 4464665, at *1 (N.D. Tex. Aug. 3, 2020). *See* ECF Nos. [110] and [116]. Similarly, Plaintiff submitted a Notice of Supplemental Authority, ECF No. [120], in support of its argument that it has Article III standing: *Cueto Iglesias v. Pernod Ricard*, No. 20-cv-20157 (S.D. Fla. Aug. 17, 2020), ECF No. [55].

The Court will address each element of Article III standing individually below.

### 1.    Injury in Fact

"The 'foremost' standing requirement is injury in fact." *Trichell*, 964 F.3d at 996 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

> An injury in fact consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." [*Lujan*,] 504 U.S. at 560 (quotation marks omitted). A "concrete" injury must be "*de facto*" — that is, it must be "real, and not abstract." *Spokeo, Inc.*, 136 S. Ct. at 1548 (quotation marks omitted). A "particularized" injury "must affect the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). Each subsidiary element of injury — a legally protected interest, concreteness, particularization, and imminence — must be satisfied. *See id.* at 1545; [*Lujan*,] 504 U.S. at 560.

*Id.* at 996-97.

Defendant argues Plaintiff cannot allege facts to support the elements of injury in fact — legally protected interest, concreteness, particularization, or imminence. *See* ECF No. [93] at 3-6; *see also Trichell*, 964 F.3d at 996-97 ("Each subsidiary element of injury . . . must be satisfied [for standing].").

First, legally protected interest. "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178,

1182 (11th Cir. 1993); *see also Bochese*, 405 F.3d at 980. "That 'interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right.'" *Bochese*, 405 F.3d at 980-81 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000)). Here, Plaintiff alleges it has a Certified Claim to the Subject Property, and Defendant is trafficking in the Subject Property without authorization. Under the LIBERTAD Act, trafficking in confiscated property is an invasion of a legally protected interest — *i.e.* a statutorily constructed property interest in the Subject Property, which conveys a *right* to prevent third-party use of the same. The remedy for the violation of that right is compensation from third parties for trafficking in the Subject Property. That the legal right and remedy at issue in this case are statutorily constructed does not sway the Court's analysis in favor of Defendant, because, as discussed in the ensuing sections, Plaintiff's injury is concrete, particularized, and imminent.

Second, concreteness. Although a statutorily-constructed right may be insufficient to convey standing on its own,[3] *Trichell*, 964 F.3d at 997 ("Article III standing requires a concrete injury even in the context of a statutory violation." (quoting *Spokeo, Inc.*, 136 S. Ct. at 1549)), it is sufficient where the right is constructed to address a concrete harm. *See also Spokeo, Inc.*, 136 S. Ct. at 1549 ("Congress may elevate to the status of legally cognizable injuries concrete, *de facto*

---

[3] The Court notes "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc.*, 136 S. Ct. at 1547-48 (quoting *Raines*, 521 U.S. at 820 n.3); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). "Even when [the] political branches appear to have granted [federal courts] jurisdiction by statute and rule, [federal courts] are still obliged to examine whether jurisdiction exists under the Constitution." *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019). Ultimately, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc.*, 136 S. Ct. at 1549. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* As explained in this section, the Court has examined the alleged rights and injuries and finds that Plaintiff has established an injury in fact.

injuries that were previously inadequate in law." (alteration adopted; citation and internal quotation mark omitted)). As detailed above, Congress was prompted to enact Title III because the remedies for (1) the wrongful confiscation of property by foreign governments; and (2) the subsequent unjust enrichment and economic exploitation of that property by foreign investors at the expense of the rightful owners, were ineffective. 22 U.S.C. § 6081(10).[4] Quite simply, the right identified by Congress was a property interest, and Defendant presents no clear argument why an infringement on a property right lacks concreteness. Defendant appears to argue that the injury here is not concrete because the Subject Property was initially confiscated by the Cuban Government and Plaintiff cannot be injured by its subsequent use.[5] While the injury may have its origin in the confiscation, Defendant does not explain how the continued use of the Subject Property makes Plaintiff's harm less tangible today. Stated otherwise, Plaintiff's injury is "real" because it is not receiving the benefit of its interest in the Subject Property, and Defendant's subsequent trafficking in the confiscated property has undermined Plaintiff's right to compensation for that expropriation.

---

[4] Title III makes it clear that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner," 22 U.S.C. §§ 6081(2)-(3), by foreign investors who traffic in confiscated properties "complicate any attempt to return [these expropriated properties] to their original owners," *id.* §§ 6081(5), (7), and undermine U.S. foreign policy aiming "to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government," *id.* § 6081(6)(B).

[5] Defendant cites to *United States v. Amodeo*, 916 F.3d 967 (11th Cir. 2019), to support its argument that prior owners of property that is forfeited lack standing to challenge later uses of the property. That citation is misplaced. The criminal defendant in that action agreed to forfeit his assets, including his ownership in various corporations, as part of his plea agreement, and the district court's later partial vacatur of the forfeiture order at the Government's request did not restore the defendant's ownership in the corporations. This case, by contrast, is a civil matter, Plaintiff's property was not voluntarily forfeited but rather unlawfully confiscated, Plaintiff's instant claims are moored in a statutory cause of action, and Plaintiff alleges that Defendant knowingly and intentionally participated in and profited from the unauthorized use of the Subject Property.

Moreover, Defendant's Notices of Supplemental Authority, ECF Nos. [110] and [116], are inapposite. In particular, the facts of this case are distinguishable from those in *Trichell* because Plaintiff sufficiently alleges that Defendant profited from its use of the Subject Property at Plaintiff's expense, ECF No. [81] ¶¶ 29-30, 37, 39-41, whereas *Trichell* involved a statutory violation without any corresponding concrete injury to the plaintiffs. Moreover, the district court in *Glen v. American Airlines* observed that the plaintiff admitted that neither the Cuban government's confiscation of the properties nor the hotels' operations constituted injuries in fact. Contrary to the conclusion in *Glen v. American Airlines* that the plaintiff had no standing because there was no allegation of concrete harm, the Court finds that the allegations of profiting from the use of property that was expropriated without obtaining consent or paying adequate compensation to the original owner is sufficient concrete harm for standing purposes. *See, e.g.*, *Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1272 (S.D. Fla. 2005) (explaining that the injury to a plaintiff whose property was expropriated was a lack of compensation (citing *Talenti v. Clinton*, 102 F.3d 573, 578 (D.C. Cir. 1996)), *aff'd*, 450 F.3d 1251 (11th Cir. 2006).

Third, particularity. Plaintiff argues its injury is particularized because the injury is entirely personalized to its interest in its Certified Claim to the Subject Property, and Defendant appears only to challenges this point generally. *See* ECF No. [93] at 5 (noting that Plaintiff cannot allege that Defendant's conduct caused injury, "much less a concrete and particularized injury"). The Court concludes that Plaintiff's injuries here are particularized because, rather than presenting a generalized harm, Plaintiff's injury is entirely personalized to its interest in its Certified Claim to the Subject Property. *See* ECF No. [81] ¶¶ 12-13, 15-19. Stated differently, Plaintiff seeks only to vindicate its own property rights in this action. *Spokeo, Inc.*, 136 S. Ct. at 1548 ("For an injury to

be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" (citation omitted)). This is sufficient for particularity.

Fourth, imminence. Although Defendant does not raise an issue regarding imminence in this case, the Court nonetheless has an independent obligation to address all aspects of its jurisdiction. Imminence is satisfied where, as here, "both the challenged conduct and the attendant injury have already occurred." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017). Accordingly, Plaintiff's injury here is actual and not conjectural.

In sum, Plaintiff has alleged sufficient facts to recover monetary damages for the injuries it sustained as a result of Defendant's unlawful trafficking in the Subject Property, to which it owns a Certified Claim.[6]

### 2.    Causation

To establish Article III standing, a plaintiff must also demonstrate that the injuries sustained are fairly traceable to the defendant's conduct.

---

[6] As the Eleventh Circuit explained in *Glen*, Title III's purpose is

> to deter third party foreign investors from trafficking in the confiscated property (defined as "purchas[ing] an equity interest in, manag[ing], or enter[ing] into joint ventures using property and assets some of which were confiscated from United States nationals."). *See* 22 U.S.C. § 6081(5), (6), (11). This purpose is achieved through the establishment of a new statutory remedy available (if not suspended) to "United States nationals who were the victims of these confiscations . . . [to] deny traffickers any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11). The Helms-Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a "claim to such property." 22 U.S.C. § 6082(a)(1)(A). When (or if) the portion of Title III that allows private litigants to bring lawsuits becomes effective, actions brought pursuant to the new statutory scheme would be actions brought "on a claim to the confiscated property" against traffickers in the property. 22 U.S.C. § 6082(a)(4).

*Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (footnote omitted).

> To satisfy Article III's causation requirement, the [] plaintiffs must allege that their injuries are "connect[ed] with the conduct of which [they] complain." *Trump v. Hawai'i*, 138 S. Ct. 2392, 2416 (2018). *See also Duke Power Co. v. Envtl. Study Grp.*, 438 U.S. 59, 75 n.20 (1978) (explaining that Article III standing "require[s] no more than a showing that there is a substantial likelihood" of causation) (quotation marks omitted). Significantly, "[p]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). A plaintiff therefore need not show (or, as here, allege) that "the defendant's actions are the very last step in the chain of causation." [*Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). *See also Moody v. Warden*, 887 F.3d 1281, 1285 (11th Cir. 2018)] (explaining that we "must not confuse weakness on the merits with absence of Article III standing") (citation and quotation marks omitted).

*Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125-26 (11th Cir. 2019), *cert. denied*, No. 19-1185, 2020 WL 2814788 (2020).

"Congress has the power to define injuries *and articulate chains of causation* that will give rise to a case or controversy where none existed before." *Spokeo, Inc.*, 136 S. Ct. at 1549 (emphasis added) (citation omitted). In enacting Title III, Congress recognized that there exists a causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property. *See* 22 U.S.C. § 6081(10) (noting the lack of effective international remedies for the wrongful confiscation of property by foreign governments and the subsequent unjust enrichment by foreign investors from the use of that property at the expense of the rightful owners).

Thus, under *Spokeo, Inc.*, any argument that the causal chain ceases with the Cuban Government falls short. Defendant argues that Plaintiff's injury is not attributable to Defendant's conduct, but rather to the Cuban Government's expropriation, and that the traceability prong of standing is therefore not met here. However, Defendant's purported reliance on *Trichell* misses

the mark because *Trichell* does not stand for the notion that such causal links are insufficient to

establish Article III standing, where a concrete and particularized injury otherwise exists. Rather,

Defendant's conduct of using and profiting from the Subject Property is fairly traceable to

Plaintiff's claimed injuries. *See Focus on the Family*, 344 F.3d at 1273 ("[E]ven harms that flow

indirectly from the action in question can be said to be 'fairly traceable' to that action for standing

purposes.").

### 3.      Redressability

The final element of Article III standing is redressability.

> The element of redressability requires that "it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504
> U.S. at 561 (internal quotation marks omitted). "Redressability is established when
> a favorable decision would amount to a significant increase in the likelihood that
> the plaintiff would obtain relief that directly redresses the injury suffered." *Mulhall
> v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (alteration and
> internal quotation marks omitted). [Courts] must be able "to ascertain from the
> record whether the relief requested is likely to redress the alleged injury," [*Steele
> v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1415 (11th Cir. 1985)] . . . . *See*
> [*DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008)]
> (dismissing complaint for lack of standing because it did not "suggest in any way
> how [the] 'injury' could be redressed by a favorable judgment").

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011).

The Court of Appeals for the Eleventh Circuit has explained that, where the injury alleged

is a monetary injury, such an injury can be redressed by an award of compensatory damages. *See,

e.g.*, *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Plaintiffs allege a monetary

injury and an award of compensatory damages would redress that injury."); *see also Made in the

USA Found. v. United States*, 242 F.3d 1300, 1310-11 (11th Cir. 2001) (explaining that even partial

relief suffices for redressability).

Regarding the redressability element, Defendant argues that Plaintiff cannot sufficiently

establish that its injury can be redressed by a favorable decision because the Cuban Government's

expropriation extinguished its ownership rights in the Subject Property. Plaintiff, however, argues that Defendant "knowingly and intentionally impaired Havana Docks' claim through its unauthorized trafficking in the Subject Property," and Title III awards damages as "just compensation for the value of the Subject Property, trebled." ECF No. [101] at 10. The Court agrees with Plaintiff. Obtaining a favorable judgment would allow Plaintiff to recover monetary damages as provided in Title III—compensation which would sufficiently redress the harm Plaintiff allegedly suffered from the Cuban Government's confiscation of the Subject Property and Defendant's subsequent unjust enrichment from the use of the confiscated property at Plaintiff's expense. *See, e.g.*, *Resnick*, 693 F.3d at 1324 ("Plaintiffs allege a monetary injury and an award of compensatory damages would redress that injury."); *Wilding*, 941 F.3d at 1127 (same); *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1263 (11th Cir. 2006) ("'Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court.' The injury was 'the direct result of "putatively illegal" [G]overnmental action in the form of an allegedly unlawful forfeiture. This injury would be redressed by a successful challenge to the forfeiture. Article III does not require more.'" (quoting *United States v. Cambio Exacto*, 166 F.3d 522, 528 (2nd Cir. 1999))). At this stage, the Court concludes that Plaintiff has sufficiently established the redressability requirement of Article III standing.

Based on the discussion above, the Court finds that Plaintiff has met its burden at this stage of establishing injury in fact, causation, and redressability, as required for Article III standing. As such, Defendant's Motion is denied as it relates to Plaintiff's alleged lack of standing.

### B.       Time Bar as to Pre-2004 Conduct

Defendant next argues that Plaintiff's claims as to pre-2004 trafficking are time-barred because 22 U.S.C. § 6084 is a statute of repose and not subject to equitable tolling. Section 6084

directs that an action "under section 6082 . . . may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur." *Id.* However, because Plaintiff has stated an actionable claim under Title III on the face of the Amended Complaint, the Court need not determine whether § 6084 is a statute of repose or a statute of limitations.

> In granting Plaintiff leave to amend the original complaint, the Court explained that
>
> [t]he pre-2004 allegations do not "radically alter" the scope of this case nor are they tangentially related to the allegations in the initial Complaint. The crux of the proposed complaint remains the same as before: Defendant violated the Act by trafficking in the Subject Property, and the allegations relate directly to the period that the Court had determined to be actionable in the Dismissal Orders. Indeed, the proposed allegations involve the same Certified Claim, the same Subject Property, the same litigants, the same statutory violation, and the same alleged harm.

ECF No. [79] at 16.

According to the Amended Complaint, between 1996 and 2019, Defendant knowingly and intentionally operated cruises to Cuba using the Subject Property and profited from that conduct. *See* ECF No. [81] ¶¶ 24-44. In fact, the last alleged date of trafficking in the Subject Property is May 28, 2019. *Id.* ¶ 42. The Court accepts as true Plaintiff's allegations at this stage. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (courts at the motion-to-dismiss stage must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff"). It likewise extends "all reasonable inferences" from the allegations in the Amended Complaint in Plaintiff's favor. *Id.* (citation omitted). Accordingly, under the plain language of § 6084, the lawsuit was brought within two years of May 28, 2019, which is when "trafficking giving rise to the action has ceased to occur." *Id.* In this respect, the Court notes that the Amended Complaint sets forth only one count, sues only one defendant, and alleges trafficking relating to one Subject Property and linked to one Certified Claim. Further, the lawsuit does not allege only one isolated instance of trafficking, but rather a series of trafficking taking place "at

20

various times" spanning over a two-decade period. *Id.* ¶ 47. The Court, therefore, rejects the notion that Plaintiff's single-count Amended Complaint is actionable only as to certain allegations but not as to others.

At the pleading stage, to survive dismissal a plaintiff must simply set forth allegations stating a plausible claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678. As this Court has previously found, the Amended Complaint's allegations, especially as to post-2004 trafficking, are sufficient to state a Title III claim. ECF No. [79] at 18-19. That the instant pleading also includes trafficking allegations preceding that period—all related to the same broad course of conduct as that of the post-2004 allegations—does not make Plaintiff's claim any less actionable or any less well-pled.

Further, courts routinely refuse to excise "in line-item fashion" portions of a complaint where the claim at hand is otherwise adequately stated. *See, e.g.*, *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1251 (S.D. Fla. 2018) ("Given Plaintiff adequately describes the ways in which Defendants' conduct is unfair and deceptive, hence violating the FDUTPA, the Court will not strike in line-item fashion one alleged manner in which Defendants violated the FDUTPA."); *Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010) (declining to strike allegations from complaint that were non-actionable where plaintiff otherwise alleged facts in support of a plausible claim); *Mansoorian v. Brock & Scott, PLLC*, No. 8:18-cv-1876-T-33TGW, 2018 WL 6413484, at *5 (M.D. Fla. Dec. 6, 2018) (denying motion to dismiss and refusing to strike certain allegations "merely because [defendant] contends that some of the allegations are insufficient" and even though plaintiffs "may not be entitled to recover on all of [defendant's] alleged violations"); *Manukian v. Carnival Corp.*, No. 1:15-cv-21437-UU, 2015 WL 9660017, at *2 (S.D. Fla. June 19, 2015) (denying motion to dismiss because "Plaintiff

has adequately alleged a negligence claim," and therefore "the Court will not go through the Complaint and strike alleged duties in a line-item fashion"); *see also Heyden v. Celebrity Cruises, Inc.*, No. 12-21923-CIV, 2013 WL 773477, at *4 (S.D. Fla. Feb. 28, 2013) (denying motion to dismiss claim "in line-item fashion" because the court "must read the complaint in the light most favorable to the plaintiff at the motion to dismiss stage" (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) ("A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."))). Having determined that Plaintiff's Title III count is adequately pled, the Court will not parse out allegations that Defendant contends do not support liability.

Finally, the Court is unpersuaded by Defendant's argument that the Court can resolve the purported time bar issue, which is an affirmative defense, at this juncture. According to Defendant, § 6084 is a statute of repose, and this affirmative defense can be the basis for dismissal. ECF No. [93] at 7. Here, even were the Court to accept the argument that § 6084 is a statute of repose, Plaintiff is not required to negate an affirmative defense in its complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Moreover, the Eleventh Circuit "[n]ot surprisingly" commands that Rule 12(b)(6) dismissal on time limitations grounds "is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Id.* As set forth above, there is nothing "apparent from the face" of the pleading that permits resolving the issue of whether the affirmative defense bars Plaintiff's claim at this time. The Amended Complaint alleges trafficking from 1996 through May 2019. ECF No. [81] ¶¶ 24-44, 47. Based on the four corners of the well-pled Amended Complaint, the Court cannot conclude that the relevant limitations period has expired. Accordingly, Defendant's Motion as to the time bar matter is denied.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Motion, **ECF No. [93]**, is **DENIED**.

2.  Defendant is ordered to file its Answer to the Amended Complaint by **no later than September 25, 2020**.

3.  Plaintiff's Motion for Leave to File Response to Notices of Supplemental Authority, **ECF No. [117]**, is **DENIED AS MOOT**.

4.  Defendant's Conditional Motion for Leave to File Response to Notice of Supplemental Authority, **ECF No. [121]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida on September 14, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record