UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-cv-21724-BLOOM/MCALILEY

HAVANA DOCKS CORPORATION,

       Plaintiff,

vs.

CARNIVAL CORPORATION,

       Defendant.
_____/

**REPLY IN SUPPORT OF MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

In its original and amended complaints, Plaintiff Havana Docks Corporation ("Havana Docks") alleged that Defendant Carnival Corporation ("Carnival") knowingly and intentionally trafficked in the Subject Property without the authorization of Havana Docks. (ECF No. 1 at ¶¶ 12, 13, 14, 15, 18; ECF No. 81 at ¶¶ 40, 41, 43, 47.) Thus, the subject of the case is—and always has been—<u>Carnival's</u> trafficking in the Subject Property. The subsidiary, "line," "division," "brand," or "group" Carnival used to violate Title III of the LIBERTAD Act is not relevant; if <u>Carnival</u> "cause[d], direct[ed], participat[ed] in or profit[ed] from" trafficking activity, that trafficking is within the scope of this case. 22 U.S.C. § 6023(13)(A).

As is readily apparent from its opposition brief (ECF No. 136), Carnival, however, believes that its trafficking through at least one of these entities is outside the scope of this case. Havana Docks disagrees with Carnival. But to moot that

question, Havana Docks seeks leave to file a second amended complaint naming the specific subsidiaries, "lines," "divisions," "brands," or "groups" that were involved in its cruises to Cuba. (the "Motion," ECF No. 131.)

For this reason, Carnival's delay arguments are without merit: the amendment serves to clarify—not expand—the scope of this case. Further, Carnival's "unfair prejudice" arguments are moot; the parties have agreed to targeted discovery related to Carnival's operations through Holland America Line—discovery that Carnival should have produced months ago. Finally, there is no need to enlarge the scheduling order for three months. There are almost three months left of discovery, which is more than sufficient time for Carnival produce whatever very limited discovery that is outstanding. If the Court is inclined to amend the scheduling order at all, Havana Docks respectfully requests that the present trial setting remain.

**I.  There is No Undue Delay.**

There is no undue delay in filing the motion.

First, Havana Docks is not seeking "to bring cruises by HAL into this case." (Opp. at 4.) Carnival's trafficking through its Holland America Line—like all of Carnival's trafficking in the Subject Property—is already within the scope of this case. (ECF No. 81 at ¶¶ 40, 41, 43, 47 ("[A]t various times from November 1, 1996 through at least May 28, 2019, Carnival did traffic, as that term is defined in 22 U.S.C. § 6023(13)(A), in the Subject Property."); 22 U.S.C. § 6023(13)(A)(iii) (parties traffic by "caus[ing], direct[ing], participat[ing] in or profit[ing] from" trafficking by another person). The purpose of the proposed second amended complaint is not to

"bring into the case cruises by Holland America," (Opp. at 4); it is to moot Carnival's argument to the contrary.

Second, in any event, there is no undue delay because Havana Docks reasonably relied on Carnival's written and oral representations that its operations in Cuba from 2016 through 2019 were limited to its Carnival Cruise Line and Fathom brands. For example, Carnival represented to Judge Becerra in another Helms-Burton case involving Carnival that:

> Fathom Travel Ltd., a wholly-owned subsidiary of Carnival Plc, sailed to Santiago on the ship Adonia from about May 2016 to June 2017. <u>Only one other Carnival brand, Carnival Cruise Line, sailed to Cuba</u>.

*Garcia Bengochea v. Carnival Corp.*, No. 19-cv-21725, D.E. 86 (S.D. Fla. Feb. 21, 2020) (emphasis added; internal citation and footnote omitted).[1] That statement is, at a minimum, incorrect; Havana Docks now knows that Carnival conducted cruises to Cuba through its Holland America Line from 2017 to 2019.

Then, at a July 9, 2020 hearing in this case before Judge McAliley, Carnival represented the following:

> MR. SINGER: First, just procedurally where we're at is, Ms. Casey is correct. There was an answer, an amended answer to the initial complaint, which focused solely on the Carnival Cruise Lines travel. <u>We sent them Fathom because when they used the period 2016, 2019, we made clear that was Fathom</u>, and those documents are being produced.

---

[1]   Counsel for Havana Docks also represented Mr. Garcia Bengochea in that action.  Recognizing that Carnival's discovery objections in both cases significantly overlapped, the parties agreed to conduct their conferral about discovery in both cases together, and Plaintiff's counsel confirmed that agreement in writing on November 27, 2019.

(ECF No. 115 at 23:1-6 (emphasis added).) But, as Havana Docks has now learned, Fathom was not the only Carnival wholly owned subsidiary[2] that traveled to Cuba within the 2016-2019 time period. Carnival did not disclose to Havana Docks or the Court that it conducted cruises to Cuba through its Holland America Line from 2017 through 2019, within the time period expressly encompassed by the Complaint.

Later in that hearing, the following colloquy occurred:

MR SINGER: So I don't want to waive the waiver argument, so to speak, by not indicating it now. And we are happy to go forward with this type of a deposition on category A, assuming they're talking about the particular companies which are identified in the complaint, in the amended complaint. That is, Carnival Cruise Lines, Costa, Air Tours and Fathom.

MS. CASEY: Your Honor, may I respond?

THE COURT: Do you agree that the limitation is to those companies, Ms. Casey?

MS. CASEY: No, I don't agree. I don't agree, your Honor. This is precisely the reason why we suggested the 30(b)(6), was because Carnival alludes to the fact that there are some other entities that may have relevant documents and then tells us that we waived the argument because we didn't identify those companies.

Your Honor, respectfully, we can't -- we are not Carnival Corporation. We don't know what we don't know. We don't know what entities have relevant documents. That's their job, and that's why we've asked for them to identify that information to us. In fact, we had a call about it this week.

(*Id.* at 47:15 – 48:9.)

Because Carnival had employed its organizational structure to obfuscate and impede discovery, Havana Docks requested, and Judge McAlilely agreed and ordered

---

[2] Carnival's organizational chart indicates that Fathom was a wholly owned subsidiary of Carnival plc and that Holland America Line is a wholly owned subsidiary of Carnival Corporation. (*See* Carnival's Organizational Chart, attached as **Exhibit A**.)

Carnival to produce its organizational chart and sit for a Rule 30(b)(6) deposition. (ECF Nos. 111, 114.) The purpose of the deposition was for Havana Docks to obtain clarity from Carnival—under oath—about its corporate structure and the entities involved in its cruises to Cuba.

With respect to the organizational chart, that document provided little clarity—it spans three 11x17-inch pages, identifies 154 entities, and requires a "Key" and 28 footnotes to decipher. (*See* **Exhibit A**.)[3]

The deposition, however, revealed helpful information. Through its designated representative, Enrique Miguez, Carnival testified under oath that it operated to Cuba under its Carnival Cruise Line, Fathom, and Holland America brands during the 2016 to 2019 time period. (Trs., Dep. of E. Miguez at 16:8 – 18:15, attached as **Exhibit B**.) With respect to Holland America, Carnival identified HAL Nederland NV (its wholly-owned subsidiary) as the owner of the Veendam, a Holland America ship that traveled to Cuba from December 2017 to April 2019. (*Id.* at 17:16 – 18:5.) That entity is identified in the proposed second amended complaint. (ECF No. 131-1 at ¶ 2.) Carnival did not disclose this until it was ordered to do so by this Court.[4]

---

[3]   A court-appointed monitor in a pending criminal proceeding in this district has identified Carnival's corporate structure as an impediment to complying with the law. *United States v. Princess Cruise Lines, Ltd.*, No. 16-cr-20897, D.E. 105 at 28-33 (S.D. Fla. Apr. 10, 2019) (Seitz, J.); *see also id.* at D.E. 75 at 2 (ordering Carnival and its brands to address the challenge of corporate structure identified by the court-appointed monitor).

[4]   Carnival's argument that its corporate affiliation with Holland America is publicly available information that Plaintiff should have been able to unravel from filings is contradicted by its own statements to this Court. In a hearing before Judge McAliley to de-designate the organizational chart (Exh. A) as confidential, Carnival represented that: "First of all, this is not in any public record" and "Simply having a

Document discovery produced on August 31, 2020 further revealed that Carnival Corporation served as Holland America's conduit to the Cuban Government—requesting, negotiating and booking berthing arrangements for the Veendam at the Subject Property. (*See* Composite **Exhibit C**.) Havana Docks did not learn this until very recently because Carnival delayed producing this information until over a year after Havana Docks served its discovery requests on August 27, 2019. *See Fisher v. Ciba Specialty Chems. Corp.*, 2005 WL 8158591, at *4 (S.D. Ala. July 19, 2005) (collecting cases, and finding no undue delay where "the record shows that plaintiffs engaged in extensive discovery efforts" and that they sought amendment shortly after "they first obtained information that they deemed sufficiently strong to support claims"); *Hester v. International Union of Operating Engineers, AFL-CIO*, 941 F.2d 1574, 1578-79 (11th Cir. 1991) (mere passage of time, without more, is insufficient reason to deny leave to amend complaint); *Carmona v. Toledo*, 215 F.3d 124, 136 (1st Cir. 2000) ("Delay that is neither intended to harass

---

list of subsidiaries, that isn't the same as this." (ECF 128 at 90:6-21.) Carnival also explained that the complex web of entities Carnival uses should not be made public because it would assist <u>other</u> plaintiffs in identifying which entities they should sue:

> MR. SINGER: In addition, it's no surprise that Carnival faces a lot of lawsuits. It is a worldwide business, and having this information out there, people can say: Well, I will sue every corporation up line from a particular entity, and that exposes us to a business burden too, so that's why -- particularly since there is absolutely no need for plaintiff to be seeking de-designation of this -- they not only can use this if for some reason they want it under seal, but we've given them a redacted org. chart that they don't have to file under seal.

(*Id.* at 91:4-13.)

nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading.").

Because there was no undue delay for the reasons explained above, Carnival's argument should be denied.

II. **There is no "Unfair Prejudice" Because the Parties Agree to the Appropriate Scope of Discovery Regarding Carnival's Operations in Cuba Through Holland America Line.**

Carnival's next argument is that it will be "unfairly prejudiced" by permitting a second amended complaint "to the extent it requires additional, burdensome document collection and production." (Opp. at 6-10.) First of all, this "additional discovery" relating to Carnival's Cuban operations through its Holland America Line should have been produced from the beginning of this case.

In any event, Havana Docks is not seeking—and does not want—Carnival to undertake "additional, burdensome document collection and production." In the weeks preceding Carnival's filing of its opposition brief, the parties engaged in extensive negotiations regarding a narrow and tailored scope of discovery relating to Carnival's operations in Cuba through its Holland America Line. (Opp. at 2 n.1, 7.) Through this process, Havana Docks relayed that it did not want Carnival to conduct broad ESI searches, and only sought specific, targeted information. In connection with the Motion, the parties reached an agreement on the following categories of documents pertaining to Carnival's operations in Cuba through its Holland America Line:

(1) Itineraries for Holland America Line cruises to Cuba, including the ports, docks, and anchorages used during that cruise, the date those ports were visited, and whether the ships tendered at a given port;

7

   (2) Revenue and profit information from Holland America Line cruises to Cuba;
   (3) Payments to the Cuban Government;
   (4) Payments to anyone in Cuba;
   (5) Payments to anyone relating to use of the Subject Property;
   (6) Contracts or agreements with the Cuban Government or any entity or person in Cuba;
   (7) Licenses, authorizations, and/or permissions and their applications with the United States Government concerning travel to Cuba and/or use of the Subject Property;
   (8) Licenses, authorization, and/or permission and their applications with the Cuban Government concerning travel to Cuba and/or use of the Subject Property; and
   (9) Studies relating to the planning, feasibility, and business opportunities of cruises to Cuba

Carnival agreed to produce these categories of documents in connection with the Motion, and it cannot claim to be prejudiced if it is required to do so. In fact, the bulk of the last four categories have likely already been produced, as Carnival informed Havana Docks that the feasibility studies relating to Cuba, contract negotiations with the Cuban government, and licensures with the Cuban and United States Governments principally occurred through Carnival. Further, in a deposition taken on October 23, 2020, Carnival's corporate designee testified that much of the payment information sought related Carnival's operations through Holland America was already compiled in prior discovery responses in this case.

### III.   An Amended Scheduling Order is Not Necessary.

The discovery deadline in this case is January 12, 2021. (ECF No. 80.) Thus, there are over two and a half months left of discovery, which is more than enough time for Carnival to produce the targeted and agreed-upon information listed above. Thus, Havana Docks does not agree that an enlargement of the discovery deadline—

8

let alone a three-month enlargement—is necessary in this case. Should the Court, however, find it appropriate to amend the scheduling order at all, Havana Docks respectfully requests that the May 10, 2021 trial setting remain unchanged.

Dated: October 23, 2020.

        Respectfully submitted,

        **COLSON HICKS EIDSON, P.A.**
        255 Alhambra Circle, Penthouse
        Coral Gables, Florida 33134
        Telephone: (305) 476-7400
        Facsimile: (305) 476-7444
        E-mail: eservice@colson.com

        By: s/ Roberto Martínez
        Roberto Martínez
        Florida Bar No. 305596
        bob@colson.com
        Stephanie A. Casey
        Florida Bar No. 97483
        scasey@colson.com
        Aziza F. Elayan-Martinez
        Florida Bar No. 92736
        aziza@colson.com
        Zachary A. Lipshultz
        Florida Bar No. 123594
        zach@colson.com

        - and -

        **MARGOL & MARGOL, P.A.**
        2029 3rd Street North
        Jacksonville Beach, Florida 32250
        Telephone: (904) 355-7508
        Facsimile: (904) 619-8741

        Rodney S. Margol
        Florida Bar No. 225428
        Rodney@margolandmargol.com

        *Attorneys for Plaintiff Havana Docks Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court. I also certify that the foregoing document is being served this 23 October 2020, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Roberto Martínez
Roberto Martínez