UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-cv-21724-BLOOM/MCALILEY

HAVANA DOCKS CORPORATION,

    Plaintiff,

vs.

CARNIVAL CORPORATION,

    Defendant.
_____/

**PLAINTIFF'S MOTION TO COMPEL EVIDENCE WITHHELD UNDER THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE**

On January 11, 2021, the Court held a hearing, among other things, on the parties' privilege log disputes. At the conclusion of the hearing, the Court ordered the parties to engage in a robust exchange of information and continue conferral on privilege issues. The Court further ordered the parties to submit a briefing schedule for the disputed privilege entries that remained after the parties' conferral. As the Court ordered, Havana Docks conferred extensively with Carnival and the parties have narrow their issues for this Court's review. The issues that remain are briefed below, and Havana Docks respectfully requests that the Court grant this motion and order Carnival to produce withheld evidence under the attorney-client privilege and work product doctrine.

## **LEGAL STANDARD** [1]

The attorney-client privilege applies to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1262 (11th Cir. 2008). In the Eleventh Circuit, the party invoking the privilege "must establish":

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Fulwood*, 569 F. App'x 691, 694 (11th Cir. 2014); *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990) (same).[2]

### I. Carnival's Communications with the Cuban Government Are Not Privileged.

Carnival asserts privilege over its communications with COMAR, S.A. ("COMAR").[3] COMAR is not a private law firm; it is an agency of the Cuban

---

[1] Federal common law of privilege applies to this suit because it arises under federal law. *See Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992); Fed. R. Evid. 501.

[2] "The attorney-client privilege 'is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose.'" *United States v. Suarez,* 820 F.2d 1158, 1160 (11th Cir. 1987), *cert. denied,* 484 U.S. 987 (1987).

[3] **Exhibit A**, Spreadsheet of Withheld COMAR Communications.

Government that specializes in maritime law and represents Aries Transportes, S.A. ("Aries"), the Cuban Government agency that operates the Subject Property. (**Exhibit A,** Dep. of Carnival's Corp. Rep. A. Perez at 44:6-45:9 (Oct. 23, 2020)) COMAR "basically advise[d] Aries and [Carnival] supposedly, you know, with respect to" their agreements. (*Id.*) In fact, the Cuban Government appointed COMAR as Carnival's representative in connection with its negotiations with the Cuban Government. (**Exhibit B**, Dep. of G. Israel, *Carnival* Case (Dec. 3, 2020) at 251:8-20.) Carnival was so concerned about COMAR's inherent conflict of interest that it hired BES, an independent law firm, not associated with the Cuban Government, because it felt that BES "was more independent and gave us separate advice." (**Exhibit A** at 44:21-45:3, 46:8-47:8 (BES "is what you would regard here as a law firm"; it was "more of an international group which we felt more comfortable with").)[4]

In effect, Carnival is asserting attorney-client privilege over communications with a department of the Cuban Government (COMAR), relating to its contract negotiations with other agencies of the Cuban Government, where both parties to the negotiation are represented by the same Cuban Government attorneys.

The attorney-client privilege only applies to confidential communications. *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003). "To determine if a particular

---

[4]   *See also* **Exhibit C**, Report of G. Israel re Summary of Meetings with Cuban Government (Mar. 11, 2015) ("A meeting at Comar offices in Havana. Comar is the legal agency within the ministry of Transport that also acts as Carnival Corporation lawyers as it relates to any agreements with government agencies in Cuba. Participating from Comar were Maria Elena Garcia Fernandez the President of Coma [sic] and Leica Curbelo Garcia 'our' lawyer at the agency.").

3

communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential.'" *Id*. (quoting *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985)). "Thus the relevant inquiry is not whether [Carnival] expected [its] discussions with [COMAR] to remain confidential, but rather, whether [its] expectation was reasonable." *Bell*, 776 F.2d at 971 (emphasis added). And where a party knew or should have known of grounds to question the loyalty of the person with whom it was conversing, the reasonableness of a party's expectation of confidentiality in that communication is doubtful. *United States v. Melvin*, 650 F.2d 641, 645-46 (5th Cir. Unit B 1981) ("There are definite indications that the defense camp had some reservation about Powell's loyalty and were attempting to keep him in the fold. If they did question Powell's loyalty, they may not have had a reasonable expectation that whatever was said to Powell would remain confidential.").[5, 6]

Here, Carnival did not have a reasonable expectation of confidentiality over its conversations with COMAR. For one, a private party does not have an expectation of

---

[5]   "In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) we adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981." *Bell*, 776 F.2d at 971 n.14.

[6]   "In their actual decisions, courts almost invariably inquire into whether a reasonable person would have expected the communication to reach only other privileged persons in the circumstances and not into the actual, subjective state of mind of the communicating person. That is the approach stated in the section." Restatement (Third) of the Law Governing Lawyers § 71 Attorney-Client Privilege— "In Confidence," Reporters Note to Comment B (2020).

4

confidentiality over its conversations with attorneys of a communist government, and Havana Docks has found no authority to the contrary. Havana Docks has also not found any court ruling finding confidential a party's communications with an attorney who represented both sides of a negotiation. If anything, case law appears to support the opposite. *Cf. Trinity Amb. Serv., Inc. v. G&L Amb. Serv., Inc.*, 578 F. Supp. 1280, 1285 (D. Conn. 1984) ("The expectation that information conveyed to a co-party's counsel will be held in confidence from that attorney's client is no more plausible than the expectation that an attorney concurrently representing parties in the execution of a joint venture or franchise agreement will keep information relayed to him by one party secret from the other."). Yet Carnival's expectation of confidentiality is even lower than that here, where its attorneys and negotiating opponents are all departments of the communist Cuban Government. Indeed, Carnival was so concerned about COMAR's inherent conflict that it retained separate outside Cuban counsel, not associated with the Cuban Government, to serve as its independent legal advisers. (**Exhibit A** at 44:6-24.)

In other words, Carnival <u>in fact</u> harbored doubt as to the loyalty of COMAR.[7] Thus, any expectation of confidentiality that Carnival had over its communications with that Cuban Government agency was not reasonable, and the Court should order Carnival to produce its exchanges with COMAR. *Bogle*, 332 F.3d at 1358; *Bell*, 776

---

[7] *See* **Exhibit D**, Recap of Meetings with Cuban Government from July 21, 2017 Trip, HavanaDocks_0483850 at 2 ("COMAR IS A LOST CAUSE").

F.2d at 971; *Melvin*, 650 F.2d at 645-46; **Exhibit A**, Spreadsheet of Withheld COMAR Communications.

## II. Reports of Carnival's Trips to Cuba and Meetings with the Cuban Government Are Not Privileged.

During the course of its business in Cuba, Carnival adopted a policy of designating its reports of trips to Cuba and meetings with Cuban Government as attorney-client privileged and confidential.[8] Havana Docks has identified nine such reports that remain withheld under a claim of privilege. (**Exhibit F**, Spreadsheet of Meeting and Trips Reports.) These reports, however, do not involve the rendition of solicitation of legal advice, and the Court should overrule Carnival's asserted privilege over them. *See Campero USA Corp. v. ADS Foodservice LLC*, 916 F. Supp. 2d 1284, 1290 n.6 (S.D. Fla. 2012) (McAliley, Mag. J.) ("For the attorney-client privilege to attached, it is fundamental that the party claiming privilege show that the primary purpose of the communication was to obtain legal advice, not business advice.").

### PRIV_0002490 and PRIV_0002491.

These documents are an email and its attachment containing minutes of a meeting between Carnival and Aries, the Cuban Government agency that operates the Subject Property. The minutes appear to have been transcribed by COMAR. In discovery, Carnival produced other meeting minutes which are essentially

---

[8] *See* **Exhibit E**, Email from G. Israel to S. Brid (Oct. 19, 2015), HavanaDocks_0457616 at 2 (describing Carnival's practice of designating reports of its trips to Cuba and meetings with the Cuban Government as attorney client privilege).

transcripts of the meeting, drafted by COMAR pertaining to Carnival's meetings with the Cuban Government.[9] The Court should order the production of PRIV_0002490 and PRIV_0002491 because a transcript of a meeting between Carnival and Aries does not involve the solicitation or rendition of legal advice. *Campero USA Corp.*, 916 F. Supp. 2d at 1290 n.6; *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987) ("minutes of business meetings attended by attorney are not automatically privileged"). Nor does the substance of Carnival's communications with third parties (such as Aries and other agencies of the Cuban Government) at these meetings qualify as confidential or otherwise subject to protection under the attorney client privilege. *See, e.g., Strougo v. BEA Assocs.*, 199 F.R.D. 515, 525-26 (S.D.N.Y. 2001) (overruling privilege assertion over minutes of meeting attended by third party).

**PRIV_0003555 and PRIV_0003556**.

These documents are emails between two non-lawyers (Fernando Perez and Carlos Estrada) that have been withheld on the basis of attorney-client privilege. The records are described as pertaining to "negotiations with Cuban entities." Based on other discovery produced by Carnival, these emails appear to be a recap of meetings in early December 2018 between Carnival and the Cuban Government relating to its use of the Subject Property and the prospect of tendering in the Port of Havana, a core issue in this case. The Court should overrule Carnival's assertion of privilege

---

[9] *See also Arlen House East Condo. Assoc., Inc. v. QBE Ins. (Europe) Ltd.*, 2008 WL 11333859, *5 (S.D. Fla. Aug. 27, 2008) (McAlilely, Mag. J.) ("Where a lawyer is engaged to advise a person as to business matters as opposed to legal matters, or when he is employed to act simply as an agent to perform some non-legal activity for a client . . . there is no privilege.")

7

over PRIV_0003555 and PRIV_0003556 because they are communications between two non-lawyers that recap a meeting with the Cuban Government and discuss other business and non-legal matters. *See Campero USA Corp.*, 916 F. Supp. 2d at 1290 n.6; *see also Arlen*, 2008 WL 11333859, at *4 ("A claim of attorney-client privilege raised by a corporation is subject to a 'heightened level of scrutiny.'").

**PRIV_0000579, PRIV_0000580, PRIV_0002332 and PRIV_0002333.**

The last four documents are emails and attachments, sent February 13, 2019, recapping a meeting between Carnival and agencies of the Cuban Government during a trip to Havana on February 7 and 8, 2019. The subject line and description of these privilege log entries reflect that the substance of these communications are reports of a meeting with the Cuban Government where "[f]uture plans for Havana Ports" was discussed. Carnival's General Counsel, Arnaldo Perez, is included on this email thread, but the remaining five individuals (Giora Israel, Fernando Perez, Carlos Estrada, Oscar Pascual, Emanuel Colina) are not lawyers and are involved in Carnival's business operations in Cuba. The Court should order Carnival to produce PRIV_0000579, PRIV_0000580, PRIV_0002332 and PRIV_0002333 because neither reports of Carnival's meetings with the Cuban Government nor communications discussing "future plans for Havana Ports" are "communications in which legal advice is sought or given" that are subject to protection under the attorney-client privilege. *Diamond Resorts U.S. Collection Dev., LLC. v. US Consumer Att'ys, P.A.*, 2021 WL 505122, --- F. Supp. 3d ---- (Feb. 11, 2021) (Reinhart, Mag. J.) (citing Restatement (Third) of the Law Governing Lawyers § 68 (2000)).

[redacted]

However, the law is clear that lobbying and political advice, even when provided by a lawyer (which does not appear to be the case here), does not qualify as "legal advice" and is therefore not subject to the attorney-client privilege. *See, e.g., In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (attorney's "advice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege" (citing 1 MCCORMICK ON EVIDENCE §

9

88, at 322-24 (4th ed. 1992)); *id.* at 1106 (Tatel, J., concurring in part) ("The attorney-client privilege does not protect general policy or political advice—even when given by lawyers—but only communications with lawyers 'for the purpose of obtaining legal assistance.'"); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2016 WL 9781826, *4 (N.D. Ala. March 24, 2016) ("Absent evidence of a nexus between the work of these third parties and the formulation of legal advice by counsel for AAI, the undersigned is left to conclude that the attorney-client privilege is universally inapplicable to the disputed documents, as it is well established that lobbying and public relations communications do not come within the privilege on their own accord."); *N. Carolina Electric Mem. Corp. v. Carolina Power & Electric Co.,* 110 F.R.D. 511, 517 (M.D.N.C. 1986) ("Although these 'lobbying' efforts seem to have been coordinated by the legal department, the resultant communications do not refer to legal problems but instead are summaries of various town meetings or reports on the progress of the EPIC project. Such communications from counsel to management are not legal advice. Nor are updates on lobbying activities requests for legal advice.") (citations omitted).[10]

Nor do lobbying documents qualify for protection under the work product doctrine, even when directed towards a particular litigation. *Ala. Aircraft*, 2016 WL

---

[10] "Where in-house counsel is acting as a business negotiator, general business agent, preparer of tax returns, lobbyist, public relations strategist, or press agent, the privilege does not apply. That is, where businesses use their attorneys for non-legal purposes to promote the interests of the corporation, their communications are not protected by the privilege." John K. Villa, *The Attorney-Client Privilege and In-House Corporate Counsel*, 1 Corporate Counsel Guidelines § 1:16 (2020) (alteration and footnotes omitted; collecting cases).

9781826, at *5; *P.B. & Marina P'ship v. Logrande*, 136 F.R.D. 50, 58-59 (E.D.N.Y. 1991) ("Seaview's use of a lobbyist appears to have been intended to avert litigation by applying political pressure to federal agencies which could affect plaintiffs' marina operation. As such, the correspondence from Seaview's lobbyist was not directed towards anticipated litigation but rather toward non-litigation means that could achieve the same results in lieu of litigation. Such efforts are not equivalent to litigation nor subject to the work-product immunity."); *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 389-91 (M.D.N.C.) (similar).

███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

---

11    *See also In re Signet Jewelers Ltd. Secs. Litig.*, 332 F.R.D. 131, (S.D.N.Y. 2019) ("Defendants redacted from the email a set of 'talking points' regarding this lawsuit, as well as statements to be made to the press. This document is not directed a giving or obtaining legal advice, but relates to 'messaging.'") (citation omitted).

11

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████

### IV. The Other Lobbying Communications Should be Produced.

Carnival also withholds an email chain from January 2019 pertaining to its discussions with Senator Marco Rubio. (**Exhibit G**, Spreadsheet of Lobbying Communications.) The three emails withheld were sent by Arnold Donald, Carnival's President and CEO, and Ms. Bondi, neither of which are attorneys. The substance of this email thread appears to be related to efforts to lobby a member of the United States Senate, rather the rendition or solicitation of legal advice. Thus, these emails are not subject to the attorney-client privilege and should be produced. *In re Lindsey*, 148 F.3d at 1106; *Carolina Power,* 110 F.R.D. at 517; *Ala. Aircraft*, 2016 WL 9781826, at *4-*5; *P.B. & Marina,* 136 F.R.D. at 58-59; *Duke Energy Corp.*, 214 F.R.D. at 389-91.

### V. Documents Pertaining to Costa's Cuba Operations Should be Produced.

Finally, Carnival withheld essentially all documents pertaining to Costa Crociere's operations in Cuba. In fact, based on Carnival's production of records thus far, it appears that Carnival's search for records on this subject was limited to those in the possession of its legal department. Carnival asserted privilege over these

records, and Havana Docks now challenges two of those privilege invocations. (**Exhibit H**, Spreadsheet of Costa Records.)

### PRIV_0003573.

This document appears to be a letter relating to the termination of a joint venture between Milestone (a subsidiary of Costa Crociere), Silares (a corporation affiliated with Costa that operated the Subject Property in the mid-1990s), and another corporation (ICC). The letter was drafted by Alfonso Lavarello and sent to Howard Frank (a Carnival executive), Harry Coe (an AirTours executive), Franco Pellicari (a Costa executive), and Alfredo Rossi (a Costa executive). Mr. Lavarello is the individual who ran the successor company to Silares and operated the Subject Property from 1998 to approximately 2005. From what Havana Docks learned through the conferral process, none of these individuals are attorneys, and the document appears to be a letter sent to executives at companies involved in a deal to discuss business. Thus, this letter is not a communication between a client and lawyer requesting or providing legal advice, and the Court should order PRIV_0003573 produced.

### PRIV_0003575.

This document is a draft letter written by Alfonso Lavarello related to the termination of the joint venture between Silares, ICC and Milestone. Mr. Lavarello is not an attorney and the letters he drafts are not subject to the attorney-client privilege. Havana Docks respectfully requests that the Court order that PRIV_0003575 be produced.

13

## CONCLUSION

For the forgoing reasons, Havana Docks respectfully requests that the Court grant this motion and order Carnival to produce evidence withheld under the attorney client privilege and work product doctrine.

Dated: March 23, 2021.

                                            Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: s/ Roberto Martínez
Roberto Martínez, Esquire
Florida Bar No. 305596
bob@colson.com
Stephanie A. Casey, Esquire
Florida Bar No. 97483
scasey@colson.com
Zachary Lipshultz
Florida Bar No. 123594
zach@colson.com
Aziza F. Elayan-Martínez, Esquire
Florida Bar No. 92736
aziza@colson.com

- and -

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

Rodney S. Margol, Esquire

>Florida Bar No. 225428
>Rodney@margolandmargol.com
>
>*Attorneys for Plaintiff Havana Docks Corp.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court. I also certify that the foregoing document is being served this 23rd of March, 2021, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>By: s/ Roberto Martínez
>Roberto Martínez