# **EXHIBIT "196"**

# Filed Under Seal

February 22, 2019

**Havana Docks vs. Carnival**
**P-183**
**Donald, 072921, SS**

The Honorable Michael R. Pompeo
United States Secretary of State
U.S. Department of State
2201 C Street NW
Washington, DC 20520

Re: Title III of the Helms-Burton Act

Dear Mr. Secretary:

Recently, the Trump Administration indicated it would be reviewing whether the U.S. government would continue to suspend Title III of the Helms-Burton Act ("the Act") as has been done since 1996. Over the past two decades, every President and Secretary of State has suspended this section of the law over concerns that the provision, while envisaged to increase pressure on the Cuban government, would potentially be injurious to the American business community, the U.S. legal system, American foreign alliances, and it would not advance efforts to support the Cuban people. CLIA is concerned that any break in the Administration's precedent with respect to Title III of the Act would be disruptive and create uncertainty in CLIA Member's business operations in Cuba.

While it is uncertain how enabling Title III of the Act would be interpreted by U.S. courts, U.S. businesses, that were not active in Cuba in 1996 but are today, would now face exposure to a new legal risk in U.S. courts. Title III prohibitions include engaging in a commercial activity using or otherwise benefiting from confiscated property by the Cuban government. The Act creates a claim on behalf of U.S. nationals, including U.S. citizens who were Cuban nationals at the time of expropriation, to sue those companies in U.S. courts whose business operations include "using or otherwise benefiting from confiscated property." It is foreseeable that U.S. nationals will test the bounds of the Act against U.S. companies in U.S. federal courts if their business activities arguably meet this test. For example, U.S. airlines authorized by the U.S. government to operate flights into Cuba could potentially be subject to Title III litigation for using airport facilities built on land subject to a claim. The same risk could apply to U.S. based cruise ships docking at affected seaports. Such an outcome would undermine the National Security Presidential Memorandum on Cuba (NSPM-5) and the U.S. government's stated efforts to hold harmless U.S. companies doing business in Cuba in full compliance with U.S. regulations, under a general or specific license. In this regard, CLIA notes the definitions of the Act, exclude the Act's application to transactions and uses of confiscated property "incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." Assuming further action is taken to activate Title III of the Act, CLIA would request that any such enabling order policy or rule on the subject clarify the lawful travel exclusion applies to cruise ships calling at Cuban ports.

Given the time, resources, and effort that CLIA Members have invested in Cuba in support of U.S. policy, it would be manifestly unjust to make them targets for lawsuits for activities approved by the U.S. government. Consistent with U.S. policy, CLIA Members are, in fact, presently supporting the entrepreneurial efforts of the Cuban people directly. The subsequent uncertainty created by activating Title III would have a financial impact on companies currently legally operating in Cuba. Both U.S. and international banks, as well as, other financial institutions, would be wary of continuing to work with companies operating in Cuba as it dramatically increases the risk faced by financial institutions and other

Honorable Michael R. Pompeo
United States Secretary of State
February 22, 2019
Page 2

businesses alike. Further, activating Title III would be viewed by U.S. trade partners, including the European Union, United Kingdom, Canada and Mexico, as reneging on the 1998 Memorandum of Understanding between the U.S. and EU, that resolved the EU's objection filed with the World Trade Organization contesting the extraterritorial application of US law penalizing third countries doing business in Cuba. And lastly, if not most importantly, NSPM-5 specifically states the purpose of the new policy is to "promote a stable, prosperous, and free country for the Cuban people." In addition, the policy aims to "foster free markets and free enterprise." As the U.S. government undertakes the implementation of NSPM-5, it is important to note that Title III of the Act would undermine this effort by creating massive uncertainties that would have consequences counter to the Memorandum's stated objectives.

We thank you for your time and consideration to this important matter. We would welcome the opportunity to meet with you or a member of your team to discuss CLIA's concerns outlined in this letter.

Sincerely,

Adam Goldstein
Global Chairman, Cruise Lines International Association
Vice Chairman, Royal Caribbean Cruises Ltd.

Kelly Craighead
President & CEO
Cruise Lines International Association

Arnold Donald
CEO
Carnival Corporation & plc.

Frank Del Rio
CEO
Norwegian Cruise Line Holdings

Charles A. Robertson
Chairman & CEO
American Cruise Line and Pearl Seas Cruises

Pierfrancesco Vago
Executive Chairman
MSC Cruises