# EXHIBIT 85

                UNITED STATES DISTRICT COURT

                SOUTHERN DISTRICT OF FLORIDA

                     MIAMI DIVISION


HAVANA DOCKS CORPORATION,

        Plaintiff,      CASE NO.: 19-cv-21724-BLOOM

vs.

CARNIVAL CORPORATION, d/b/a

CARNIVAL CRUISE LINES, a foreign

Corporation,

        Defendants.

_____/

HAVANA DOCKS CORPORATION,

        Plaintiff,      CASE NO.:19-cv-23588-BLOOM/Louis

vs.

MSC CRUISES (USA), INC., MSC

CRUISES SA CO., and MSC CRUISES

S.A.,

        Defendants.

_____/

HAVANA DOCKS CORPORATION,

        Plaintiff,      CASE NO.:19-cv-23590-CIV-BLOOM/LOUIS

vs.

CARNIVAL CORPORATION, d/b/a

CARNIVAL CRUISE LINES, a foreign



Page 2

```
 1    Corporation,
 2        Defendants.
 3    _____/
 4    HAVANA DOCKS CORPORATION,
 5        Plaintiff,     CASE NO.: 19-cv-23591-BLOOM/Louis
 6    vs.
 7    NORWEGIAN CRUISE LINES HOLDINGS
 8    LTD.,
 9        Defendants.
10    _____/
11
12              VIDEOCONFERENCE DEPOSITION
13                   OF DEANNA KIM
14                   APRIL 14, 2021
15                  4:05 P.M. - 4:40 P.M.
16                      - - -
17
18
19
20
21
22
23    Reported by:
24    Alexandra Renee Cuellar
25    Notary Public, State of Florida
```

Page 3

```
 1              A P P E A R A N C E S:
 2
 3    On behalf of the Plaintiff:
 4    ZACHARY A. LIPSCHULTZ, ESQUIRE
 5    COLSON HICKS EIDSON, PA
 6    255 Alhambra Circle, Penthouse
 7    Coral Gables, Florida 33134
 8    (305) 476-7419
 9    zach@colson.com
10
11    On behalf of the Defendant, Royal Caribbean Cruises LTD:
12    SCOTT D. PONCE, ESQUIRE
13    CAITLIN F. SALADRIGAS, ESQUIRE
14    HOLLAND & KNIGHT LLP
15    701 Brickell Avenue, Suite 3300
16    Miami, Florida 33131
17    (305) 374-8500
18    sponce@hklaw.com
19    Caitlin.saladrigas@hklaw.com
20
21    On behalf of the Defendant, MSC Cruises (USA), Inc., MSC
22    Cruises SA CO, and MSC Cruises, SA:
23    J. DOUGLAS BALDRIDGE, ESQUIRE
24    JUSTIN B. NEMEROFF, ESQUIRE
25    VENABLE LLP
```

Page 4

```
 1              A P P E A R A N C E S:
 2                   (Con't)
 3
 4    600 Massachusetts Avenue
 5    Washington, D.C. 20001
 6    (202) 344-4703
 7    jbaldridge@venable.com
 8
 9    On behalf of the Defendant, Carnival Corporation d/b/a
10    Carnival Cruise Lines, a foreign corporation:
11    COREY P. GRAY, ESQUIRE
12    MEREDITH SCHULTZ, ESQUIRE
13    BOIES SCHILLER FLEXNER LLP
14    401 East Las Olas Boulevard, Suite 1200
15    Ft. Lauderdale, Florida 33301
16    (954) 356-0011
17    cgray@bsfllp.com
18    Mschultz@bsfllp.com
19
20    On behalf of the Defendant, Norwegian Cruise Line
21    Holdings, LTD.:
22    ALLEN P. PEGG, ESQUIRE
23    DANIEL BALMORI, ESQUIRE
24    NATHALIE M. DE ALMAGRO, ESQUIRE
25    HOGAN LOVELLS US LLP
```

Page 5

```
 1              A P P E A R A N C E S:
 2                   (Con't)
 3
 4    600 Brickell Avenue, Suite 2700
 5    Miami, Florida 33131
 6    (305) 459-6500
 7    allen.pegg@hoganlovells.com
 8    Daniel.balmori@hoganlovells.com
 9    Nathalie.dealmagro@hoganlovells.com
10
11    On behalf of the witness, Deanna Kim:
12    ZAKARIJ N. LAUX, ESQUIRE
13    UNITED STATES ATTORNEY'S OFFICE
14    SEMRA A. MESULAM, ESQUIRE
15    US DEPARTMENT OF STATE
16    99 Northeast 4th Street, Fl 3
17    Miami, Florida 33132
18    600 19th Street, NW
19    Washington, DC 20520
20    (305) 961-9003
21    (202) 485-8677
22    zakarik.laux@usdoj.gov
23    Mesulamsa@state.gov
24
25
```

2 (Pages 2 to 5)





Page 6

I N D E X

| | | |
|---|---|---|
| Examination of Deanna Kim | | PAGE |
| By Ms. Cuellar | | 9 |
| Acknowledgment of Deponent | | 27 |
| Certificate of Reporter | | 30 |

E X H I B I T S

DEFENDANT'S

| EXHIBITS | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | E-mail | Off the |
| | | record |
| EXHIBIT 2 | Correspondence | 8 |

Page 7

[P R O C E E D I N G S:]

Whereupon, Deanna Kim, a witness of lawful age, was duly sworn under oath in accordance with the law, was examined and testified as follows:

MR. LAUX:  All right.  Before we get started everyone, as you know, my name is Zakarij Laux.  I'm with the United States Attorney's Office, here on behalf of the witness, in her official capacity as an employee of the Department of State.

The witness, Ms. Deanna Kim, is appearing today in her official capacity as an employee of the Department of State.  And so, this deposition is governed by the Department of State's Touhy Regulations, that's T-O-U-H-Y, which could be found at 22 CFR, Sections 172.1 through 172.9.  The permitted scope of questioning for this deposition is limited to the areas of inquiry.  That be, Defendant cruise lines described in their initial request letter to me, dated November 5th, 2020.

And the scope of Ms. Kim's authorization to testify today is set out in my letter to Ms. Kim dated February 19th, 2021, which all parties here today have received a copy of and which I would ask be marked as Exhibit 2 to this deposition.  And I understand that that correspondence has already been

Page 8

provided to the court reporter to be included with the transcript.

- - -

(Whereupon, Exhibit 2 was marked for identification.)

- - -

MR. LAUX:  Given her limited authorization to testify, I caution the witness, Ms. Kim, at the outset that you are not authorized to testify beyond the scope described in Exhibit 2.  To the extent a question could be interpreted as requiring you to do so.  I also make a standing objection to the extent any question would require Ms. Kim to testify beyond her authorization to do so.

I reserve the right to instruct the witness not to answer any questions that are beyond the authorized scope.  But given that today's deposition is preceding under Rule 31, and all of today's questions have been circulated prior to the start of the deposition, I do not foresee the need to exercise that right.

And with that, I would allow Ms. Kim to be asked the written Rule 31 questions.

COURT REPORTER:  Thank you.

EXAMINATION

Page 9

BY MS. CUELLAR:

Q.   Direct question Number 1: Please state every job title you have held at the United States Department of State including the corresponding dates of employment for each position.

A.   I'm currently the principal officer at the U.S. Consulate General in Nuevo Laredo, Mexico.  I arrived here August of 2020.  Before that, I was the Deputy Director in the Office of the Coordinator for Cuban Affairs, I arrived there at the end of June in 2018, and that was in Washington, D.C.  Before that, I was the Deputy Director in the Office of State Defense Integration in Washington, D.C., beginning in May 2017.  Prior to that, I was Deputy Director in the Office of International Security Operations, also in Washington, D.C., beginning July 2016.

Before that, I was a Policy Coordination Officer in the Bureau of Human Resources, Office of Policy Coordination, again in Washington, D.C., and I started that July 2015.  Prior to that, I was a Special Projects Officer, in the Office of Maritime Southeast Asian Affairs, that began in 2014, August, also in Washington, D.C.  Prior to that assignment, I was a Political Unit Chief at the U.S. Embassy in Singapore, beginning August 2011.  Before that assignment, I served



Page 10

1    in Taipei as a Political Officer at the American
2    Institute in Taipei, beginning August 2008.
3          Prior to that, I was a Duty Officer in the
4    White House situation room, in Washington, D.C., that
5    assignment began in June 2005.  Before that, I was a
6    Watch Officer in the State Department Operations Center,
7    beginning May 2004.  Prior to that, I was a Consulate
8    Officer at the U.S. Embassy in Asuncion, Paraguay,
9    beginning April 2002.  And before that, I was a Staffing
10   Aide to the U.S. Ambassador to Korea and an Economic
11   Officer at the U.S. Embassy in Korea, and that began in
12   August of 1999.
13         Q.  Okay.  Direct question Number 2: What is the
14   role of the Office of Cuban Affairs at the United States
15   Department of State?
16         MR. LAUX:  And I would object to this question
17   on the basis of form, and just clarify for the record
18   that the official title of the office referenced in
19   that question, is the Bureau of Western Hemisphere
20   Affairs Office of the Coordinator for Cuban Affairs.
21         But for every question that refers to the
22   Office of Cuban Affairs, I would just instruct the
23   witness that that is the office that is being
24   referred to.
25         Ms. Kim, you may answer the question.

Page 11

1    BY MS. CUELLAR:
2          A.  Okay.  So, can you repeat the question?  I'm
3    sorry.
4          Q.  Sure.  What is the role of the Office of Cuban
5    Affairs at the United States Department of State?
6          A.  The Bureau of Western Hemisphere Affairs Office
7    of the Coordinator of Cuban Affairs is the focal point
8    for the United States Government for developing,
9    coordinating, recommending, and executing U.S. Policy on
10   Cuba.
11         Q.  Okay.  Cross question from Plaintiff 2.1: Does
12   the Office of Cuban Affairs provide opinion testimony
13   based upon information acquired by its employees in the
14   scope and performance of their official Department duties
15   to litigants that do not include the United States or a
16   party represented by the Department of Justice?
17         A.  I haven't been with the Office of Cuban Affairs
18   since June of 2020, but, to the best of my knowledge, no.
19         Q.  Okay.  Cross question from Plaintiff 2.2: Does
20   the Office of Cuban Affairs provide expert testimony
21   based upon information acquired by its employees in the
22   scope and performance of their official Department duties
23   to litigants that do not include the United States or a
24   party represented by the Department of Justice?
25         A.  Again, I haven't worked there since June of

Page 12

1    2020, but, to the best of my knowledge, no.
2          Q.  Cross question from Plaintiff 2.3: Does the
3    Office of Cuban Affairs provide opinion testimony about
4    its interpretation of a U.S. Statute in a lawsuit
5    involving litigants that do not include the United States
6    or a party represented by the Department of Justice?
7          A.  Not to the best -- to my knowledge, no.
8          Q.  Cross question from Plaintiff 2.4: Does the
9    Office of Cuban Affairs provide expert testimony about
10   its interpretation of a U.S. Statute in a lawsuit
11   involving litigants that do not include the United States
12   of a party represented by the Department of Justice?
13         A.  Not to my knowledge, no.
14         Q.  Okay.  Question 2.5: Does the Office of Cuban
15   Affairs provide opinion testimony about the legal
16   consequences of a U.S. Statute in a lawsuit involving
17   litigants that do not include the United States or a
18   party represented by the Department of Justice?
19         A.  Again, I have not been with the Office of Cuban
20   Affairs since June 2020, but, as far as I know, no.
21         Q.  Okay.  Question 2.6: Does the Office of Cuban
22   Affairs provide expert testimony about the legal
23   consequences of a U.S. Statute in a lawsuit involving
24   litigants that do not include the United States or a
25   party represented by the Department of Justice?

Page 13

1          A.  As I stated before, I have not been with
2    the Office of Cuban Affairs since June 2020, and to the
3    best of my knowledge, the answer is no.
4          Q.  Okay.  Question 2.7: Does the Office of Cuban
5    Affairs provide opinion testimony about its
6    interpretation of Title III of the Cuban Liberty and
7    Democratic Solidarity Act, 22 U.S.C. § 6021, et seq,
8    also known as the LIBERTAD Act, in a lawsuit involving
9    litigants that do not include the United States or a
10   party represented by the Department of Justice?
11         A.  To the best of my knowledge, no.
12         Q.  Okay.  2.8: Does the Office of Cuban Affairs
13   provide expert testimony about its interpretation of
14   Title III of the Cuban Liberty and Democratic Solidarity
15   Act, 22 U.S.C. § 6021, et seq, also known as the LIBERTAD
16   Act, in a lawsuit involving litigants that do not include
17   the United States or a party represented by the
18   Department of Justice?
19         A.  To the best of my knowledge, no.
20         Q.  Okay.  2.9: Does the Office of Cuban Affairs
21   provide opinion testimony about the legal consequences of
22   Title III of the Cuban Liberty and Democratic Solidarity
23   Act, 22 U.S.C. § 6021, et seq, also known as the LIBERTAD
24   Act, in a lawsuit involving litigants that do not
25   include the United States or a party represented by the



Page 14

1    Department of Justice?
2       A.   To the best of my knowledge, no.
3       Q.   Okay.  2.10: Does the Office of Cuban Affairs
4    provide expert testimony about the legal consequences of
5    Title III of the Cuban Liberty and Democratic Solidarity
6    Act, 22 U.S.C. § 6021, et seq, also known as the LIBERTAD
7    Act, in a lawsuit involving litigants that do not include
8    the United States or a party represented by the
9    Department of Justice?
10      A.   To the best of my knowledge, no.
11      Q.   Okay.  2.11: Are you providing expert testimony
12   in this lawsuit about the application of Title III of the
13   Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. §
14   6021, et seq, also known as the LIBERTAD Act, to the
15   Defendant's commercial transactions at the Sierra Maestra
16   Terminal?
17      A.   No, and that would be beyond the scope of my
18   authority to testify in this matter.
19      Q.   Okay.  Question 2.12: Are you providing opinion
20   testimony in this lawsuit about the application of Title
21   III of the Cuban Liberty and Democratic Solidarity Act,
22   22 U.S.C. § 6021, et seq, also known as the LIBERTAD Act,
23   to the Defendant's commercial transactions at the Sierra
24   Maestra Terminal?
25      A.   No, and doing so would be beyond the scope of

Page 15

1    my authority to testify in this matter.
2       Q.   Okay.  Direct Question Number 3: What job
3    duties or responsibilities did you have as the Acting
4    Coordinator or Deputy Director for Cuban Affairs at the
5    Department of State?
6       A.   My duties were to oversee and manage the
7    day-to-day operations of the office, to develop our staff
8    and personnel, to ensure we were providing good product,
9    advice and implementation of the policies of the State
10   Department.
11      Q.   Okay.  Cross Question from Plaintiff 3.1: Did
12   your job duties or responsibilities as the Acting
13   Coordinator or Deputy Director for Cuban Affairs at the
14   Department of State include providing expert testimony
15   based upon information acquired by you in the scope and
16   performance of your official Department duties to
17   litigants that do not include the United States or a
18   party represented by the Department of Justice?
19      A.   No.
20      Q.   Question 3.2: Did your job duties or
21   responsibilities as the Acting Coordinator or Deputy
22   Director for Cuban Affairs at the Department of State
23   include providing opinion testimony based upon
24   information acquired by you in the scope and performance
25   of your official Department duties to litigants that do

Page 16

1    not include the United States or a party represented by
2    the Department of Justice?
3       A.   No.
4       Q.   Question 3.3: Did your job duties or
5    responsibilities as the Acting Coordinator or Deputy
6    Director for Cuban Affairs at the Department of State
7    include providing expert testimony interpreting a U.S.
8    Statute in a lawsuit involving litigants that do not
9    include the United States or a party represented by the
10   Department of Justice?
11      A.   No.
12      Q.   Question 3.4: Did your job duties or
13   responsibilities as the Acting Coordinator or Deputy
14   Director for Cuban Affairs at the Department of State
15   include providing opinion testimony interpreting a U.S.
16   Statute in a lawsuit involving litigants that do not
17   include the United States or a party represented by the
18   Department of Justice?
19      A.   No.
20      Q.   Question 3.5: Did your job duties or
21   responsibilities as the Acting Coordinator or Deputy
22   Director for Cuban Affairs at the Department of State
23   include providing expert testimony about the legal
24   consequences of a U.S. Statute in a lawsuit involving
25   litigants that do not include the United States or a

Page 17

1    party represented by the Department of Justice?
2       A.   No.
3       Q.   Question 3.6: Did your job duties or
4    responsibilities as the Acting Coordinator or Deputy
5    Director for Cuban Affairs at the Department of State
6    include providing opinion testimony about the legal
7    consequences of a U.S. Statute in a lawsuit involving
8    litigants that do not include the United States or a
9    party represented by the Department of Justice?
10      A.   No.
11      Q.   Question 3.7: Did your job duties or
12   responsibilities as the Acting Coordinator or Deputy
13   Director for Cuban Affairs at the Department of State
14   include providing expert testimony interpreting Title III
15   of the Cuban Liberty and Democratic Solidarity Act, 22
16   U.S.C. § 6021, et seq, also known as the LIBERTAD Act, in
17   a lawsuit involving litigants that do not include the
18   United States or a party represented by the Department of
19   Justice?
20      A.   No.
21      Q.   Question 3.8: Did your job duties or
22   responsibilities as the Acting Coordinator or Deputy
23   Director for Cuban Affairs at the Department of State
24   include providing opinion testimony interpreting Title
25   III of the Cuban Liberty and Democratic Solidarity Act,



Page 18

1   22 U.S.C. § 6021, et seq, also known as the LIBERTAD Act,
2   in a lawsuit involving litigants that do not include the
3   United States or a party represented by the Department of
4   Justice?
5       A.   No.
6       Q.   Question 3.9: Did your job duties or
7   responsibilities as the Acting Coordinator or Deputy
8   Director for Cuban Affairs at the Department of State
9   include providing expert testimony about the legal
10  consequences of the Cuban Liberty and Democratic
11  Solidarity Act, 22 U.S.C. § 6021, et seq, also known as
12  the LIBERTAD Act, in a lawsuit involving litigants that
13  do not include the United States or a party represented
14  by the Department of Justice?
15      A.   No.
16      Q.   Question 3.10: Did your job duties or
17  responsibilities as the Acting Coordinator or Deputy
18  Director for Cuban Affairs at the Department of State
19  include providing opinion testimony about the legal
20  consequences of Title III of the Cuban Liberty and
21  Democratic Solidarity Act, 22 U.S.C. § 6021, et seq, also
22  known as the LIBERTAD Act, in a lawsuit involving
23  litigants that do not include the United States or a
24  party represented by the Department of Justice?
25      A.   No.

Page 19

1       Q.   Question 3.11: Did your job duties or
2   responsibilities as the Acting Coordinator or Deputy
3   Director for Cuban Affairs at the Department of State
4   include providing opinion testimony about the legal
5   consequences of Title III of the Cuban Liberty and
6   Democratic Solidarity Act, 22 U.S.C. § 6021, et seq, also
7   known as the LIBERTAD Act, in this lawsuit?
8       A.   No.
9       Q.   Question 3.12: Did your job duties or
10  responsibilities as the Acting Coordinator or Deputy
11  Director for Cuban Affairs at the Department of State
12  include providing expert testimony about the legal
13  consequences of Title III of the Cuban Liberty and
14  Democratic Solidarity Act, 22 U.S.C. § 6021, et seq, also
15  known as the LIBERTAD Act, in this lawsuit?
16      A.   No.
17      Q.   Direct Question Number 4: Describe your
18  knowledge or familiarity with the Cuban Liberty and
19  Democratic Solidarity Act, 22 U.S.C. § 6021, et seq, also
20  known as the LIBERTAD Act.  In doing so, please state how
21  you obtained knowledge or became familiar with the
22  LIBERTAD Act as part of your duties as the Acting
23  Coordinator or Deputy Director for Cuban Affairs at the
24  Department of State.
25      A.   The LIBERTAD Act is an Act of Congress that I

Page 20

1   was briefed on when I joined the Office of Cuban Affairs
2   as part of my onboarding process as Deputy Director.
3       Q.   Okay.  Cross Question from Plaintiff 4.1: Prior
4   to August 2nd, 2018, had you ever been involved in a
5   lawsuit brought under Title III of the Cuban Liberty and
6   Democratic Solidarity Act, 22 U.S.C. § 6021, et seq, also
7   known as the LIBERTAD Act?
8       A.   No.
9       Q.   Okay.  Direct Question Number 5: Did the Office
10  of Cuban Affairs investigate Title IV enforcement actions
11  pursuant to the LIBERTAD Act, 22 U.S.C. § 6091, as part
12  of its regular course of operations while you were the
13  Acting Coordinator or Deputy Director for Cuban Affairs?
14      A.   I can only answer based on the time that I was
15  at the Office of Cuban Affairs, as I don't know what
16  happened before or after my tenure there.  While I was
17  not the subject matter expert on Title IV actions during
18  my time at the office, yes, I know the Office of Cuban
19  Affairs investigated potential Title IV actions under the
20  LIBERTAD Act.
21      Q.   Cross Question from Plaintiff 5.1: Did the
22  Office of Cuban Affairs investigate violations of Title
23  III of the LIBERTAD Act, 22 U.S.C. § 6091, as part of its
24  regular course of operations while you were the acting
25  Coordinator or Deputy Director for Cuban Affairs?

Page 21

1       A.   I could only answer based on my time at the
2   Office of Cuban Affairs, as I do not know what happened
3   before or after my tenure there, but as to Title III, no.
4       Q.   Question 5.2: How many times did you enforce
5   Title IV of the LIBERTAD Act prior to August 2nd, 2018?
6       A.   Me, personally, zero.
7       Q.   Question 5.3: Between 2008 and August 2nd,
8   2018, how many times did the Office of Cuban Affairs
9   enforce Title IV of the LIBERTAD Act?
10      A.   I don't know, and I couldn't even approximate.
11      Q.   Question 5.4: Did the Office of the Cuban
12  Affairs regularly enforce Title IV of the LIBERTAD Act
13  from 2008 through August 2nd, 2018?
14      A.   I can only speak to the time I was there.  For
15  the month or so I was there, I know there were cases that
16  were investigated, but I don't know how many or whether
17  it would be considered regularly.
18      Q.   Direct Question Number 6: Identify all e-mail
19  addresses used by you as an employee of the Department of
20  State.
21      A.   Kim D, as in Delta, G as in Golf, @state.gov,
22  is my unclassified e-mail.  I also have a classified
23  e-mail address, which is Kim DG, Delta, Golf again,
24  @state.sgov.com.
25      Q.   Direct Question Number 7: Please review Exhibit

6 (Pages 18 to 21)

Page 22

1    1 to these Interrogatories.
2         Were you authorized by the Office Cuban Affairs
3    to send your August 2nd, 2018 e-mail contained in Exhibit
4    1?
5         A.  Yes.
6         Q.  Okay.  Cross Question from Plaintiff 7.1: Did
7    your August 2nd, 2018 e-mail provide an opinion about the
8    application of Title III of the LIBERTAD Act, 22 U.S.C. §
9    6091 to this litigation?
10        A.  No.
11        Q.  Question 7.2: Did your August 2nd, 2018 e-mail
12   provide your legal interpretation of Title III of the
13   LIBERTAD Act, 22 U.S.C. § 6091 to this litigation?
14        A.  No.
15        Q.  Question 7.3: Prior to writing your August 2nd,
16   2018 e-mail, had you ever received any sworn statements
17   from any of the Defendant's employees or representatives
18   about the Defendant's commercial activities on the Sierra
19   Maestra Port Terminal that is the subject of this
20   litigation?  If your answer is yes, please identify whom,
21   their position, the relationship with the Defendant, when
22   the statement was given, and provide the statement, or,
23   if not permitted by the Department of State, a summary of
24   the statement.
25        A.  Not that I can recall.

Page 23

1         Q.  Question 7.4: Prior to writing your August 2nd,
2    2018 e-mail, had you met with any of the Defendant's
3    employees or representatives about Defendant's commercial
4    activities on the property that is the subject of this
5    litigation?  If your answer is yes, please identify whom,
6    their position and relationship with the Defendant, when,
7    and a summary of the statement made by the Defendant's
8    employees or representatives.
9         A.  No.
10        Q.  Question 7.5: Prior to writing your August 2nd,
11   2018 e-mail, had you spoken with any of the Defendant's
12   employees or representatives about Defendant's commercial
13   activities on the property that is the subject of this
14   litigation?  If your answer is yes, please identify whom,
15   their position and relationship with the Defendant, when,
16   and a summary of the statement made by the Defendant's
17   employees or representatives.
18        A.  No.
19        Q.  Question 7.6: Prior to writing your August 2nd,
20   2018 e-mail, had you reviewed the Defendant's records to
21   determine if it complied with the requirements of the
22   General License issued by the Department of Treasury's
23   Office of Foreign Assets Control in connection with its
24   travels to Cuba?  If your answer is yes, please identify
25   which records and when.

Page 24

1         A.  No.
2         Q.  Question 7.7: Prior to writing your August 2nd,
3    2018 e-mail, had you reviewed the Defendant's records to
4    determine if it had complied with the requirements of the
5    Department of Commerce's Bureau of Industry and Security
6    in connection with its travels to Cuba?  If your answer
7    is yes, please identify which records and when.
8         A.  No.
9         Q.  Question 7.8: Prior to writing your August 2nd,
10   2018 e-mail, had you spoken with any of the
11   representatives of Havana Docks about Defendant's
12   commercial activities on the property that is the subject
13   of this litigation?
14        A.  I don't recall.
15        Q.  Question 7.9: Prior to writing your August 2nd,
16   2018 e-mail, had you ever met with any of the
17   representatives of Havana Docks?
18        A.  No.
19        Q.  Question 7.10: Prior to writing your August
20   2nd, 2018 e-mail, had you ever spoken with any of the
21   representatives of Havana Docks?
22        A.  No, not that I recall.
23        Q.  Question 7.11: Prior to writing your August
24   2nd, 2018 e-mail, had you reviewed any of the evidence
25   discovered in this litigation about the Defendant's

Page 25

1    commercial activities on the property that is the subject
2    of this litigation?
3         A.  No, but I also don't know because I don't know
4    what evidence the question refers to.
5         Q.  Question 7.12: Prior to writing your August
6    2nd, 2018 e-mail, had you reviewed any of the deposition
7    testimony given in this case about the Defendant's
8    commercial activities in the property that is the subject
9    of this litigation?
10        A.  No.
11        Q.  Question 7.13: Please identify all the records
12   you reviewed prior to writing your August 2, 2018 e-mail.
13        A.  I don't recall reviewing any records prior to
14   sending, other than the e-mail chain that my e-mail is
15   responding to.
16        Q.  Question 7.14: Are you aware that an employee
17   of Carnival, Fernando Perez Monteaguado, recently met in
18   Havana with representatives of the Cuba Government in
19   connection with the current enhancement to the Sierra
20   Maestra Port Terminal?
21        A.  No.
22        Q.  Direct Question Number 8: Was your August 2nd,
23   2018 e-mail contained in Exhibit 1 sent in the regular
24   course of your duties as Acting Coordinator or Deputy
25   Director for Cuban Affairs in connection with the Office



Page 26

1  of Cuban Affairs' Title IV enforcement investigations?
2     A.  Yes.
3     Q.  Cross Question from Plaintiff 8.1: Was your
4  August 2nd, 2018 e-mail contained in Exhibit 1 sent in
5  connection with a Title III lawsuit against the
6  Defendant?
7     A.  No.
8        COURT REPORTER:  I believe that that is all the
9  questions that I have, Ms. Kim.
10       THE WITNESS:  Okay.
11       MR. LAUX:  We'll read, please.
12       COURT REPORTER:  Okay.  Thank you very much.
13             - - -
14       (Whereupon, the Witness was excused.)
15             - - -
16       (Whereupon, the deposition concluded at
17  approximately 4:40 p.m.)
18             - - -
19
20
21
22
23
24
25

Page 27

1              ACKNOWLEDGMENT OF DEPONENT
2
3        I, Deanna Kim, do hereby certify that I have
   read the foregoing pages,  1 - 26, and that the same is a
4  correct transcription of the answers given by me to the
   questions therein propounded, except for the corrections
5  or changes in form or substance, if any, noted in the
   attached Errata Sheet.
6
7
8  _____
   WITNESS NAME                DATE
9
10
11 Subscribed and sworn
   to before me this
12    day of        , 2021.
13
14 My commission expires:
15
16
17 Notary Public
18
19
20
21
22
23
24
25

Page 28

1             - - - - - -
               E R R A T A
2             - - - - - -
3  PAGE  LINE  CHANGE
4  _____  _____  _____
5  _____  _____  _____
6  _____  _____  _____
7  _____  _____  _____
8  _____  _____  _____
9  _____  _____  _____
10 _____  _____  _____
11 _____  _____  _____
12 _____  _____  _____
13 _____  _____  _____
14 _____  _____  _____
15 _____  _____  _____
16 _____  _____  _____
17 _____  _____  _____
18 _____  _____  _____
19 _____  _____  _____
20 _____  _____  _____
21 _____  _____  _____
22 _____  _____  _____
23 _____  _____  _____
24 _____  _____  _____
25

Page 29

1              CERTIFICATE OF OATH
2
3  STATE OF FLORIDA:
4  COUNTY OF MIAMI-DADE:
5
6        I, Alexandra Renee Cuellar, Court Reporter, Notary
7  Public, State of Florida, certify that Deanna Kim
8  personally appeared before me, via videoconference, on
9  the 14th day of April, 2021, and was duly sworn.
10
11       Signed this 21st day of April, 2021.
12
13
14
15       _____
16       ALEXANDRA RENEE CUELLAR
17       Notary Public, State of Florida
18       Commission No.: GG 327787
19       Commission Expires: 04/26/2023
20
21
22
23
24
25

8  (Pages 26 to 29)



Page 30

```
1                REPORTER'S CERTIFICATE
2
3    STATE OF FLORIDA
4    COUNTY OF MIAMI-DADE
5
6         I, Alexandra Renee Cuellar, do hereby certify
7    that I was authorized to and did report the foregoing
8    proceedings; and that the transcript is a true and
9    correct transcription of my notes of the proceedings.
10
11        I further certify that I am not a relative,
12   employee, attorney or counsel of any of the parties, nor
13   am I a relative of counsel connected with the action, nor
14   am I financially interested in the action.
15
16        Dated this 21st day of April, 2021.
17
18
19        _____
20        ALEXANDRA RENEE CUELLAR
21        Notary Public, State of Florida
22        Commission No.: GG 327787
23        Commission Expires: 04/26/2023
24
25
```



**A**

Acknowledgm...
  6:4 27:1
acquired 11:13
  11:21 15:15,24
Act 13:7,8,15,16
  13:23,24 14:6,7
  14:13,14,21,22
  17:15,16,25
  18:1,11,12,21
  18:22 19:6,7,14
  19:15,19,20,22
  19:25,25 20:6,7
  20:11,20,23
  21:5,9,12 22:8
  22:13
acting 15:3,12,21
  16:5,13,21 17:4
  17:12,22 18:7
  18:17 19:2,10
  19:22 20:13,24
  25:24
action 30:13,14
actions 20:10,17
  20:19
activities 22:18
  23:4,13 24:12
  25:1,8
address 21:23
addresses 21:19
advice 15:9
Affairs 9:10,22
  10:14,20,20,22
  11:5,6,7,12,17
  11:20 12:3,9,15
  12:20,22 13:2,5
  13:12,20 14:3
  15:4,13,22 16:6
  16:14,22 17:5
  17:13,23 18:8
  18:18 19:3,11
  19:23 20:1,10
  20:13,15,19,22
  20:25 21:2,8,12
  22:2 25:25

Affairs' 26:1
age 7:2
Aide 10:10
Alexandra 2:24
  29:6,16 30:6,20
Alhambra 3:6
ALLEN 4:22
allen.pegg@ho...
  5:7
allow 8:22
ALMAGRO
  4:24
Ambassador
  10:10
American 10:1
answer 8:16
  10:25 13:3
  20:14 21:1
  22:20 23:5,14
  23:24 24:6
answers 27:4
appeared 29:8
appearing 7:10
application 14:12
  14:20 22:8
approximate
  21:10
approximately
  26:17
April 2:14 10:9
  29:9,11 30:16
areas 7:17
arrived 9:7,10
Asian 9:22
asked 8:23
Assets 23:23
assignment 9:23
  9:25 10:5
Asuncion 10:8
attached 27:5
attorney 30:12
Attorney's 5:13
  7:7
August 9:8,22,25
  10:2,12 20:4
  21:5,7,13 22:3

22:7,11,15 23:1
  23:10,19 24:2,9
  24:15,19,23
  25:5,12,22 26:4
authority 14:18
  15:1
authorization
  7:20 8:7,14
authorized 8:9
  8:17 22:2 30:7
Avenue 3:15 4:4
  5:4
aware 25:16

**B**

B 3:24 6:13
BALDRIDGE
  3:23
BALMORI 4:23
based 11:13,21
  15:15,23 20:14
  21:1
basis 10:17
began 9:22 10:5
  10:11
beginning 9:13
  9:16,25 10:2,7
  10:9
behalf 3:3,11,21
  4:9,20 5:11 7:8
believe 26:8
best 11:18 12:1,7
  13:3,11,19 14:2
  14:10
beyond 8:9,13,16
  14:17,25
BOIES 4:13
Boulevard 4:14
Brickell 3:15 5:4
briefed 20:1
brought 20:5
Bureau 9:18
  10:19 11:6 24:5

**C**

C 3:1 4:1 5:1 7:1

CAITLIN 3:13
Caitlin.saladri...
  3:19
capacity 7:8,11
Caribbean 3:11
Carnival 1:8,9,24
  1:25 4:9,10
  25:17
case 1:6,14,22
  2:5 25:7
cases 21:15
caution 8:8
Center 10:6
Certificate 6:5
  29:1 30:1
certify 27:3 29:7
  30:6,11
CFR 7:15
cgray@bsfllp.c...
  4:17
chain 25:14
CHANGE 28:3
changes 27:5
Chief 9:24
Circle 3:6
circulated 8:19
clarify 10:17
classified 21:22
COLSON 3:5
Commerce's
  24:5
commercial
  14:15,23 22:18
  23:3,12 24:12
  25:1,8
commission
  27:14 29:18,19
  30:22,23
complied 23:21
  24:4
Con't 4:2 5:2
concluded 26:16
Congress 19:25
connected 30:13
connection 23:23
  24:6 25:19,25

26:5
consequences
  12:16,23 13:21
  14:4 16:24 17:7
  18:10,20 19:5
  19:13
considered 21:17
Consulate 9:7
  10:7
contained 22:3
  25:23 26:4
Control 23:23
coordinating
  11:9
Coordination
  9:17,19
Coordinator 9:9
  10:20 11:7 15:4
  15:13,21 16:5
  16:13,21 17:4
  17:12,21 18:7
  18:17 19:2,10
  19:23 20:13,25
  25:24
copy 7:23
Coral 3:7
COREY 4:11
corporation 1:5
  1:8,10,13,21,24
  2:1,4 4:9,10
correct 27:4 30:9
corrections 27:4
correspondence
  6:18 7:25
corresponding
  9:4
counsel 30:12,13
COUNTY 29:4
  30:4
course 20:12,24
  25:24
court 1:1 8:1,24
  26:8,12 29:6
Cross 11:11,19
  12:2,8 15:11
  20:3,21 22:6



MAGNA ▶
LEGAL SERVICES

26:3
**cruise** 1:9,25 2:7
4:10,20 7:18
**Cruises** 1:16,17
1:17 3:11,21,22
3:22
**Cuba** 11:10
23:24 24:6
25:18
**Cuban** 9:9 10:14
10:20,22 11:4,7
11:12,17,20
12:3,9,14,19,21
13:2,4,6,12,14
13:20,22 14:3,5
14:13,21 15:4
15:13,22 16:6
16:14,22 17:5
17:13,15,23,25
18:8,10,18,20
19:3,5,11,13,18
19:23 20:1,5,10
20:13,15,18,22
20:25 21:2,8,11
22:2 25:25 26:1
**Cuellar** 2:24 6:3
9:1 11:1 29:6
29:16 30:6,20
**current** 25:19
**currently** 9:6

**D**

**D** 3:12 6:1 7:1
21:21
**D.C** 4:5 9:11,13
9:16,19,23 10:4
**d/b/a** 1:8,24 4:9
**DANIEL** 4:23
**Daniel.balmori...**
5:8
**DATE** 27:8
**dated** 7:19,22
30:16
**dates** 9:4
**day** 27:12 29:9
29:11 30:16

**day-to-day** 15:7
**DC** 5:19
**DE** 4:24
**Deanna** 2:13
5:11 6:2 7:2,10
27:3 29:7
**Defendant** 3:11
3:21 4:9,20
7:17 22:21 23:6
23:15 26:6
**Defendant's** 6:14
14:15,23 22:17
22:18 23:2,3,7
23:11,12,16,20
24:3,11,25 25:7
**Defendants** 1:11
1:19 2:2,9
**Defense** 9:12
**Delta** 21:21,23
**Democratic** 13:7
13:14,22 14:5
14:13,21 17:15
17:25 18:10,21
19:6,14,19 20:6
**Department** 5:15
7:9,12,13 9:3
10:6,15 11:5,14
11:16,22,24
12:6,12,18,25
13:10,18 14:1,9
15:5,10,14,16
15:18,22,25
16:2,6,10,14,18
16:22 17:1,5,9
17:13,18,23
18:3,8,14,18,24
19:3,11,24
21:19 22:23
23:22 24:5
**Deponent** 6:4
27:1
**deposition** 2:12
7:12,16,24 8:17
8:20 25:6 26:16
**Deputy** 9:8,12,14
15:4,13,21 16:5

16:13,21 17:4
17:12,22 18:7
18:17 19:2,10
19:23 20:2,13
20:25 25:24
**Describe** 19:17
**described** 7:18
8:10
**DESCRIPTION**
6:15
**determine** 23:21
24:4
**develop** 15:7
**developing** 11:8
**DG** 21:23
**Direct** 9:2 10:13
15:2 19:17 20:9
21:18,25 25:22
**Director** 9:9,12
9:14 15:4,13,22
16:6,14,22 17:5
17:13,23 18:8
18:18 19:3,11
19:23 20:2,13
20:25 25:25
**discovered** 24:25
**DISTRICT** 1:1,2
**DIVISION** 1:3
**Docks** 1:5,13,21
2:4 24:11,17,21
**doing** 14:25
19:20
**DOUGLAS** 3:23
**duly** 7:3 29:9
**duties** 11:14,22
15:3,6,12,16,20
15:25 16:4,12
16:20 17:3,11
17:21 18:6,16
19:1,9,22 25:24
**Duty** 10:3

**E**

**E** 3:1,1 4:1,1 5:1
5:1 6:1,13 7:1,1
28:1

**e-mail** 6:16 21:18
21:22,23 22:3,7
22:11,16 23:2
23:11,20 24:3
24:10,16,20,24
25:6,12,14,14
25:23 26:4
**East** 4:14
**Economic** 10:10
**EIDSON** 3:5
**Embassy** 9:24
10:8,11
**employee** 7:9,11
21:19 25:16
30:12
**employees** 11:13
11:21 22:17
23:3,8,12,17
**employment** 9:4
**enforce** 21:4,9,12
**enforcement**
20:10 26:1
**enhancement**
25:19
**ensure** 15:8
**Errata** 27:5
**ESQUIRE** 3:4,12
3:13,23,24 4:11
4:12,22,23,24
5:12,14
**et** 13:7,15,23
14:6,14,22
17:16 18:1,11
18:21 19:6,14
19:19 20:6
**evidence** 24:24
25:4
**Examination** 6:2
8:25
**examined** 7:4
**excused** 26:14
**executing** 11:9
**exercise** 8:20
**Exhibit** 6:16,18
7:24 8:4,10
21:25 22:3

25:23 26:4
**EXHIBITS** 6:15
**expert** 11:20 12:9
12:22 13:13
14:4,11 15:14
16:7,23 17:14
18:9 19:12
20:17
**expires** 27:14
29:19 30:23
**extent** 8:10,12

**F**

**F** 3:13
**familiar** 19:21
**familiarity** 19:18
**far** 12:20
**February** 7:22
**Fernando** 25:17
**financially** 30:14
**Fl** 5:16
**FLEXNER** 4:13
**Florida** 1:2 2:25
3:7,16 4:15 5:5
5:17 29:3,7,17
30:3,21
**focal** 11:7
**follows** 7:4
**foregoing** 27:3
30:7
**foreign** 1:9,25
4:10 23:23
**foresee** 8:20
**form** 10:17 27:5
**found** 7:14
**Ft** 4:15
**further** 30:11

**G**

**G** 7:1 21:21
**Gables** 3:7
**General** 9:7
23:22
**GG** 29:18 30:22
**given** 8:7,17
22:22 25:7 27:4



**Golf** 21:21,23
**good** 15:8
**governed** 7:13
**Government**
  11:8 25:18
**GRAY** 4:11

**H**

**H** 6:13
**happened** 20:16
  21:2
**Havana** 1:5,13
  1:21 2:4 24:11
  24:17,21 25:18
**held** 9:3
**Hemisphere**
  10:19 11:6
**HICKS** 3:5
**HOGAN** 4:25
**Holdings** 2:7
  4:21
**HOLLAND** 3:14
**House** 10:4
**Human** 9:18

**I**

**identification** 8:5
**identify** 21:18
  22:20 23:5,14
  23:24 24:7
  25:11
**III** 13:6,14,22
  14:5,12,21
  17:14,25 18:20
  19:5,13 20:5,23
  21:3 22:8,12
  26:5
**implementation**
  15:9
**include** 11:15,23
  12:5,11,17,24
  13:9,16,24 14:7
  15:14,17,23
  16:1,7,9,15,17
  16:23,25 17:6,8
  17:14,17,24

18:2,9,13,19,23
  19:4,12
**included** 8:1
**including** 9:4
**Industry** 24:5
**information**
  11:13,21 15:15
  15:24
**initial** 7:18
**inquiry** 7:17
**Institute** 10:2
**instruct** 8:15
  10:22
**Integration** 9:13
**interested** 30:14
**International**
  9:15
**interpretation**
  12:4,10 13:6,13
  22:12
**interpreted** 8:11
**interpreting** 16:7
  16:15 17:14,24
**Interrogatories**
  22:1
**investigate** 20:10
  20:22
**investigated**
  20:19 21:16
**investigations**
  26:1
**involved** 20:4
**involving** 12:5,11
  12:16,23 13:8
  13:16,24 14:7
  16:8,16,24 17:7
  17:17 18:2,12
  18:22
**issued** 23:22
**IV** 20:10,17,19
  21:5,9,12 26:1

**J**

**J** 3:23
**jbaldridge@ve...**
  4:7

**job** 9:3 15:2,12
  15:20 16:4,12
  16:20 17:3,11
  17:21 18:6,16
  19:1,9
**joined** 20:1
**July** 9:16,20
**June** 9:10 10:5
  11:18,25 12:20
  13:2
**Justice** 11:16,24
  12:6,12,18,25
  13:10,18 14:1,9
  15:18 16:2,10
  16:18 17:1,9,19
  18:4,14,24
**JUSTIN** 3:24

**K**

**Kim** 2:13 5:11
  6:2 7:2,10,21
  8:8,13,22 10:25
  21:21,23 26:9
  27:3 29:7
**Kim's** 7:20
**KNIGHT** 3:14
**know** 7:6 12:20
  20:15,18 21:2
  21:10,15,16
  25:3,3
**knowledge** 11:18
  12:1,7,13 13:3
  13:11,19 14:2
  14:10 19:18,21
**known** 13:8,15
  13:23 14:6,14
  14:22 17:16
  18:1,11,22 19:7
  19:15,20 20:7
**Korea** 10:10,11

**L**

**Laredo** 9:7
**Las** 4:14
**Lauderdale** 4:15
**Laux** 5:12 7:5,6

8:7 10:16 26:11
**law** 7:3
**lawful** 7:2
**lawsuit** 12:4,10
  12:16,23 13:8
  13:16,24 14:7
  14:12,20 16:8
  16:16,24 17:7
  17:17 18:2,12
  18:22 19:7,15
  20:5 26:5
**legal** 12:15,22
  13:21 14:4
  16:23 17:6 18:9
  18:19 19:4,12
  22:12
**letter** 7:19,21
**LIBERTAD** 13:8
  13:15,23 14:6
  14:14,22 17:16
  18:1,12,22 19:7
  19:15,20,22,25
  20:7,11,20,23
  21:5,9,12 22:8
  22:13
**Liberty** 13:6,14
  13:22 14:5,13
  14:21 17:15,25
  18:10,20 19:5
  19:13,18 20:5
**License** 23:22
**limited** 7:17 8:7
**Line** 4:20 28:3
**lines** 1:9,25 2:7
  4:10 7:18
**LIPSCHULTZ**
  3:4
**litigants** 11:15,23
  12:5,11,17,24
  13:9,16,24 14:7
  15:17,25 16:8
  16:16,25 17:8
  17:17 18:2,12
  18:23
**litigation** 22:9,13
  22:20 23:5,14

24:13,25 25:2,9
**LLP** 3:14,25 4:13
  4:25
**LOVELLS** 4:25

**M**

**M** 4:24
**Maestra** 14:15
  14:24 22:19
  25:20
**manage** 15:6
**Maritime** 9:21
**marked** 7:24 8:4
**Massachusetts**
  4:4
**matter** 14:18
  15:1 20:17
**MEREDITH**
  4:12
**MESULAM** 5:14
**Mesulamsa@st...**
  5:23
**met** 23:2 24:16
  25:17
**Mexico** 9:7
**Miami** 1:3 3:16
  5:5,17
**MIAMI-DADE**
  29:4 30:4
**Monteaguado**
  25:17
**month** 21:15
**MSC** 1:16,16,17
  3:21,21,22
**Mschultz@bsfl...**
  4:18

**N**

**N** 3:1 4:1 5:1,12
  6:1 7:1
**name** 7:6 27:8
**NATHALIE**
  4:24
**Nathalie.dealm...**
  5:9
**need** 8:20



**NEMEROFF**
  3:24
**Northeast** 5:16
**Norwegian** 2:7
  4:20
**Notary** 2:25
  27:17 29:6,17
  30:21
**noted** 27:5
**notes** 30:9
**November** 7:19
**Nuevo** 9:7
**Number** 9:2
  10:13 15:2
  19:17 20:9
  21:18,25 25:22
**NW** 5:18

**O**

**O** 7:1
**oath** 7:3 29:1
**object** 10:16
**objection** 8:12
**obtained** 19:21
**office** 5:13 7:7
  9:9,12,14,18,21
  10:14,18,20,22
  10:23 11:4,6,12
  11:17,20 12:3,9
  12:14,19,21
  13:2,4,12,20
  14:3 15:7 20:1
  20:9,15,18,18
  20:22 21:2,8,11
  22:3 23:23
  25:25
**officer** 9:6,18,21
  10:1,3,6,8,11
**official** 7:8,11
  10:18 11:14,22
  15:16,25
**Okay** 10:13 11:2
  11:11,19 12:14
  12:21 13:4,12
  13:20 14:3,11
  14:19 15:2,11

20:3,9 22:6
26:10,12
**Olas** 4:14
**onboarding** 20:2
**operations** 9:15
  10:6 15:7 20:12
  20:24
**opinion** 11:12
  12:3,15 13:5,21
  14:19 15:23
  16:15 17:6,24
  18:19 19:4 22:7
**outset** 8:9
**oversee** 15:6

**P**

**P** 3:1,1 4:1,1,11
  4:22 5:1,1 7:1
**p.m** 2:15,15
  26:17
**PA** 3:5
**PAGE** 6:2,15
  28:3
**pages** 27:3
**Paraguay** 10:8
**part** 19:22 20:2
  20:11,23
**parties** 7:22
  30:12
**party** 11:16,24
  12:6,12,18,25
  13:10,17,25
  14:8 15:18 16:1
  16:9,17 17:1,9
  17:18 18:3,13
  18:24
**PEGG** 4:22
**Penthouse** 3:6
**Perez** 25:17
**performance**
  11:14,22 15:16
  15:24
**permitted** 7:16
  22:23
**personally** 21:6
  29:8

**personnel** 15:8
**Plaintiff** 1:6,14
  1:22 2:5 3:3
  11:11,19 12:2,8
  15:11 20:3,21
  22:6 26:3
**please** 9:2 19:20
  21:25 22:20
  23:5,14,24 24:7
  25:11 26:11
**point** 11:7
**policies** 15:9
**Policy** 9:17,19
  11:9
**Political** 9:24
  10:1
**PONCE** 3:12
**Port** 22:19 25:20
**position** 9:5
  22:21 23:6,15
**potential** 20:19
**preceding** 8:18
**principal** 9:6
**prior** 8:19 9:14
  9:20,23 10:3,7
  20:3 21:5 22:15
  23:1,10,19 24:2
  24:9,15,19,23
  25:5,12,13
**proceedings** 30:8
  30:9
**process** 20:2
**product** 15:8
**Projects** 9:21
**property** 23:4,13
  24:12 25:1,8
**propounded** 27:4
**provide** 11:12,20
  12:3,9,15,22
  13:5,13,21 14:4
  22:7,12,22
**provided** 8:1
**providing** 14:11
  14:19 15:8,14
  15:23 16:7,15
  16:23 17:6,14

17:24 18:9,19
  19:4,12
**Public** 2:25 27:17
  29:7,17 30:21
**pursuant** 20:11

**Q**

**question** 8:11,13
  9:2 10:13,16,19
  10:21,25 11:2
  11:11,19 12:2,8
  12:14,21 13:4
  14:19 15:2,11
  15:20 16:4,12
  16:20 17:3,11
  17:21 18:6,16
  19:1,9,17 20:3
  20:9,21 21:4,7
  21:11,18,25
  22:6,11,15 23:1
  23:10,19 24:2,9
  24:15,19,23
  25:4,5,11,16,22
  26:3
**questioning** 7:16
**questions** 8:16,19
  8:23 26:9 27:4

**R**

**R** 3:1 4:1 5:1 7:1
  28:1,1
**read** 26:11 27:3
**recall** 22:25
  24:14,22 25:13
**received** 7:23
  22:16
**recommending**
  11:9
**record** 6:17
  10:17
**records** 23:20,25
  24:3,7 25:11,13
**referenced** 10:18
**referred** 10:24
**refers** 10:21 25:4
**regular** 20:12,24

25:23
**regularly** 21:12
  21:17
**Regulations** 7:14
**relationship**
  22:21 23:6,15
**relative** 30:11,13
**Renee** 2:24 29:6
  29:16 30:6,20
**repeat** 11:2
**report** 30:7
**Reported** 2:23
**reporter** 6:5 8:1
  8:24 26:8,12
  29:6
**REPORTER'S**
  30:1
**representatives**
  22:17 23:3,8,12
  23:17 24:11,17
  24:21 25:18
**represented**
  11:16,24 12:6
  12:12,18,25
  13:10,17,25
  14:8 15:18 16:1
  16:9,17 17:1,9
  17:18 18:3,13
  18:24
**request** 7:18
**require** 8:13
**requirements**
  23:21 24:4
**requiring** 8:11
**reserve** 8:15
**Resources** 9:18
**responding** 25:15
**responsibilities**
  15:3,12,21 16:5
  16:13,21 17:4
  17:12,22 18:7
  18:17 19:2,10
**review** 21:25
**reviewed** 23:20
  24:3,24 25:6,12
**reviewing** 25:13


MAGNA ›
LEGAL SERVICES

**right** 7:5 8:15,21
**role** 10:14 11:4
**room** 10:4
**Royal** 3:11
**Rule** 8:18,23

**— S —**
**S** 3:1 4:1 5:1 6:13 7:1
**S.A** 1:18
**SA** 1:17 3:22,22
**SALADRIGAS** 3:13
**SCHILLER** 4:13
**SCHULTZ** 4:12
**scope** 7:16,20 8:10,17 11:14 11:22 14:17,25 15:15,24
**SCOTT** 3:12
**Sections** 7:15
**Security** 9:15 24:5
**SEMRA** 5:14
**send** 22:3
**sending** 25:14
**sent** 25:23 26:4
**seq** 13:7,15,23 14:6,14,22 17:16 18:1,11 18:21 19:6,14 19:19 20:6
**served** 9:25
**set** 7:21
**Sheet** 27:5
**Sierra** 14:15,23 22:18 25:19
**Signed** 29:11
**Singapore** 9:24
**situation** 10:4
**Solidarity** 13:7 13:14,22 14:5 14:13,21 17:15 17:25 18:11,21 19:6,14,19 20:6
**sorry** 11:3

**Southeast** 9:21
**SOUTHERN** 1:2
**speak** 21:14
**Special** 9:20
**spoken** 23:11 24:10,20
**sponce@hklaw...** 3:18
**staff** 15:7
**Staffing** 10:9
**standing** 8:12
**start** 8:19
**started** 7:5 9:20
**state** 2:25 5:15 7:9,12 9:2,4,12 10:6,15 11:5 15:5,9,14,22 16:6,14,22 17:5 17:13,23 18:8 18:18 19:3,11 19:20,24 21:20 22:23 29:3,7,17 30:3,21
**State's** 7:13
**state.gov** 21:21
**state.sgov.com** 21:24
**stated** 13:1
**statement** 22:22 22:22,24 23:7 23:16
**statements** 22:16
**States** 1:1 5:13 7:7 9:3 10:14 11:5,8,15,23 12:5,11,17,24 13:9,17,25 14:8 15:17 16:1,9,17 16:25 17:8,18 18:3,13,23
**Statute** 12:4,10 12:16,23 16:8 16:16,24 17:7
**Street** 5:16,18
**subject** 20:17 22:19 23:4,13

24:12 25:1,8
**Subscribed** 27:11
**substance** 27:5
**Suite** 3:15 4:14 5:4
**summary** 22:23 23:7,16
**Sure** 11:4
**sworn** 7:3 22:16 27:11 29:9

**— T —**
**T** 6:13 28:1
**T-O-U-H-Y** 7:14
**Taipei** 10:1,2
**tenure** 20:16 21:3
**Terminal** 14:16 14:24 22:19 25:20
**testified** 7:4
**testify** 7:21 8:8,9 8:13 14:18 15:1
**testimony** 11:12 11:20 12:3,9,15 12:22 13:5,13 13:21 14:4,11 14:20 15:14,23 16:7,15,23 17:6 17:14,24 18:9 18:19 19:4,12 25:7
**Thank** 8:24 26:12
**time** 20:14,18 21:1,14
**times** 21:4,8
**title** 9:3 10:18 13:6,14,22 14:5 14:12,20 17:14 17:24 18:20 19:5,13 20:5,10 20:17,19,22 21:3,5,9,12 22:8,12 26:1,5
**today** 7:10,21,23

**today's** 8:17,18
**Touhy** 7:13
**transactions** 14:15,23
**transcript** 8:2 30:8
**transcription** 27:4 30:9
**travels** 23:24 24:6
**Treasury's** 23:22
**true** 30:8

**— U —**
**U.S** 6:24 10:8 10:10,11 11:9 12:4,10,16,23 16:7,15,24 17:7
**U.S.C** 13:7,15,23 14:6,13,22 17:16 18:1,11 18:21 19:6,14 19:19 20:6,11 20:23 22:8,13
**unclassified** 21:22
**understand** 7:25
**Unit** 9:24
**United** 1:1 5:13 7:7 9:3 10:14 11:5,8,15,23 12:5,11,17,24 13:9,17,25 14:8 15:17 16:1,9,17 16:25 17:8,18 18:3,13,23
**USA** 1:16 3:21

**— V —**
**VENABLE** 3:25
**videoconference** 2:12 29:8
**violations** 20:22
**vs** 1:7,15,23 2:6

**— W —**

**Washington** 4:5 5:19 9:11,13,15 9:19,23 10:4
**Watch** 10:6
**We'll** 26:11
**Western** 10:19 11:6
**White** 10:4
**witness** 5:11 7:2 7:8,10 8:8,15 10:23 26:10,14 27:8
**worked** 11:25
**writing** 22:15 23:1,10,19 24:2 24:9,15,19,23 25:5,12
**written** 8:23

**— X —**
**X** 6:1,13

**— Y —**

**— Z —**
zach@colson.c... 3:9
**ZACHARY** 3:4
**Zakarij** 5:12 7:6
**zakarik.laux@...** 5:22
**zero** 21:6

**— 0 —**
**04/26/2023** 29:19 30:23

**— 1 —**
**1** 6:16 9:2 22:1,4 25:23 26:4 27:3
**1200** 4:14
**14** 2:14
**14th** 29:9
**172.1** 7:15
**172.9** 7:15
**19-cv-21724-B...**



1:6
**19-cv-23588-B...**
 1:14
**19-cv-23590-C...**
 1:22
**19-cv-23591-B...**
 2:5
**1999** 10:12
**19th** 5:18 7:22

—— **2** ——
**2** 6:18 7:24 8:4
 8:10 10:13
 25:12
**2.1** 11:11
**2.10** 14:3
**2.11** 14:11
**2.12** 14:19
**2.2** 11:19
**2.3** 12:2
**2.4** 12:8
**2.5** 12:14
**2.6** 12:21
**2.7** 13:4
**2.8** 13:12
**2.9** 13:20
**20001** 4:5
**2002** 10:9
**2004** 10:7
**2005** 10:5
**2008** 10:2 21:7,13
**2011** 9:25
**2014** 9:22
**2015** 9:20
**2016** 9:16
**2017** 9:13
**2018** 9:10 20:4
 21:5,8,13 22:3
 22:7,11,16 23:2
 23:11,20 24:3
 24:10,16,20,24
 25:6,12,23 26:4
**202** 4:6 5:21
**2020** 7:19 9:8
 11:18 12:1,20
 13:2

**2021** 2:14 7:22
 27:12 29:9,11
 30:16
**20520** 5:19
**21st** 29:11 30:16
**22** 7:15 13:7,15
 13:23 14:6,13
 14:22 17:15
 18:1,11,21 19:6
 19:14,19 20:6
 20:11,23 22:8
 22:13
**255** 3:6
**26** 27:3
**27** 6:4
**2700** 5:4
**2nd** 20:4 21:5,7
 21:13 22:3,7,11
 22:15 23:1,10
 23:19 24:2,9,15
 24:20,24 25:6
 25:22 26:4

—— **3** ——
**3** 5:16 15:2
**3.1** 15:11
**3.10** 18:16
**3.11** 19:1
**3.12** 19:9
**3.2** 15:20
**3.3** 16:4
**3.4** 16:12
**3.5** 16:20
**3.6** 17:3
**3.7** 17:11
**3.8** 17:21
**3.9** 18:6
**30** 6:5
**305** 3:8,17 5:6,20
**31** 8:18,23
**327787** 29:18
 30:22
**3300** 3:15
**33131** 3:16 5:5
**33132** 5:17
**33134** 3:7

**33301** 4:15
**344-4703** 4:6
**356-0011** 4:16
**374-8500** 3:17

—— **4** ——
**4** 19:17
**4.1** 20:3
**4:05** 2:15
**4:40** 2:15 26:17
**401** 4:14
**459-6500** 5:6
**476-7419** 3:8
**485-8677** 5:21
**4th** 5:16

—— **5** ——
**5** 20:9
**5.1** 20:21
**5.2** 21:4
**5.3** 21:7
**5.4** 21:11
**5th** 7:19

—— **6** ——
**6** 21:18
**600** 4:4 5:4,18
**6021** 13:7,15,23
 14:6,14,22
 17:16 18:1,11
 18:21 19:6,14
 19:19 20:6
**6091** 20:11,23
 22:9,13

—— **7** ——
**7** 21:25
**7.1** 22:6
**7.10** 24:19
**7.11** 24:23
**7.12** 25:5
**7.13** 25:11
**7.14** 25:16
**7.2** 22:11
**7.3** 22:15
**7.4** 23:1

**7.5** 23:10
**7.6** 23:19
**7.7** 24:2
**7.8** 24:9
**7.9** 24:15
**701** 3:15

—— **8** ——
**8** 6:18 25:22
**8.1** 26:3

—— **9** ——
**9** 6:3
**954** 4:16
**961-9003** 5:20
**99** 5:16


MAGNA
LEGAL SERVICES

EXHIBIT

1

| Message | |
|---|---|
| **From:** | Kim, Deanna G [KimDG@state.gov] |
| **Sent:** | 8/2/2018 12:51:47 PM |
| **To:** | Jerry Johnson [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=302f3ed959214dd5b5a435d77a9fc8d1-jjohnson]; Javier Garcia-Bengochea (jgb@bellsouth.net) [jgb@bellsouth.net] |
| **CC:** | Mickael Behn [mickaelbehn@gmail.com]; Aaron Johnson (ajohnson.hdc@gmail.com) [ajohnson.hdc@gmail.com]; Tarantolo, Sonia S [TarantoloSS@state.gov]; Alpert, Rachel K [AlpertRK@state.gov]; Patel, Nutan B [PatelNB@state.gov]; Magallon, Erica G [MagallonEG@state.gov] |
| **Subject:** | RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims |

Mr. Johnson, Dr. Garcia:

Given Gabe's departure, I wanted to take stock and make sure that we have addressed the specific concerns you identified below. I have confirmed that we have opened cases/files for each of the requests noted in the chain below, including Title IV enforcement requests in relation to the port, port facilities, and area surrounding the harbor of Santiago de Cuba; port properties in Havana; and entities that may be docking at both properties. As previously discussed, given the clear exclusion in Title IV's definition of "traffics" of transactions and uses of property incident to lawful travel to Cuba, we are not currently pursuing Title IV actions in relation to commercial cruise lines. As we receive multiple requests for Title IV enforcement action and are operating under limited resources, we prioritize cases according to a number of factors, including the availability of information and our assessment of the strength of the Title IV case. That said, we are actively working on Title IV enforcement actions regarding activities related to the port, port facilities, and area surrounding the harbor of Santiago de Cuba, including seeking additional information from foreign entities concerned. We have also opened a file for your request regarding port properties in Havana and will reach out should additional information be necessary for our investigation.

Thank you

Deanna Kim
Acting Coordinator for Cuban Affairs

**From:** Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Sent:** Friday, July 6, 2018 4:46 PM
**To:** Escobar, Gabriel <EscobarG@state.gov>
**Cc:** Mickael Behn <mickaelbehn@gmail.com>; Javier Garcia-Bengochea (jgb@bellsouth.net) <jgb@bellsouth.net>; Aaron Johnson (ajohnson.hdc@gmail.com) <ajohnson.hdc@gmail.com>; Patel, Nutan B <PatelNB@state.gov>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Excellent Gabriel. I see from Nutan's out-of-office e-mail response of today that she is on Temporary Duty Assignment in Havana. I was thinking that she may be able to see first hand what is happening with our property there.

Very best wishes,

Jerry

*Jerry M. Johnson*
*Senior Vice President, Director of Wealth Management*

**BANK ᴼᶠ ᵗʰᵉ BLUEGRASS**
ᴬ   ᵀ ᴿ ᵁ ˢ ᵀ   ᶜ ᴼ

**WEALTH MANAGEMENT**

*Direct Telephone: (859) 233-8903*
*Fax: (859) 252-0304*
*215 Southland Drive, Lexington, Kentucky 40503*

**From:** Escobar, Gabriel <EscobarG@state.gov>
**Sent:** Friday, July 06, 2018 4:40 PM
**To:** Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Jerry,

Yes, all of the information that you and Dr. Garcia-Bengochea have shared is being looked into by both our Legal
Department (Rachel and Jeff Kovar) and our Cuban Affairs team (Nutan and Erica). We largely overlap but we each have
a piece of it, which is why you may get separate emails requesting different information. We coordinate closely.

Thank you as well.

Best regards,

Gabriel

**From:** Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Sent:** Friday, July 06, 2018 4:35 PM
**To:** Escobar, Gabriel <EscobarG@state.gov>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T
<MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Thank you for the clarification Gabriel. One last clarification question for today if I may. Does your response below,
where you say - "Despite my transfer, it will not require to be restarted.", include our Title IV action request for our Havana
Docks Corporation property in Havana as well as for Dr. Carcia-Bengochea's Title IV action request for his docks in
Santiago de Cuba?

Again, many sincere thanks, and very best regards for your new endeavor related to your transfer.

Jerry

**Jerry M. Johnson**
**Senior Vice President, Director of Wealth Management**



WEALTH MANAGEMENT

*Direct Telephone: (859) 233-8903*
*Fax: (859) 252-0304*
*215 Southland Drive, Lexington, Kentucky 40503*

**From:** Escobar, Gabriel <EscobarG@state.gov>
**Sent:** Friday, July 06, 2018 4:17 PM
**To:** Jerry Johnson <jjohnson@bankofthebluegrass.com>; Mickael Behn <mickaelbehn@gmail.com>; Home
<jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T
<MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

All of the people you have copied will continue to work on this issue with the exception of Kevin Murakami and
myself. Despite my transfer, it will not require it to be restarted.

**From:** Jerry Johnson <jjohnson@bankofthebluegrass.com>

**Sent:** Friday, July 06, 2018 4:06 PM

**To:** Escobar, Gabriel <EscobarG@state.gov>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>

**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>

**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Thank you for your prompt reply Gabriel. Respectfully, when you say "...please stay in touch with the folks who are continuing to work on Cuban issues", can you tell me specifically who those folks are as it relates to our Title IV action request for the trafficking violations that we perceive are happening to our port properties in Havana and Santiago de Cuba? Again, and respectfully, we seem to have received a bit of conflicting messages from a couple of prior e-mail exchanges, one from you on 6/5/18 (attached), and one from your colleague, Rachel Alpert from the legal team, that she sent on 6/12/18 (attached) in response to my e-mail to her. Let me attempt to explain as follows:

> In your e-mail of 6/5/18, you write in part, *"I have passed this information and the information provided by Dr. Bengochea to our legal team. Once they have additional requests for information or a response, I will be back in touch."*
> In Rachel Alpert's e-mail to me of 6/12/18, she writes, *"Jerry – Thank you for your email. Per the attached Federal Register notice, the Office of Cuban Affairs is the appropriate POC for Title IV-related inquiries."*

With your pending departure (and based on what appears to be conflicting e-mails above in terms of center of responsibility) frankly we are concerned that we may not have an open file at the State Department dealing with our Title IV request. In other words, we would hate to have to start our process over again once you are gone. We hope there is an active file presently established for us, and if you could confirm this point we would appreciate.

To further clarify, we are asking for Title IV enforcement action for the docks properties in both Santiago de Cuba and Havana. The Santiago docks are owned by Dr. Javier Garcia-Bengochea, and the docks in Havana are owned by Havana Docks Corporation, with whom I am affiliated. Dr. Garcia has requested Title IV action against the Chinese companies that are trafficking in his stolen property in Santiago, and we appreciate your forwarding of his information to your colleagues who work on China.

For the docks in Havana, owned by Havana Docks Corporation, we in particular would like to commence Title IV proceedings by the denying of United States visas to the officers and directors of Global Ports Holding, PLC as outlined in my e-mail to you of 5/29/18 (attached). Global Ports Holding, a Turkish company, has struck a deal with the Cuban company Aries S.A. (a probable shell company of the Cuban regime) to operate Havana Docks for the next 15 years. If this is not a clear example of trafficking in our confiscated Havana Docks property, we don't know what an example of trafficking as defined by Helms-Burton would be.

Further, for both of our Santiago de Cuba and Havana port properties, we respectfully request that Title IV action be brought against non-U.S. directors and officers of all of the commercial cruise lines that are docking at our properties (Norwegian Cruise Lines Holdings, Carnival, PLC, an Royal Caribbean Cruises, Ltd., Viking Ocean Cruises, Pearl Seas Cruises, Victory Cruise Lines, Et al.). We feel the trafficking in our properties by the cruise lines is the most egregious situation of all, as here we have a situation where U.S. companies are stealing from Dr. Garcia and Havana Docks Corporation, a U.S. citizen and a U.S. Corporation respectively, who are supposed to be protected from such action by Helms-Burton. Respectfully, I site again for you and the persons copied on this e-mail the section in Title IV that was written to give us this protection, which reads in part:

> TITLE IV—EXCLUSION OF CERTAIN ALIENS
>> SEC.401. EXCLUSION FROM THE UNITED STTES OF ALIENS WHO HAVE CONFISCATED PROPERTY OF UNTIED STATES NATIONALS OR WHO TRAFFIC IN SUCH PROPERTY.
> reading in part:
> **(a) Grounds for Exclusion.—The Secretary of State shall deny a visa to, and the Attorney General shall exclude from the United States, any alien who the Secretary of State determines is a person who, after the date of the enactment of this Act—**
> **(1) Has confiscated, or has directed or overseen the confiscation of, property a claim to which is owned by a United States national, or converts or has converted for personal gain confiscated property, a claim to which is owned by a United States national;**
>> **(2) Traffics in confiscated property, a claim to which is owned by a United States national;**

**(3)  Is a corporate officer, principal, or shareholder with a controlling interest of  an entity which has been involved in the confiscation of property or trafficking in confiscated property, a claim to which is owned by a United States national; or**

If we have not proved our case for you that we have been and are continuing to be wronged as outlined above, or if we have not proven to you that we are the legitimate owners of the docks properties stolen by the Cuban government, we would appreciate directive from the State Department as to what we may do in order to activate the provisions of Helms-Burton.

Very respectfully yours,

Jerry

**Jerry M. Johnson**
**Senior Vice President, Director of Wealth Management**

**BANK ᴼᴲ BLUEGRASS**

**WEALTH MANAGEMENT**

Direct Telephone: (859) 233-8903
Fax: (859) 252-0304
215 Southland Drive, Lexington, Kentucky 40503

**From:** Escobar, Gabriel <EscobarG@state.gov>
**Sent:** Friday, July 06, 2018 12:14 PM
**To:** Jerry Johnson <jjohnson@bankofthebluegrass.com>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Jerry,

We've looked at all the information you've provided and found it to be a good start for moving toward further investigation.  We have taken the information you provided and shared it with our colleagues who work on China to ask for information about the Chinese companies operating in the port.   We will continue to monitor developments on the port as well.  That's as much as I can share at this point, but please stay in touch with the folks who are continuing to work on Cuban issues.

Best regards,

Gabriel

**From:** Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Sent:** Friday, July 06, 2018 10:31 AM
**To:** Escobar, Gabriel <EscobarG@state.gov>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Good morning Gabriel.  I hope all is well for you.  Hope you don't mind, but I just wanted to check in with you for a moment as I know your departure date is soon.  Do you have any update for us in regard to our request for Title IV action?

Best regards,

HDC 016087

Jerry

**Jerry M. Johnson**
*Senior Vice President, Director of Wealth Management*

**BANK ᵗᴴᴱ BLUEGRASS**
A    T R U S T    C O

**WEALTH MANAGEMENT**

*Direct Telephone: (859) 233-8903*
*Fax: (859) 252-0304*
*215 Southland Drive, Lexington, Kentucky 40503*

**From:** Escobar, Gabriel <EscobarG@state.gov>
**Sent:** Tuesday, June 05, 2018 3:42 PM
**To:** Jerry Johnson <jjohnson@bankofthebluegrass.com>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: (5) Javier Garcia-Bengochea, MD Title IV Cuba Claims

Mr. Johnson,

I depart this position in mid-July. I will aim to get something substantive back to you before then.

Gabriel

**From:** Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Sent:** Tuesday, June 05, 2018 2:03 PM
**To:** Escobar, Gabriel <EscobarG@state.gov>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: Javier Garcia-Bengochea, MD Title IV Cuba Claims

Thank you very much for the reply Gabriel, and understood.  Not to hold you to any time frame commitment in regard to your answer, but would you have an estimate as to how long your legal team might need to provide us with their analysis?

Please forgive if we sound  a bit impatient, but what Global Ports Holding and the cruise lines are doing with our Havana and Santiago Docks properties in our opinion is just blatantly wrong.

Thank you again and best regards,

Jerry

**Jerry M. Johnson**
*Senior Vice President, Director of Wealth Management*

**BANK ᵗᴴᴱ BLUEGRASS**
A    T R U S T    C O

**WEALTH MANAGEMENT**

*Direct Telephone: (859) 233-8903*
*Fax: (859) 252-0304*
*215 Southland Drive, Lexington, Kentucky 40503*

HDC 016088

**From:** Escobar, Gabriel <EscobarG@state.gov>
**Sent:** Tuesday, June 05, 2018 1:45 PM
**To:** Jerry Johnson <jjohnson@bankofthebluegrass.com>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: Javier Garcia-Bengochea, MD Title IV Cuba Claims

Mr. Johnson,

Apologies for my late response. I was out all of last week. I have passed this information and the information provided by Dr. Bengochea to our legal team. Once they have additional requests for information or a response, I will be back in touch.

Best regards,

Gabriel Escobar

**From:** Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Sent:** Tuesday, June 05, 2018 10:45 AM
**To:** Escobar, Gabriel <EscobarG@state.gov>; Mickael Behn <mickaelbehn@gmail.com>; Home <jgb@bellsouth.net>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: Javier Garcia-Bengochea, MD Title IV Cuba Claims

Good morning Gabriel. I just wanted to send a follow-up in regard to my e-mail to you of last Tuesday (listed below). Have you had an opportunity to review the listed points and our request for action in reference to Title IV?

Best regards,

Jerry

*Jerry M. Johnson*
*Senior Vice President, Director of Wealth Management*



WEALTH MANAGEMENT

*Direct Telephone: (859) 233-8903*
*Fax: (859) 252-0304*
*215 Southland Drive, Lexington, Kentucky 40503*

**From:** Jerry Johnson
**Sent:** Tuesday, May 29, 2018 12:44 PM
**To:** Home <jgb@bellsouth.net>; escobarg@state.gov; Mickael Behn <mickaelbehn@gmail.com>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; Aaron Johnson <aamjohnson17@gmail.com>
**Subject:** RE: Javier Garcia-Bengochea, MD Title IV Cuba Claims

Dr. Garcia,
Thank you very much for forwarding the copy of your correspondence from last week with Gabriel regarding a request to him to give us a status update on the State Department's efforts in enforcing Title IV of the Cuban Liberty and Democratic Solidarity (Libertad) Act of 1996 (the Act), regarding our Title IV claims against Norwegian Cruise Lines Holdings, Carnival, PLC, an Royal Caribbean Cruises, Ltd., Viking Ocean Cruises, Pearl Seas Cruises, Victory Cruise Lines, Et al. (the cruise lines). This being the claims request (attached) that you had sent to Gabriel in your 2/22/18 correspondence.

Gabriel,

I would like to come into the conversation with you as well, if that would be ok. By way of refresher, I am the gentleman who visited with you on behalf of Havana Docks Corporation when Dr. Garcia and I came to your office on Wednesday December 20th of last year. Quite a bit has happed on the world stage since that time, including a very disturbing event regarding our Havana Docks property that was announced on Tuesday of last week through a news report at the following link (if you would kindly click on the link for a moment and review, I would appreciate): http://www.globalportsholding.com/news-details/113/awarded-agreement-for-operation-of-havana-cruise-port-cuba.

The picture of the docks that Global Ports Holding, Plc so proudly touts in their news article through the link above is our very same Havana Docks Corporation property. You will note on the picture the name of the building, "Terminal Sierra Maestra". This is the same building where Mr. William C. Behn's office was located in reference to the picture I've attached for you showing Castro's thugs when they came to steal the property from Mr. Behn in 1960 (Mr. Behn is seated at his desk. Note the gun belts on the rebels and their riffles between their legs. The gentlemen standing are officers of Havana Docks Corporation). This picture of Mr. Behn is the same picture I gave for your file to your associate who was with us in our December 20th meeting.

I've also attached for your review our Certified Claim for the property (Claim CU-2492), as certified by the Foreign Claims Settlement Commission of the United States on April 21, 1971 (copy of this document was also given to your associate at our meeting on December 20th). Further, I've attached for you a copy of our Havana Docks Corporation's Form 1120 U.S. Corporate Income Tax Return for 2016 (Tax Identification Numbers on the Form 1120 are redacted for security purposes for this e-mail transmission, however, I can supply you with those Tax ID's if you would like. Also, our 2017 filing of Form 1120 is on extension, but I will be happy to supply you with a copy of that return when completed).

The reason that I am attaching the Certified Claim and the Corporate Tax Return for your review is to show you that Havana Docks is indeed a legitimate corporation that has never ceased to be in existence, even though the core of its business assets were stolen by the Castro regime. The company had a small amount of investment assets (bank accounts, etc.) in the United States at the time the docks in Cuba were stolen, and the earnings on those U.S. investments represents the income we have reported to the IRS faithfully every year through the filing of Form 1120, like the one attached. I provide you with this proof of legitimacy in support of the requirement of the Act (Helms-Burton).

I know that you and your staff know the Act backwards and forwards, but on this legitimacy of ownership issue I would like to cite a brief section of the Act for the parties to this e-mail, with that citation found under "*Title III-Protection of Property Rights of United States Nationals, SEC. 303. Proof of Ownership of Claims to Confiscated Property*", which reads in part:

    (a) Evidence of Ownership.—
    (1) **Conclusiveness of certified claims.—In any action brought under this title, the court shall accept as conclusive proof of ownership of an interest in property a certification of a claim to ownership of that interest that has been made by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 (22 U.S.C. 1643 and following).**

In that Havana Docks Corporation has conclusive proof of ownership and is further considered a "*United States National*", it is my hope and belief that we are an entity that is under your protectorate, and that part of your department's role is to help entities such as ours with the enforcement of domestic and international laws, laws that might alleviate the injustice we are blatantly being further subjected to by the wholesale trafficking in our Certified Claim property by other U.S. domiciled companies (i.e. Carnival, Royal Caribbean, Norwegian, etc.), and now a Turkish company, Global Ports Holding, Plc.

On the point of aiding with the enforcement of laws, admittedly I wasn't exactly sure of what the U.S. Department of State does, so I looked at your Mission Statement on your web site. One part of that Mission Statement that caught my eye was in reference to the aims set forth in the President's National Security Strategy and its three underlying and interdependent components of diplomacy, development, and defense. The component objective regarding development was of particular interest to me, whereby your Mission Statement sets forth:

> *Third, in confronting the intersection of traditional and transnational challenges, we will combine our diplomatic skills and development assistance to act boldly to foster a more democratic and prosperous world integrated into the global economy. We will not waver in our belief that all human beings deserve lives of dignity and the opportunity to achieve their aspirations. We will promote freedom of speech, conscience, and religion, the rule of law, and economic freedom. In concert with civil society organizations, we will speak out against human rights abuses and the trafficking of human beings.*

HDC 016090

Obviously I was focused in on the "rule of law" part above in reference to our Certified Claims for Havana Docks and the port of Santiago de Cuba on behalf of Dr. Garcia, but so many of the other poignant words in this paragraph I believe probably apply toward the State Department's goals for Cuba as whole.

In further review of the Act, another section I would like to briefly quote for our readers of this e-mail is also found under Title III, in the opening part of *"SEC.301. FINDINGS"*, which reads:

**The Congress makes the following findings:**
**(1) Individuals enjoy a fundamental right to own and enjoy property which is enshrined in the United States Constitution.**
**(2) The wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development.**

As a final quote from the Act, I bring our readers' attention to:

*TITLE IV—EXCLUSION OF CERTAIN ALIENS*

*SEC.401. EXCLUSION FROM THE UNITED STTES OF ALIENS WHO HAVE CONFISCATED PROPERTY OF UNTIED STATES NATIONALS OR WHO TRAFFIC IN SUCH PROPERTY.*

reading in part:

**(a) Grounds for Exclusion.—The Secretary of State shall deny a visa to, and the Attorney General shall exclude from the United States, any alien who the Secretary of State determines is a person who, after the date of the enactment of this Act—**
**(1) Has confiscated, or has directed or overseen the confiscation of, property a claim to which is owned by a United States national, or converts or has converted for personal gain confiscated property, a claim to which is owned by a United States national;**
**(2) Traffics in confiscated property, a claim to which is owned by a United States national;**
**(3) Is a corporate officer, principal, or shareholder with a controlling interest of an entity which has been involved in the confiscation of property or trafficking in confiscated property, a claim to which is owned by a United States national; or**

Well, enough of my rambling and back to the purpose of my writing to you Gabriel and in support of Dr. Garcia's request to you for an information status.

The purpose of my writing is basically a single question. Is the State Department going to help us by enforcement of Title IV of the Act through notification to the appropriate officers and directors of the cruise lines (Norwegian Cruise Lines Holdings, Carnival, PLC, an Royal Caribbean Cruises, Ltd., Viking Ocean Cruises, Pearl Seas Cruises, Victory Cruise Lines, Et al. ) of the pending denial of U.S. visas?

In hopes that the answer to the above question is yes, and given the events that I mentioned above that transpired last week regarding Global Ports Holding, Plc's announcement of the agreement they reached with the Cuban shell entity to manage Havana Docks for the next 15 years, we also respectively ask that Title IV action be brought against the appropriate officers and directors of Global Ports Holding, Plc. From their annual report of last year, I've attached for your review a listing of Global Port Holding, Plc's officers and directors.

I close with a couple of points. First, I thank you for reading this long plea to you for help. Second, I would ask you to note the "To" copy on this e-mail to Mr. Mickael Sosthenes Behn, President of Havana Docks Corporation and the grandson of Mr. William C. Behn, the gentleman seated at the desk in the attached photograph. Further, Mickael is the great-grandson of Sosthenes Behn, the founder of International Telephone & Telegraph.

My sincere thanks to all readers on this e-mail.

Jerry

**Jerry M. Johnson**
*Senior Vice President, Director of Wealth Management*

**BANK ᵗʰᵉ BLUEGRASS**
A   T R U S T   C O

**WEALTH MANAGEMENT**

*Direct Telephone: (859) 233-8903*
*Fax: (859) 252-0304*

215 Southland Drive, Lexington, Kentucky 40503

**From:** Home <jgb@bellsouth.net>
**Sent:** Tuesday, May 29, 2018 11:25 AM
**To:** Mickael Behn <mickaelbehn@gmail.com>; Jerry Johnson <jjohnson@bankofthebluegrass.com>
**Cc:** Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>; Murakami, Kevin T <MurakamiKT@state.gov>; Alpert, Rachel K <AlpertRK@state.gov>; escobarg@state.gov
**Subject:** Re: Javier Garcia-Bengochea, MD Title IV Cuba Claims

FYI.

JGB
Sent from my iPhone

On May 23, 2018, at 4:42 PM, Escobar, Gabriel <EscobarG@state.gov> wrote:

Dr. Garcia-Bengochea:

I apologize for the delay in responding to your earlier messages. I was on travel last week.

Thank you for the information you have thus far provided in response to our February 22, 2018 letter requesting additional documentation. We continue to review and assess available documentation and information related to the port, port facilities, and area surrounding the harbor of Santiago de Cuba (the Property). We have carefully evaluated the information you have provided, and have a few follow-on requests:

- Can you explain how you came to learn of and acquire the deeds/documents showing ownership in the Property? In the affidavit of Desiderio Parreno, page 4 refers to the whereabouts of "all the real estate property deeds and all of the stock certificates in the various corporations in which we owned stock." He notes that such documents were originally with his aunt, Mrs. Maria Luisa Velazquez de Salcedo, but that it was unclear where these documents were at the time of his writing the affidavit. He explains that some documents may have been sent to a Havana attorney, Dr. Fernando Figueredo, who had subsequently moved to New York City, and that some may have been left with Mr. Angel del Castillo, someone who had managed the family's real estate investments and who never left Cuba before his passing. However, in your March 29 letter you stated that "the deeds could not be removed from Cuba without jeopardizing our safety and, thus, remain there. They are hidden in a place known only to me."

- Could you provide copies of the deeds to the Property, demonstrating your ownership interests. If such documentation is unavailable, please explain why and additionally provide an affidavit attesting to the contents of the deeds as you understand them and any other information or documentation that is available regarding their contents.

Sincerely,
Gabriel

-----Original Message-----
From: Home <jgb@bellsouth.net>
Sent: Thursday, March 29, 2018 6:58 AM
To: Escobar, Gabriel <EscobarG@state.gov>
Cc: Magallon, Erica G <MagallonEG@state.gov>; Patel, Nutan B <PatelNB@state.gov>
Subject: Javier Garcia-Bengochea, MD Title IV Cuba Claims

Gabriel,

Please see the attached letter in regards to your 2/22/18 correspondence to me relating to my Title IV claims against CCCC and the cruise lines.

Thank you

Javier

HDC 016092



EXHIBIT

2



**U.S. Department of Justice**

United States Attorney
Southern District of Florida

*99 N.E. 4 Street*
*Miami, FL 33132*
*(305) 961-9053*

February 19, 2021

<u>Via E-mail</u>

Deanna Kim
c/o Semra A. Mesulam, Esq.
Attorney-Adviser, L/WHA
Office of the Legal Adviser
U.S. Department of State
MesulamSA@state.gov

Re:    **Subpoena in Havana Docks Corporation litigation**
        **District Court for the Southern District of Florida**
        **Case Nos. 19-cv-21724, 19-cv-23588, 19-cv-23590, and 19-cv-23591**

Dear Ms. Kim:

Royal Caribbean Cruises Ltd., Carnival Corporation, MSC Cruises USA, Inc., and Norwegian Cruise Line Holdings, Ltd., (together, the "Cruise Lines") are each named defendants in the above-referenced cases pending in the U.S. District Court for the Southern District of Florida and brought by plaintiff, Havana Docks Corporation ("Havana Docks") under Title III of the LIBERTAD Act (the "Litigation"). The Cruise Lines have served subpoenas seeking your deposition testimony regarding communications you had with representatives of Havana Docks in 2017-2018 relating to the Cruise Lines' alleged trafficking in the piers and related facilities at the Port of Havana, Cuba in your official capacity as Acting Coordinator and Deputy Director at the Office of Cuban Affairs. Specifically, the Cruise Lines reference an August 2, 2018 email you sent to Havana Docks representatives, a copy of which is attached to this letter for reference (the "Aug. 2 Email").

In light of the relevant considerations set forth in 22 C.F.R. § 172.8—in particular the need to conserve your time to conduct the official business of the Department of State; the need to avoid the spending of time and money of the United States in private litigation; and the need to avoid involving the Department of State in controversial issues not related to its mission—the Cruise Lines have agreed to proceed with your deposition via written questions pursuant to Federal Rule of Civil Procedure 31.

I have reviewed the subpoenas, the Cruise Lines' written description of the nature and relevancy of the proposed testimony to the Litigation, and the factors enumerated in 22 C.F.R. § 172.8. After consulting with the Office of the Legal Advisor, I have determined that

Deanna Kim
February 19, 2021
**2 |** P a g e

and in light of the limited authorization that office has granted with respect to your testimony in this matter pursuant to 22 C.F.R. 172.4, I have determined that you may provide the requested testimony (i.e., answer the written deposition questions which will be provided to you in advance of the Rule 31 deposition (the "Deposition Questions")), **subject to the following restrictions**:

    A.  While you may acknowledge the contents of the Aug. 2 Email and testify as to whether it was sent by you in your official capacity as a Department of State employee, and while you may testify regarding your recollection of other written or verbal communications you had with Havana Docks representatives, if any, you are not authorized to offer any opinion or analysis made by you or the Department of State as to whether the Cruise Lines violated the LIBERTAD Act, any other federal law, or the laws of any other jurisdiction.

    B.  You are not authorized to disclose any legally privileged or classified information, confidential commercial or financial information, or any information that would reveal the internal deliberative processes of the Department of State or the Executive Branch. Legally privileged information includes, but is not limited to, the contents of attorney-client communications and attorney work product. Internal deliberative processes means the processes through which the Department of State—including the Office of Cuban Affairs—reaches particular decisions or develops specific policies, including any decisions made or that could be implied to be made in the Aug. 2 Email.

    C.  You are not authorized to testify about any pending investigations, any concluded investigations unrelated to the parties to the Litigation, any privileged or sensitive law enforcement information, or any matter that you reasonably believe might interfere with a pending investigation or enforcement proceeding.

       **In sum, your authorization to provide testimony in the form of answers to Deposition Questions is a limited authorization**. To the extent an answer to any of the Deposition Questions would encompass any of the above categories of information, you are not authorized to reveal that information in your answer.

       If you determine that answering any of the Deposition Questions would require you to testify about a matter outside the scope of the authorization provided by the Department of State and contained in this letter, you must state that you are not authorized to respond to the question. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); 22 C.F.R. § 172.4. However, to the extent you are able to answer the Deposition Questions, in part, without exceeding the scope of this authorization, you should do so. In other words, you should answer the Deposition Questions to the extent possible without exceeding the scope of authorization set forth herein. The parties to the Litigation will be provided with a copy of this letter and will therefore be on notice of the limited scope of your authorization to answer

Deanna Kim
February 19, 2021
**3** | P a g e

the Deposition Questions and they will hopefully tailor their questions so as to not draw an objection or instruction not to answer from me or from Department of State counsel.

      If, during the Rule 31 deposition, you are unsure about whether an answer to any of the Deposition Questions may exceed the scope of your authorization to testify, please state your uncertainty and await further instruction from me or Department of State counsel before answering. If you have any questions at all regarding this matter, please contact me.

                Sincerely,

                ARIANA FAJARDO ORSHAN
                UNITED STATES ATTORNEY

By:   _____
                Zakarij N. Laux
                Assistant United States Attorney

Enclosures (as stated)

Enclosure