# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HAVANA DOCKS CORPORATION,
     Plaintiff,

v.

CARNIVAL CORPORATION,
     Defendant.

_____/

Case No. 19-cv-21724
BLOOM/MCALILEY

HAVANA DOCKS CORPORATION,
     Plaintiff,

v.

MSC CRUISES SA, et al.,
     Defendants.

_____/

Case No. 19-cv-23588
BLOOM/LOUIS

HAVANA DOCKS CORPORATION,
     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
     Defendant.

_____/

Case No. 19-cv-23590
BLOOM/LOUIS

HAVANA DOCKS CORPORATION,
     Plaintiff,

v.

NORWEGIAN CRUISE LINE HOLDINGS, LTD.,
     Defendant.

_____/

Case No.: 19-cv-23591
BLOOM/LOUIS

## PLAINTIFF HAVANA DOCKS CORPORATION'S
## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO
## CONFIRM THE APPLICABILITY OF THE "ONE-SATISFACTION RULE"

The motions to confirm the applicability of the "one-satisfaction rule" (the "Motions")[1] filed by Defendants Carnival Corporation, MSC Cruises, Royal Caribbean Cruises Ltd. and Norwegian Cruise Line Holdings Ltd. (collectively, the "Defendants") should be denied for several reasons.

First, the "one-satisfaction rule" is an equitable set-off doctrine that applies after trial or judgment; it is not ripe for adjudication at this stage. Second, the "rule" is not recognized in Title III and, moreover, is foreclosed by the text of the Act. Third, the "rule" does not apply on facts of these cases because (a) Havana Docks has never been satisfied so there is nothing to set off, (b) the Defendants are not joint tortfeasors or jointly and severally liable, and (c) each Defendant's independent and unauthorized trafficking separately harmed Havana Docks. Fourth, the "rule" does not apply to punitive damages, which the Court has found Title III's treble damages are. And fifth, to the extent Defendants request the entry of a single or collective judgment, this is contrary to Supreme Court precedent and should be denied.

For these reasons, as further explained below, the Motions should be denied.

## I.  The Motions are Not Ripe.

The "one satisfaction rule" is an equitable doctrine that sets off damage amounts recovered by a plaintiff from a joint tortfeasor to satisfy a single, indivisible harm. It is a post-trial issue to be resolved by a court after a jury returns a damages award. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1274-75, 1276 n.5 (11th Cir. 2008) ("*BUC I*") ("We agree that motions seeking credit for settlement

---

[1] *Carnival*, ECF No. 524; *MSC*, ECF No. 375; *Royal*, ECF No. 298; *NCL*, ECF No. 412.

amounts obtained against joint tortfeasors are appropriately brought under Rule 60(b)(5).”); *see also Hoerchler v. Equifax Info. Servs., LLC,* 568 F. Supp. 3d 931, 935-36 (N.D. Ill. 2021) (collecting cases); *Cheetham v. Specialized Loan Serv. LLC*, 2021 WL 2137823, **1-2 (W.D. Wash. May 26, 2021) (collecting cases); *In re Outlaw Labs, LP Litig.*, 2022 WL 658969, *4 (S.D. Cal. Mar. 4, 2022) (“The extent to which the one satisfaction rule might bar recovery. . . , if at all, is an issue best resolved after trial.”); *Philpot v. Emmis Operating Co.*, 2019 WL 5149863, *6 (W.D. Tex. June 25, 2019) (one satisfaction argument premature where, *inter alia*, “damages in this suit have not been determined by a factfinder”); *see also United States v. Honeywell Int'l Inc.*, 502 F. Supp. 3d 427, 476-77 (D.D.C. 2020) (discussing procedural progression of liability, trebling and set-off determination in FCA case).[2]

Here, no damages have been awarded and Havana Docks has not been satisfied in any respect. As such, Defendants are simply seeking an advisory opinion on a legal question that is not raised by the record in this case. The Motions should be denied on this basis alone. *E.g., Gagliardi v. TJCV Land* Trust, 889 F.3d 728, 733 (11th Cir. 2018) (“We are not in the business of issuing advisory opinions that do not ‘affect the rights of litigants in the case before’ us or that merely opine on ‘what the law would be upon a hypothetical state of facts.’”).

---

[2]    *Cf. Kozyrev v. Ponomarenko*, 2020 WL 977635, *2 (S.D. Fla. Feb. 28, 2020) (Bloom, J.) (“Finally, to the extent that Plaintiff contends that Ponomarenko may be entitled to a set-off of any potential judgment based upon his agreement with Ponomarenko, that is an issue that can be addressed post-trial”); *Jaber v. NCL (Bahamas) Ltd.*, 2015 WL 12860466, *1 (S.D. Fla. July 1, 2015) (King, J.) (“Any collateral sources set-off (if applicable) should be addressed post-trial.”); *Baptista v. Carnival Corp.*, 2018 WL 1226041, *1 (S.D. Fla. Mar. 5, 2018) (Moore, J.) (same).

Defendants argue that "[a]djudicating this issue pretrial will 'aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial,' and help the Parties focus their pretrial efforts more efficiently." (Mot. at 2 (quoting *Harrell v. Carnival Corp.*, 2021 WL 5759335, at *1 (S.D. Fla. Dec. 3, 2021).) But none of that is true. The issue will not interrupt trial because, as confirmed by nearly every case cited in the Motions, the one-satisfaction rule is not a trial issue; it is an equitable doctrine that, where applicable, serves to set off a damages award or judgment <u>after</u> trial.[3] *See BUC I*, 517 F.3d at 1274-75, 1276 n.5.

Defendants also insinuate that the Motions are "'ripe for decision' pretrial because it would 'facilitate further settlement negotiations between the parties.'" (Mot. at 2-3 (quoting *Hoerchler*, 2021 WL 4902452, at *3).) But, like *Hoerchler*, "there

---

[3]    *See BUC I.*, 517 F.3d at 1273-74 (argument raised and adjudicated post-judgment via Rule 60(b) motion); *Chisholm v. UHP Projs., Inc.*, 205 F.3d 731, 733-34 (4th Cir. 2000) (argument raised and adjudicated "after post-trial briefing"); *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 76 (Tex. 1993) (argument raised and adjudicated post-trial via "motion for judgment notwithstanding the verdict"); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 428 (3d Cir. 1993) (argument raised and adjudicated by post-trial motion); *Hoerchler*, 2021 4902452, at *3 ("several persuasive cases have concluded that the applicability of a damages-related issue like the one-satisfaction rule are appropriately deferred until after trial"); *In re Graybill*, 2020 WL 4810298, *3 (M.D. Fla. July 21, 2020) (argument raised post-judgment via Bankruptcy Rule 9024 and Fed. R. Civ. P. 60(b)(5)); *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 553-54 (2d Cir. 1972) (issue on appeal was the district "court's failure to reduce the <u>judgment</u> by the amounts paid by the settling defendants") (emphasis added); *Stewart Title Guar. Co. v. Sterling*, 822 S.W. 2d 1, 4 (Tex. 1991) (argument to "obtain a pre-trebling credit" to damages award under one-satisfaction rule raised and denied post-trial).

is no representation in [Defendants'] motion that [they are] currently engaged in settlement negotiations with plaintiff or that [they] intend[] or desire[] to resume those negotiations." *Id.* (citation omitted). Quite the contrary. "[T]his matter was mediated for a second time on Wednesday June 8, 2022" and the "mediation resulted in an impasse." Mediator's Report, *Carnival*, ECF No. 523.

The one-satisfaction rule is a post-trial or post-judgment issue. It is not ripe for decision and the Motions should be denied.

## II.   The "One Satisfaction Rule" Does Not Apply to a Title III Action.

The text of the LIBERTAD Act forecloses the application of Defendants' unenumerated, equitable defense under the "one satisfaction rule."[4]

Last year, the Eleventh Circuit confirmed that courts "cannot create equitable *defenses* to a statutory cause of action when the text forecloses them." *Belevich v. Thomas*, 17 F.4th 1048, 1053 (11th Cir. 2021). This Court has similarly recognized that "[w]hen a federal statute enumerates defenses to liability, without specifying that other unenumerated defenses are available, the enumerated statutory defenses are generally deemed to be the exclusive defenses available under the statute." *Havana Docks Corp. v. Carnival Corp.*, --- F. Supp. 3d ----, 2022 WL 831160, at *84 n.48 (S.D. Fla. Mar. 22, 2022) (Bloom, J.) (citation omitted; granting summary judgment for Havana Docks on unenumerated, equitable defenses).

---

[4]   Each Defendant pled the "one satisfaction rule" as an affirmative defense in their case. *See Carnival*, ECF No. 160 at 19 ("Tenth Defense—One Satisfaction Rule"); *MSC*, ECF Nos. 115 at 17, 133 at 16 (ninth defense); *Royal*, ECF No. 59 at 6 (sixth defense), ¶ 6; *Norwegian*, ECF No. 107 at 15 (eighth defense).

In *Belevich*, the question presented was whether certain unenumerated, equitable defenses applied to the statutory cause of action in 8 U.S.C. § 1183a. "[S]tart[ing] with the text of the statute," the Eleventh Circuit found that the act was "best read to identify an exclusive list" of defenses. *Belevich*, 17 F.4th at 1052. The Court reasoned that the statute imposed liability through "strong language—'shall' and 'cannot'—suggest[ing] that the list of terminating events [i.e. defenses] is exclusive." *Id*. Also material was that Congress could have—but did not—preface the statutory defenses with open-ended language (i.e. "including"), which would have "indicat[ed] an 'illustrative, not exhaustive' list" of defenses. *Id*. The Court further noted that "the statute provides a cause of action and remedies exclusively against the" defendant and "[n]othing in this structure contemplates an equitable remedy or defense for the benefit of a" defendant. *Id*. at 1052-53. Finally, the Eleventh Circuit determined that the defendants' "proposed non-statutory defenses . . . are inconsistent with" the express purpose of the statute. *Id*. at 1053-54. The Eleventh Circuit's analysis in *Belevich* strongly counsels against creating a "one satisfaction rule" defense to a Title III action.

First, like *Belevich*, Congress imposed Title III liability in strong, mandatory terms. 22 U.S.C. § 6082(a)(1)(A) ("Except as otherwise provided in this section, <u>any person</u> that . . . traffics in property which was confiscated . . . <u>shall be liable</u> . . . for money damages <u>in an amount equal to</u> the sum of" the greater of three statutory measures) (emphases added). This statutory language does not limit the recovery of damages to just one trafficker. It unambiguously requires that "<u>any</u> person that . . .

traffics . . . <u>shall be liable</u>" for "money damages <u>in an amount equal to the sum</u> of" the greater of three statutory measures. *Id.* (emphases added); *see Gallardo By and Through Vassallo v. Marstiller*, 142 S. Ct. 1751, 1758 (2022) ("The word 'any has an expansive meaning.") (alteration omitted; quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). This strong, mandatory language "suggests that the list of [statutory defenses] is exclusive." *Belevich*, 17 F.4th at 1052.

Second, Congress did not use open-ended language (i.e. "including," "such as," etc.) in enumerating the defenses to a Title III action. *Id.* Rather, it did the opposite. The Act states that traffickers "shall be liable" for statutory damages "[e]xcept as otherwise provided in this section"—close-ended language that counsels against implying non-statutory defenses into the Act. 22 U.S.C. § 6082(a)(1)(A) (emphasis added); *Blasland Bouck & Lee Inc. v. City of N. Miami*, 283 F.3d 1286, 1304-05 (11th Cir. 2002) (close-ended language in CERCLA's § 107(a) "bars the assertion of all equitable defenses," holding that "this Court [does not] ha[ve] the same power as Congress to create exceptions to section 107(a)'s bar on other defenses based on our own sense of what would be good policy"). The Act's definition of "traffics" is similarly structured, imposing liability "except as provided in subparagraph (B)"—the four statutory defenses to trafficking. *Id.*, § 6023(13)(A). As in *Belevich*, this language evidences that Congress intended a closed-universe of Title III defenses and "justifies the inference that [defenses] not mentioned were excluded by deliberate choice, not inadvertence." *Belevich*, 17 F.4th at 1052 (alteration and citation omitted).

That inference is strong in Title III, where Congress actually considered election of remedies and declined to adopt the "one satisfaction rule." Section 6082(f)(1) requires that "a plaintiff must elect to seek relief under Title III or relief under other sources, like the common law, but not both." *Havana Docks*, --- F. Supp. 3d ----, 2022 WL 831160, at *82. Further, section 6082(f)(2) of the Act discharges the United States from its duty to espouse a claim in future settlement negotiations with the Cuban Government where a plaintiff recovers the full claim in a Title III action. Although neither of these provisions apply in this case, they clearly indicate that Congress considered the issue of satisfaction and chose to limit the defenses to those codified in the statute. This was a conscious legislative choice that must be given effect by declining to create new exceptions to the Act that Congress itself left out. *See Daker v. Comm'r, Ga. Dep't of Corrections*, 820 F.3d 1278, 1283-84 (11th Cir. 2016) (declining to impute unenumerated grounds to the PLRA's three-strike rule, holding that "[u]nder the negative implication canon, these three grounds are the *only* grounds that can render a dismissal a strike."); *Tug Allie-B Inc. v. United States*, 273 F.3d 936, 942-44 (11th Cir. 2001) (holding that unenumerated limitation of liability defense was not applicable to action under Park System Resource Protection Act ("PSRPA") where "there is nothing in the language of the PSRPA which suggest that any damages under the Act should be in any way limited," "[n]othing in the statute suggests that the damages are capped by any external factor," the statute "permits only a very limited number of defenses" that were "intended to be narrow and

exclusive," and limiting a defendant's liability based on the unenumerated defense "would effectively incorporate [the] defense[] into the PSRPA").

Third, as in *Belevich,* Defendants "gained no rights at all under the statute," which "imposes a one-way obligation on the" Defendants to abstain from trafficking in confiscated property. 17 F.4th at 1052. Title III "provides a cause of action and remedies exclusively against the [traffickers] and in favor of [claim holders]." *Id.* at 1052-53. Because "[n]othing in this structure contemplates an equitable remedy or defense for the benefit of a [trafficker]," the Court should decline to read a "one satisfaction rule" defense into Title III. *Id.* at 1053.

Fourth, the "one satisfaction rule" is inconsistent with and "contravene[s] the express purpose of" Title III and the LIBERTAD Act. *Id.* at 1053. The Act's legislative findings express that the purpose of Title III was both compensatory <u>and</u> deterrent:

- "the subsequent exploitation of [confiscated] property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce and economic development." 22 U.S.C. § 6081(2).
- "'trafficking' in confiscated property provides badly needed financial benefit . . . to the current Cuban Government and thus undermines the foreign policy of the United States." *Id.*, § 6081(6).
- "[t]he international judicial system, as currently structured, lacks fully effective remedies for the . . . unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property." *Id.*, § 6081(8).
- "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id.*, § 6081(11).

This Court has held that Title III's "stated goal of 'deter[ring] trafficking' and treble damages ultimately weigh in favor of finding that the Act sets forth a punitive,

legal remedy." *de Fernandez v. Seaboard Marine, Ltd.*, 2022 WL 2237186, **8-9 (S.D. Fla. June 22, 2022) (Bloom, J.); *see also Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 2022 WL 499710, *7 (S.D. Fla. Feb. 18, 2022) (Bloom, J.) (same). And, as further discussed in § IV, *infra*, "[i]t is established" that "the one satisfaction rule does not apply to punitive damages," which are unconcerned with compensation; punitive damages are intended to punish wrongful conduct and deter that conduct from occurring in the future. *Honeywell Int'l*, 502 F. Supp. 3d at 484. "To further the objectives of punishment and deterrence, it is more important that a defendant pay for his wrongdoing than the plaintiff receive the payment." *Ratner v. Sioux Nat. Gas Corp.*, 719 F.2d 801, 804 (5th Cir. 1983). Most directly, the Supreme Court explains that "[t]he law contains no rigid rule against overcompensation" and "[s]everal doctrines, such as the collateral benefits rule[5], recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *McDermott, Inc. v. AmClyde & River Don Castings, Ltd.*, 511 U.S. 202, 218-19 (1994) (declining to adopt the "one satisfaction rule" under maritime law).

So too under Title III, where Congress' stated purpose was to "deter trafficking in wrongfully confiscated property" and "deny traffickers any profits from

---

[5]     "[T]he collateral source rule provides that a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, without offset for any amounts received in compensation for the injury from a third party." *Higgs v. Costa Crociere S.p.A. Co.*, 969 F.3d 1295, 1310 (11th Cir. 2020) (Marcus, J.). The Eleventh Circuit recently confirmed the application of the "collateral source rule" under maritime law in litigation against a cruise line, stating that "the law conceptualizes the collateral source payment as necessarily a windfall . . . that is better awarded to the plaintiff than the tortfeasor." *Id.* at 1310-11. To the extent non-statutory equitable doctrines inform damages in a Title III action, the "collateral source rule" should apply.

economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11). Grafting a "one satisfaction rule" defense onto Title III would eviscerate this deterrent, foreign policy objective. Applying that doctrine to a Title III action would leave nothing to deter traffickers from exploiting confiscated property. Traffickers—past, present and future—would "undermine[] the foreign policy of the United States" by unjustly enriching themselves and the Cuban Government with impunity. *Id.*, § 6081(6), (8), (11). It would also dispense with a claimants' statutory right to authorize the use of its confiscated property. That is "inconsistent with th[e] purpose" of Title III. *Belevich*, 17 F.4th at 1053.

In short, the text of the Act unequivocally mandates that "any person" that traffics in confiscated property "shall be liable" for "money damages in an amount equal to the sum of the amount which is the greater of" three statutory measures. 22 U.S.C. § 6082(a)(1)(A). Congress enumerated a closed-universe of narrow defenses that may be invoked to avoid that liability. *See id*. §§ 6023(13)(B), 6084. The "one satisfaction rule" is not among them. The Court should deny the Motions and decline Defendants' invitation to create new Title III defense foreclosed by the text of the Act.

## III.   The "One Satisfaction Rule" Does Not Apply on the Facts of the Cases.

The Motions should also be denied because the "one satisfaction rule" would not apply to the facts of these cases, even if it were cognizable under Title III. First, and most fundamentally, Havana Docks has never been satisfied—by the Defendants or anyone else—so there is nothing to credit against any future judgments. Second, the "one satisfaction rule" applies only where there are joint tortfeasors, and the

11

Defendants are not. And, third, each Defendants' independent and unauthorized trafficking of the Terminal separately infringed on Havana Docks' rights.

### A.   There Has Been No Satisfaction, so the "One Satisfaction Rule" Does Not Apply.

The one-satisfaction rule "generally provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." *BUC I*, 517 F.3d at 1276 (citing *McDermott*, 511 U.S. at 219). Necessarily, the rule applies only where a plaintiff has actually obtained satisfaction—through settlement, satisfied judgment or otherwise—that could be credited against a joint tortfeasor's judgment.

But, in these cases, Havana Docks has not been satisfied in any respect. So there is nothing to credit against any judgments. The "one-satisfaction rule," therefore, has no application. The Motions should be denied on this basis alone.

### B.   Defendants are Not Joint Tortfeasors or Jointly and Severally Liable.

Applying the "one satisfaction rule" is limited to where tortfeasors act jointly or collectively to cause a single, indivisible harm. *See McDermott*, 511 U.S. at 218 (noting that historic iteration of the rule applied to "joint tortfeasor[s]"). As the Seventh Circuit has observed, "[t]he principle is seen most clearly in cases where a group of tortfeasors inflicts an indivisible harm, as for example where one tortfeasor places a bucket under the plaintiff's chair, another fills it with gasoline, and a third drops a match into it, causing it to explode and injure the plaintiff." *Bosco v. Serhant*,

836 F.2d 271, 280 (7th Cir. 1987). In *BUC I,* the Eleventh Circuit provided the following illustration:

> Noting that '[c]opyright infringement is in the nature of a tort, for which all who participate in the infringement are <u>jointly and severally liable</u>,' and that '[u]nder elementary principles of tort law a plaintiff is entitled to only one recovery for a wrong,' the Second Circuit held 'that the Copyright Act allows only a <u>single recovery</u> for a <u>single sale</u>; where <u>multiple defendants are all involved with sales</u>, as are the [non-settling] and the settling defendants here, <u>their liability is joint and several and recovering from one reduces the liability of the others</u>.'
>
> We agree.

*BUC*, 517 F.3d at 1277-78 (emphases added; quoting *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 553-54 (2d Cir. 1972)).

The Defendants did not act jointly or collectively in the commission of a common act of trafficking. Each Defendant trafficked without Havana Docks' authorization in different amounts, over different time frames, using different ships, and earning different profits. Between 2016 and 2019, Carnival trafficked in the Terminal over 83 trips, earning over $112 million. *Havana Docks*, 2022 WL 831160, at **22, 37. MSC, for its part, earned at least €247 million from its trafficking over 190 trips between 2015 and 2019. *Id*. Royal Caribbean grossed $430,925,849 in revenue for its 193 voyages to the Terminal between 2017 and 2019. *Id*. at **23, 37. And, between 2017 and 2019, Norwegian earned over $299 million for its 166 trips to the Terminal. *Id*.[6]

---

[6]     *Cf.* 22 U.S.C. § 6081(11) (a purpose of Title III is to "deny traffickers any profits from economically exploiting Castro's wrongful seizures").

Far from joint or collective action, the Defendants admit that this trafficking was committed independent of—and in direct competition with—each other. *See, e.g.,* Decl. of E. Rubi, *Royal*, ECF No. 242-5 at 1, ¶ 4 ("Royal Caribbean and its competitors generally call upon the same Caribbean ports, and those ports have limited berths for cruise ships, which means that Royal Caribbean competes with other cruise lines to secure dates on which its ships can use those berths.").[7] Defendants cannot credibly argue that they are joint tortfeasors or jointly and severally liable for the judgments. And because the "rule" could apply only if they were, the Motions should be denied.

C.    **Defendants Mischaracterize the Nature of Havana Docks' Injury.**

The Defendants argue that "one satisfaction rule should apply because there is only one alleged injury." (Mot. at 4.) To make this argument, Defendants partially quote the Court's prior orders, stating that the "Plaintiff's injury [is] 'not receiving the benefit of its interest in the Subject Property'—a single, indivisible harm." (*Id.* at 4 (partially quoting *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1228 (S.D. Fla. 2020) ("Havana Docks' injury is 'real' because it is not receiving the benefit of its interest in the Subject Property <u>and NCL's</u>

---

[7]       *See also* Decl. of H. Weeter, *Carnival*, ECF No. 461 at 12-13, ¶¶ 5, 7 ("Plaintiff has brought separate actions against three other cruise line Defendants, all of whom are among Carnival's primary competitors in the cruise-line business, which is a concentrated industry."); Decl. of J. Dovico, *MSC*, ECF No. 319-2 at 1-3, ¶¶ 4, 6, 10 ("MSC Cruises S.A. competes with other cruise lines, including competing with other cruise lines to negotiate and obtain contracts with port operations services, port agents, shore excursion providers, and other passenger cruise-related vendors with whom MSC Cruises S.A. contracts for purposes of operating cruises around the world, including the Caribbean."); Decl. of L. Sareen, *Norwegian*, ECF No. 356-1 at 3-4, ¶¶ 5-10 ("public disclosure could be employed by Norwegian's competitors to obtain a competitive advantage in the Caribbean as well as other markets").

subsequent trafficking in the confiscated property has undermined Plaintiff's right to compensation for that expropriation.") (emphasis added)).)

Although Havana Docks suffered that injury at the hands of the Cuban Government, that is not the harm that the Defendants inflicted by trafficking without authorization. As this Court and many others have held, Title III plaintiffs "allege[] an injury that is entirely separate from the confiscation of its property rights by the Cuban Government." *Havana Docks*, 2022 WL 831160, *80.[8] And for the "one satisfaction rule," the only harms relevant are those caused by each Defendant's unauthorized trafficking of the Terminal—not the Cuban Government's confiscation.

The Court has found that unauthorized trafficking "infring[es] on [Havana Docks'] property rights" and "undermin[es its] right to compensation." *Havana Docks*, 484 F. Supp. 3d at 1228. Relying on this Court's opinions as persuasive authority, courts around the country have further characterized this injury as the "unjust enrichment from [the traffickers'] use of that confiscated property," *Glen*, 7 F.4th at 336 (quoting *Havana Docks*, F. Supp. 3d at 1230); "us[ing] Confiscated Property

---

[8]    *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 336 (5th Cir. 2021) ("He alleges an injury that is entirely separate from either the confiscation of the properties or the operation of hotels on those properties."); *Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, --- F. Supp. 3d ---- , 2021 WL 6065758, **7-8 (S.D.N.Y. Dec. 22, 2021) ("In the statute, Congress identified an injury produced by later exploitation of confiscated property, which it expressly distinguished from the harm of the initial confiscation . . . It is clear that the trafficker's conduct exploiting the confiscated property is what causes that injury."); *Moreira v. Societe Generale, S.A.*, --- F. Supp. 3d ---- , 2021 WL 5524484, *4 (S.D.N.Y. Nov. 24, 2021) ("Plaintiffs allege an injury from Defendants' trafficking that is distinct from the confiscation . . . by the Cuban Government.")

'without consent from or paying adequate compensation to Plaintiffs," *de Fernandez v. Crowley Holdings, Inc.*, --- F. Supp. 3d ---- , 2022 WL 860373, *4 (S.D. Fla. Mar. 23, 2022) (Gayles, J.); *N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*, 2021 WL 3741647, *4 (S.D. Fla. Aug. 24, 2021) (Gayles, J.) (same); being "shut out wrongfully from the gains produced by exploiting property that is rightfully [the claimant's]," *Sucesores de Don Carlos Nunez*, --- F. Supp. 3d ---- , 2021 WL 6065758, at **7-8; the "inequitable enjoyment of benefits derived from the confiscated property at the expense of its rightful owner," *id.* at *8; "trafficking in the [confiscated property] without [a claimant's] authorization or paying compensation to him," *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 327 (D. Del. 2021); the "'use' and 'exploit[ation] of . . . confiscated property," *Moreira*, --- F. Supp. 3d ---- , 2021 WL 5524484, at *4; and the "unjust[] enrich[ment] by the 'significant profits' [traffickers] earned based, in part, on [the claimant's] confiscated assets," *id.*

These are the injuries each Defendant inflicted on Havana Docks through its unauthorized trafficking of the Terminal. Each time a Defendant trafficked without authorization, Havana Docks was "shut out wrongfully from the gains produced by exploiting property that is rightfully" its. *Sucesores de Don Carlos Nunez*, --- F. Supp. 3d ---- , 2021 WL 6065758, at **7-8. This is not a single, indivisible harm; these harms separately occurred each time the Defendants independently exploited the Terminal without obtaining Havana Docks' consent or compensating it.

A close reading of the Eleventh Circuit's opinions in *BUC* illustrates why the "one satisfaction rule" does not apply on the facts of these cases.[9] The plaintiff there, BUC International Corp. ("BUC"), "developed a computer network and software application" called BUCNET that "was designed to create a centralized directory of yacht listings so that brokers could more easily access industry information." *BUC Int'l Corp. v. Int'l Yacht Counsel, Ltd.*, 489 F.3d 1129, 1134 (11th Cir. 2007) ("*BUC II*"). "Brokers gained access" to BUCNET "by entering into a license agreement with BUC." *Id.* "BUCNET was thus a broker-to-broker multiple listing service ('MLS')." *Id.* In 1997, BUC registered a "copyright in the 'compilation, selection and organization of the BUCNET database,' i.e., the centralized directory of yacht listings," and, later, "the text of the vessel listings." *Id.* at 1135 (alterations omitted).

In 2000, a trade group, "Florida Yacht Brokers Association ('FYBA') and several other professional yacht broker associations collaborated to form International Yacht Council (IYC)." *Id.* "One of the associations' objectives in forming IYC was the creation of an online MLS for yacht listings." *Id.* So, in "February of 2000, FYBA, acting for the associations that would form IYC, published a 'Request for Proposal' soliciting third parties to submit plans for developing and operating (for IYC) a yacht-based MLS." *Id.* Ultimately, "IYC entered into a contract with MLS Solutions, Inc. ('MLS Solutions') to develop and manage IYC's web-based MLS" (the "IYC MLS"). *Id.* at 1136.

---

[9]   "The facts of [*BUC*] are recited at greater length in" an earlier, related appeal in that case. *BUC I*, 517 F.3d at 1273 n.2.

17

To create the IYC MLS, "BUCNET licensees would simply copy the listings they had submitted to BUC, and MLS Solutions would, in turn, place them on the IYC website." *Id.* "A broker, copying and pasting in this fashion, would attach the document to an email and send it to MLS Solutions." *Id.* at 1136 n.15. Other listings "were obtained by MLS Solutions' staff who had acquired BUCNET passwords from BUC licensees." *Id.*

Eventually, "BUC discovered that IYC's MLS presented over 4,400 listings which replicated BUCNET listings" and sued for copyright infringement. *Id.* at 1137. The complaint named six defendants: IYC, MLS Solutions, the President of MLS Solutions (William Pazos), FYBA, Bradford Yacht Sales, Inc. ("Bradford," a licensee of BUCNET) and Barbara Tierney (an "employee of Bradford and President of IYC"). *BUC I*, 517 F.3d at 1273, 1279; *BUC II*, 489 F.3d at 1137; *Buc Int'l Corp. v. Int'; Yacht Council Ltd.*, 2002 WL 31399604, at *1 n.2 (S.D. Fla. July 5, 2002) (Dimitrouleas, J.). As pertinent here, BUC asserted claims for direct, vicarious and contributory copyright infringement stemming from the defendants' respective actions in the creation and operation of the infringing IYC MLS. *BUC II*, 489 F.3d at 1137, 1138 n.19.

Three defendants (Bradford, FYBA, and Tierney) settled with BUC before trial for a collective amount of $790,000. *BUC I*, 517 F.3d at 1274. At trial, the jury returned a verdict for defendant Pazos and against defendants IYC and MLS Solutions. The latter two were found "liable for BUC's actual damages of $1,598,278, or, alternatively, its statutory damages of $1,098,000," which were calculated based

on the number of infringing listings. *Id.*; *BUC II*, 489 F.3d at 1138-39. BUC elected to recover actual damages, judgment was entered in that amount, and IYC and MLS Solutions then moved for relief from judgment under Rule 60(b)(5) and the "one satisfaction rule," seeking credit for the amounts BUC received from its pre-trial settlements. *BUC I*, 517 F.3d at 1274. On appeal, the Eleventh Circuit found that IYC and MLS Solutions could credit the settlements under the "one satisfaction rule." *Id.* at 1278-79.

The holding in BUC makes sense because the defendants there all contributed in various ways to a single injury—the unlicensed infringement of BUC's copyright through the IYC MLS. The "one satisfaction rule" applied to prevent the plaintiff from recovering multiple times under direct, vicarious and contributory liability for the same infringement through the IYC MLS. In Title III, an analogous circumstance would be where the action of multiple defendants contributed a single course of trafficking; for example, MSC USA selling tickets for cruises operated by MSC SA that berthed at the Terminal.

But if each defendant in *BUC* had created their own MLS infringing on BUC's copyrighted material, BUC would clearly be entitled to separate recoveries from each defendant for their independent acts of infringement. And that is the case here. The Defendants did not act collectively in the commission of a single trafficking act—each separately and independently (and knowingly and intentionally) infringed on Havana Docks' rights by trafficking in the Terminal without authorization. *See Havana Docks*, 2022 WL 831160, at **22-38 (summarizing each Defendant's trafficking).

Because each Defendant's unauthorized trafficking separately harmed Havana Docks by infringing on its rights, the "one satisfaction rule" has no application.

## IV.   The "One Satisfaction Rule" Does Not Apply to Punitive Damages.

The Court has held that Title III's provision of treble damages is punitive. *de Fernandez*, 2022 WL 2237186, at **8-9; *Havana Docks*, 2022 WL 499710, at *7.

"It is established, however, that the one satisfaction rule does not apply to punitive damages." *Honeywell*, 502 F. Supp. 3d at 484 (quoting *Snowden*, 454 F.2d at 1048); *see also BCS Servs., Inc. v. BG Invs., Inc.*, 728 F.3d 633, 641 (7th Cir. 2013) ("The one-satisfaction rule is intended to prevent compensation in excess of the plaintiff's loss; punitive damages, to the extent not intended to remedy undercompensation, are deliberately excess compensation."); *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir. 1987) ("We are speaking only of compensatory damages; punitive damages do not measure the plaintiff's loss, so piling them on top of compensatory damages is permissible."); *Coastal Ag. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 509 (5th Cir. 2014) ("But the nonsettling defendant 'cannot receive credit for settlement amounts representing punitive damages.'"); *Chase Manhattan Mortg. Co. v. Lane*, 2010 2738266, *4 (W.D.N.C. July 9, 2010) ("The Court is persuaded by 'the common view among the majority of jurisdictions that because punitive damages are awarded not to compensate a plaintiff but to punish an individual wrongdoer, the "one satisfaction" principle is not offended by a court's refusal to deduct settlement monies from a punitive damages award.'"); *see also Uthe*

*Tech. Corp. v. Aetrium Inc.*, 808 F.3d 755, 761 (9th Cir. 2015) (addressing issue of "what constitutes 'full satisfaction' of a treble damages claim" under RICO, and holding that the "one satisfaction" rule did not bar recovery of treble damages and any amounts recovered from award in related arbitration should be credited to the judgment <u>after</u> trebling).

To the extent the "one satisfaction rule" would apply to this case, no Defendant may have a credit for amounts representing punitive or treble damages.

## V.     Separate Judgments Must Be Entered in Each Case.

Defendants conclude the Motions arguing that "whether judgment may be entered against all four Defendants, together, or against each Defendant individually, the one-satisfaction rule applies." (Mot. at 9-10.) However, as explained above, the "one satisfaction rule" does not apply to these cases. And to the extent the Defendants seek to obtain a collective judgment "against all four Defendants, together," this request should be denied for the reasons explained in Havana Docks' response to Defendants' consolidation motions.[10] *See Hall v. Hall*, 138 S. Ct. 1118, 1124-31 (2018) (Robert, C.J., for unanimous Court) (the Court's precedent "emphasize[s] that constituent cases should end in separate decrees or judgment"). For brevity, Havana Docks incorporates by reference that argument here. *See* fn. 10.

## CONCLUSION

For the foregoing reasons, Havana Docks respectfully requests that the Motions be denied.

---

[10]     *Carnival*, ECF No. 530 at 6-7; *MSC*, ECF No. 380 at 6-7; *Royal*, ECF No. 303 at 6-7; *Norwegian*, ECF No. 417 at 6-7.

Dated: July 15, 2022.

Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: s/ Roberto Martínez
    Roberto Martínez
    Florida Bar No. 305596
    Bob@colson.com
    Stephanie A. Casey
    Florida Bar No. 97483
    scasey@colson.com
    Aziza F. Elayan-Martínez
    Florida Bar No. 92736
    aziza@colson.com
    Zachary A. Lipshultz
    Florida Bar No. 123594
    zach@colson.com
    Thomas A. Kroeger
    Florida Bar No. 19303
    tom@colson.com
    Sabrina S. Saieh
    Florida Bar No. 125290
    sabrina@colson.com
        –    and –

**MARGOL & MARGOL, P.A.**
2029 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 355-7508
Facsimile: (904) 619-8741

Rodney S. Margol
Florida Bar No. 225428
Rodney@margolandmargol.com

*Attorneys for Plaintiff Havana Docks Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court.  I also certify that the foregoing document is being served this 15 July 2022, on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>s/ Roberto Martínez</u>

Roberto Martínez
